UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

IN RE: TD BANK, N.A. DEBIT CARD
OVERDRAFT FEE LITIGATION

MDL No. 2613

<u>This order relates only to:</u>

*Dorsey v. TD Bank, N.A.*
D.N.J. Case No. 1:17-cv-00074
D.S.C. Case No. 6:17-cv-01432
_____

)
)
)
)
)
)
)
)
)
)
)

Civil Action No.: 6:15-MN-2613-BHH

**Opinion and Order**

     This matter is before the Court on Defendant TD Bank, N.A.'s ("Defendant," "TD,"
or "the Bank") Motion to Dismiss Plaintiff Shaina Dorsey's ("Plaintiff" or "Dorsey") Class
Action Complaint ("*Dorsey* Complaint") for failure to state a claim, pursuant to Federal
Rule of Civil Procedure 12(b)(6). (*Dorsey v. TD Bank, N.A.*, D.S.C. Case No. 6:17-cv-
01432, ECF No. 15.)[1] For the reasons set forth in this order, Defendant's motion is
granted and the *Dorsey* Complaint is dismissed.

## BACKGROUND

     In this litigation, a collective group of Plaintiffs challenge the manner in which
Defendant, TD Bank, N.A., assessed overdraft fees, posted debit transactions, and
assessed "sustained" overdraft fees. Eight putative class actions were filed against TD
in various federal district courts. On April 2, 2015, the Judicial Panel on Multidistrict
Litigation ("MDL Panel") centralized these actions and assigned them to this Court. On
April 15, 2015, the MDL Panel transferred an additional putative class action, *Robinson*

_____

[1] The Motion to Dismiss the *Dorsey* Complaint and related briefing were filed on the D.S.C. Case No.
6:17-cv-01432 docket, but not on the MDL 2613 docket. Accordingly, all further citations to documents on
the case-specific docket are denoted: "*Dorsey* ECF No. [ ]".

*v. TD Bank, N.A.*, S.D. Fla. C.A. No. 15-cv-60469 ("*Robinson I*"), to this Court for inclusion in this litigation, MDL 2613. The MDL Panel also conditionally transferred a second additional suit, *Robinson v. TD Bank, N.A.*, S.D. Fla. C.A. No. 15-cv-60476 ("*Robinson II*"), which transfer Plaintiff Robinson opposed at that time. The sole theory in *Robinson II* involved a usury claim under the National Bank Act ("NBA"). On August 7, 2015, the MDL Panel resolved Plaintiff Robinson's motion to vacate the Panel's conditional transfer of *Robinson II*, and transferred the case to this Court for inclusion within MDL 2613. (ECF No. 55.)

Plaintiffs' Consolidated Amended Class Action Complaint ("CAC") was filed on June 19, 2015. (ECF No. 37.) Though it was filed prior to final transfer of *Robinson II* into this litigation, the CAC asserted the same usury claim under the NBA that *Robinson II* asserted, on behalf of the same putative nationwide class of TD Bank customers. (*Compare* ECF No. 37 ¶ 182, 242-56, *with Robinson II*, D.S.C. C.A. No. 6:15-cv-3538, ECF No. 1 ¶ 16, 27-41.) TD Bank filed a Motion to Dismiss Plaintiffs' CAC for failure to state a claim on August 3, 2015. (ECF No. 53.) After subsequent briefing and a hearing, the Court issued an Order on December 10, 2015, granting the Motion to Dismiss in part. *Inter alia*, the Court found that TD Bank's sustained overdraft fee (*see* Personal Deposit Account Agreement ("PDAA"), ECF No. 37-1 at 10) is not "interest" within the meaning of 12 U.S.C. § 85 and 12 C.F.R. § 7.4001. (ECF No. 68 at 80.) As a result, the Court held that Count VIII of the CAC failed to state a plausible claim for relief from violation of the NBA's prohibition on the taking of usurious interest, and dismissed Count VIII with prejudice. (*Id.* at 80, 84, 86.)

On January 22, 2016, Plaintiff Robinson filed a Motion to Certify Order in Multiple

Claims Case. (ECF No. 72.) Pursuant to Federal Rule of Civil Procedure 54(b), Plaintiff Robinson asserted that dismissal of her usury claim concluded all judicial labor with respect to the disposition of *Robinson II*, and that there was therefore no just reason to delay her appeal. Alternatively, Plaintiff Robinson sought permission to appeal pursuant to 28 U.S.C. § 1292(b), averring that immediate appellate review was necessary to resolve controlling issues of law, and resolution of those issues would significantly advance the resolution of the case as a whole. (*See* ECF No. 72.) The Court denied Plaintiff Robinson's Motion to Certify on July 18, 2016. (ECF No. 115.)

Plaintiff Robinson filed a Motion for Relief from Order of Dismissal ("Motion to Reconsider") on January 18, 2017 (ECF No. 139), citing *Farrell v. Bank of Am., N.A.*, 224 F. Supp. 3d 1016, 1018 (S.D. Cal. 2016), *motion to certify appeal granted*, No. 3:16-CV-00492-L-WVG, 2017 WL 1325572 (S.D. Cal. Apr. 11, 2017),[2] as new authority for her theory that TD's sustained overdraft fees constitute usurious interest under the NBA. The Court denied Plaintiff Robinson's Motion to Reconsider on January 20, 2017, finding the *Farrell* decision unpersuasive to disturb the Court's prior conclusions regarding the nature of the sustained overdraft fees in question. (ECF No. 141.)

On May 31, 2017, the MDL Panel transferred *Dorsey v. TD Bank, N.A.*, D.N.J. C.A. No. 1:17-cv-00074, into MDL 2613. (ECF No. 157.) The sole count in the *Dorsey* Complaint asserts a usury claim materially identical to the usury claim included as Count VIII of the CAC, and previously dismissed by the Court. (*Compare* ECF No. 37 ¶¶ 160-62, 182, 242-56, *with Dorsey* ECF No. 1 ¶¶ 12-14, 17, 28-44.) The substance of the usury claim alleges: (1) that TD assesses a $20 sustained overdraft fee if an account is

---

[2] Pursuant to a joint motion, appellate proceedings in the *Farrell* case are currently stayed until July 2, 2018, pending resolution of settlement. *Farrell v. Bank of America*, No. 17-55847 (9th Cir. Jan. 16, 2018) (granting joint motion to stay appellate proceedings pending settlement).

overdrawn and is not brought back into a positive balance within ten business days, and (2) that this fee is an interest charge on an extension of credit, which interest rate exceeds the usury limit under 12 U.S.C. §§ 85-86. (*See id.*) Defendant filed its Motion to Dismiss on July 11, 2017. (*Dorsey* ECF No. 15.) Plaintiff Dorsey responded on August 10, 2017, and the Bank replied on August 22, 2017. (*Dorsey* ECF Nos. 23 & 24.) Additionally, the Bank filed a notice of supplemental authority on November 27, 2017, to which Dorsey replied on November 30, 2017. (*Dorsey* ECF Nos. 27 & 29.) The matter is ripe for consideration and the Court now makes the following ruling.

## STANDARD OF REVIEW

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556)). In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). However, a court "'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (quoting *Kloth v.*

*Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir.2006)) (modification in original). A court should grant a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

**DISCUSSION**

The *Dorsey* Complaint is subject to dismissal for two reasons. First, the Court's Order dismissing the materially identical usury claim in Count VIII of the CAC is the law of the case. Second, apart from the Court's prior rulings in the case *sub judice*, the law is still clear that sustained overdraft fees are not interest, and that assessing such fees cannot violate the usury provision of the NBA.

**A. The Court's Prior Ruling on the Usury Claim is the Law of the Case**

"The law-of-the-case doctrine provides that in the interest of finality, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009)). This principle is particularly important in the multidistrict litigation context, "where there is a need for consistent treatment of consolidated cases." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 452-453 (4th Cir. 2005) (holding that the transferee court has the power to modify or rescind orders in a transferred case which it concludes are incorrect in order to preserve consistent treatment of consolidated cases); (*see also* ECF No. 68 at 11 n.1 (finding *Pinney* instructive in reaching, on the preemption issue, a different result

than a prior ruling in one of the transferred cases)).[3] "Although the court remains free to deviate from its prior decisions, as the doctrine is discretionary . . . courts should be loath to revisit prior decisions in the absence of extraordinary circumstances." *Epstein v. World Acceptance Corp.*, 203 F. Supp. 3d 655, 664 (D.S.C. 2016) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)) (internal modifications and quotation marks omitted). The Fourth Circuit has ruled that the law of the case doctrine ought to be followed unless: (1) a subsequent proceeding produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice. *See United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999).[4] The application of this principle invokes important concerns of finality and judicial economy, and the Fourth Circuit has stated that the third exception is not satisfied if the prior decision is "just maybe or probably wrong;" rather, it "must strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *TFWS* 572 F.3d at 194 (internal modifications and quotation marks omitted).

The Court's December 10, 2015 Order finding, *inter alia*, that sustained overdraft fees are not interest, and therefore cannot form the basis of a usury claim is the law of the case. (*See* ECF No. 68 at 77-86.) It is undisputed that no different evidence has been produced, as the usury claims in the CAC and the *Dorsey* Complaint are

---

[3] The Court is now confronted with a transferred claim that is identical to another claim that it considered **after** consolidation. Given this context, the only logical course is to grant the same result for the same claim.

[4] *Aramony* dealt with the law of the case doctrine as it applies once an appellate court has established the law of the case; however, its reasoning and itemized bases for deviating from the law of the case are no less applicable to a trial court reconsidering its own rulings. *See Epstein*, 203 F. Supp. 3d at 665 (rejecting the argument that interlocutory orders are unconstrained by the law of the case doctrine, and holding application *vel non* of the doctrine was of no moment because the court's previous order was free from factual and legal error).

materially indistinguishable and rely on the same evidentiary foundation. No controlling authority has made a contrary decision on the legal determination at issue. Moreover, the Court is "of the firm opinion that its previous order [on this issue] is free from any factual or legal error." *See Epstein*, 203 F. Supp. 3d at 665 (emphasis added).

Plaintiff's argument that the law of the case doctrine only applies in the instance of an *appellate* ruling binding a trial court on the same issue in the same case is unavailing. It ignores the obvious import of the Court reaching consistent results on identical issues in multidistrict litigation, and asks the Court to turn a blind eye to one of the fundamental purposes of a consolidated proceeding. *See In re: TD Bank, N.A., Debit Card Overdraft Fee Litig.*, 96 F. Supp. 3d 1378, 1379 (U.S. Jud. Pan. Mult. Lit. 2015) (citing the prevention of inconsistent pretrial rulings as a basis for establishing MDL 2613); (Transfer Order, ECF No. 157 at 1 (transferring *Dorsey* to MDL 2613 for the purpose of "prevent[ing] inconsistent pretrial rulings")). Application of the doctrine by a trial court to its own interlocutory rulings is discretionary, and the Court exercises its discretion to reach the only rational conclusion here. Accordingly, the *Dorsey* Complaint is subject to dismissal by application of the law of the case.

### B. Sustained Overdraft Fees Are Not Interest Under Applicable Law

Plaintiff Dorsey insists that the Court revisit the viability of the usury claim for the third time in this litigation,[5] thereby inviting the Court to create inconsistent outcomes among the cases consolidated in MDL 2613. Plaintiff has alleged a violation of the NBA's prohibition on the taking of usurious interest. Her claim is premised on the assertion that an extended overdraft balance charge, or what is referred to in the PDAA as a "SUSTAINED FEE FOR OVERDRAWN ACCOUNTS" (*see* ECF No. 37-1 at 10)

---

[5] Here, the Court does not count its ruling on Plaintiff Robinson's Rule 54(b) Motion (ECF No. 115).

("sustained overdraft fee"), amounts to an interest charge by TD Bank on the funds it advances when an account is overdrawn. The sustained overdraft fee is a one-time $20.00 charge levied on a customer whose checking account remains in an overdrawn status for ten consecutive business days. (*See id.*) Plaintiff alleges that "[u]nlike an initial overdraft fee, the [sustained overdraft fee] is an *additional* charge to a customer for which the bank has provided nothing new in the way of services. The charge is based solely on the alleged indebtedness to the bank remaining unpaid by the customer for a period of time." (*Dorsey* Complaint ¶ 9, ECF No. 1 at 4 (emphasis in original).) Moreover, Plaintiff avers that "TD Bank renders no additional service to its customers in exchange for charging this extra fee other than advancing the original money to a customer's account in an amount to cover the overdraft," and "TD Bank uses the fact that it has loaned funds to its customer as a pretext to justify charging that customer a secondary service charge that exceeds lawful limits." (*Id.* ¶ 12.) Plaintiff further states, "There is nothing in TD Bank's written materials disclosing that this additional 'fee' is, in reality, a charge of interest on extended credit." (*Id.* ¶ 14.) Finally, Plaintiff extrapolates an effective annualized interest rate far in excess of the permissible limit by relating the $20.00 charge, which corresponds to a 10-day period, to the actual negative balance on the account (e.g., Dorsey's negative balance peaked at $208.66 during the relevant period, leading to an effective annualized interest rate putatively more than fifty-one (51) times the legal limit). (*See id.* ¶¶ 15, 29-38.) The question of whether Plaintiff's complaint states a plausible claim for relief turns entirely upon whether or not the $20.00 sustained overdraft fee is properly characterized as interest.

TD Bank correctly argues that the sustained overdraft fee is not "interest" within

the meaning of 12 U.S.C. § 85. The Bank points to Office of the Comptroller of the Currency ("OCC") regulations, which differentiate between bank charges of interest, governed by 12 C.F.R. § 7.4001, and non-interest charges and fees, governed by 12 C.F.R. § 7.4002. The Court finds, yet again, that TD's sustained overdraft fee is a non-interest charge under § 7.4002.

Section 7.4001(a) dictates that "creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds" constitute interest. However, the OCC has specifically excluded deposit account charges, including overdraft fees from this definition. 66 Fed. Reg. 34784-01, 34786-87; *see Cargile v. JP Morgan Chase & Co.*, 2010 WL 5491200, at *3 (E.D. Mich. Nov. 23, 2010) (noting that OCC regulations "make[] it clear that an NSF fee constitutes 'interest' only when a *borrower* tenders an insufficient funds check to a creditor *in payment of a previous debt*" and "use of the term 'NSF fees' does not apply to overdraft charges to a deposit account") (emphasis in original). TD Bank contends that if a fee is charged on a deposit account under the terms of the deposit agreement that fee is a "non-interest" charge levied pursuant to 12 C.F.R. § 7.4002(a). *See Video Trax, Inc. v. NationsBank, N.A.*, 33 F. Supp. 2d 1041, 1049-1051 (S.D. Fla. 1998) (holding that overdraft fees "aris[ing] from the terms of the deposit agreements" were non-interest charges under 12 C.F.R. § 7.4002 rather than interest under 12 C.F.R. § 7.4001), *aff'd per curiam* 205 F.3d 1358 (11th Cir. 2000), *cert. denied*, 531 U.S. 822 (2000); OCC Interp. Ltr. No. 1082, 2007 WL 5393636, at *2 (stating that overdraft fees are authorized under 12 C.F.R. § 7.4002). The Bank asserts that the critical inquiry is the nature of the account; if the fees are charged on a deposit account, then they are not "interest" under the NBA.

*Soto v. Bank of Lancaster Cty.*, 2011 WL 1050213, at *9 (E.D. Pa. Mar. 23, 2011) ("[T]he distinction between a credit account and a deposit account is dispositive.").

Plaintiff responds that the sustained overdraft fee is indeed an "interest" charge because it is distinct from the initial overdraft charge in both its purpose and application. (*Dorsey* ECF No. 23 at 12-30.) Whereas the initial overdraft fee is properly categorized as a service fee intended to deter customers from misusing bank services and to compensate the Bank for the increased work entailed in processing an overdraft item, the sustained overdraft fee, argues Plaintiff, is an amount paid by the customer for the use of money over time. Plaintiff asserts that, given these criteria, the charge imposed meets the definition of "interest" regardless of what label the Bank uses, making the sustained overdraft fee subject to usury laws. She characterizes the initial overdraft fees as loans made without a specific loan agreement, and the sustained overdraft fee as interest charged on those loans far in excess of the permissible rate. (*Dorsey* Complaint ¶¶ 36-37, ECF No. 1 at 12.)

In support of these concepts Plaintiff advances the following progression of arguments. First, the sustained overdraft fee falls within the definition of "interest" as explicitly laid out in 12 C.F.R. § 7.4001(a) because it is a "late fee" connected to the "extension of credit," and therefore is subject to the prohibition on usurious interest in the NBA, 12 U.S.C. § 86. (*See* Pls.' Resp. to Mot. to Dismiss, *Dorsey* ECF No. 23 at 14-15.) The Bank charged Dorsey the sustained overdraft fee, she asserts, because she "defaulted" in paying off her negative balance within ten days, similar to the credit card late fee at issue in *Smiley v. Citibank (S.D.)*, 517 U.S. 735 (1996).[6, 7] Moreover, Plaintiff

---

[6] In *Smiley*, the U.S. Supreme Court deferred under *Chevron U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), to the OCC's determination that a late fee constitutes "interest" under 12 U.S.C. §

avers, it is the initial overdraft fee, not the sustained overdraft fee, that compensates the Bank for its services in processing overdraft transactions. Therefore, the sustained overdraft fee should not be characterized as a "deposit account *service* charge" under § 7.4002 and must instead be an interest charge under § 7.4001, compensating the Bank for advancing funds and credit to the customer. (*See Dorsey* ECF No. 23 at 17-18.)

Second, Plaintiff argues that Congress, the OCC, and other banking regulators view the act of honoring an overdraft as an extension of credit and would therefore view subsequent fees as interest upon that credit. (*See Dorsey* ECF No. 23 at 19-21.) Plaintiff quotes Congress' definition of an "extension of credit" in the Lending Limits provision of the NBA, which includes, "all direct or indirect advances of funds to a person made on the basis of any obligation of that person to repay the funds or repayable from specific property pledged by or on behalf of the person." 12 U.S.C. § 84(b)(1)(A).[8] Plaintiff also appeals to the Joint Guidance On Overdraft Protection Programs ("Joint Guidance") issued by the OCC, Federal Reserve, FDIC, and National Credit Union Administration in 2005, which states: "When overdrafts are paid, credit is

---

85. *Smiley*, 517 U.S. at 739-44. Of course, by comparing the instant case to *Smiley*, Plaintiff inexplicably glosses over the operative distinction that defeats her reasoning: the late fee imposed in *Smiley* pertained to a **credit card account**, not a deposit account. A credit card account is perhaps the quintessential example of a contractual relationship where the defining principle is the extension of credit by a bank to a customer. Late fees charged in this context fit, ineluctably, into the definition of "interest" in § 7.4001(a). This is not true of the context of deposit account services, which fit most naturally under the authority granted to national banks in § 7.4002(a).

[7] Plaintiff urges the Court to consider *Richardson v. Nat'l City Bank of Evansville*, 141 F.3d 1228 (7th Cir. 1998), and *Doe v. Norwest Bank Minnesota, N.A.*, 107 F.3d 1297 (8th Cir. 1997), with regard to her theory that the sustained overdraft fees arise from a "default" on an extension of credit. (*See Dorsey* ECF no. 23 at 16-17.) *Richardson* and *Doe* held that insurance premiums bought by automobile lenders and charged to borrowers, when the borrowers breached their agreements to maintain insurance on the financed vehicles, did not constitute "interest" under the NBA. 141 F.3d at 1230-32; 107 F.3d at 1301-03. These cases are *far* afield of the analysis in the instant matter. Suffice it to say, they are unpersuasive to establish that by failing to bring her account balance back into a positive balance within ten business days Plaintiff "defaulted" on a loan extended to her by the Bank.

[8] However, § 84 states that the definition is "for the purposes of this section." Congress did not include that definition within § 85 of the NBA, which is the source of Plaintiff's claim. Moreover, the OCC's controlling regulation, 12 C.F.R. § 7.4001, does not incorporate, reference, or cite § 84's definition.

extended." 70 Fed. Reg. 9127, 9129 (Feb. 24, 2005).[9] The Joint Guidance also mentions state usury laws as among the legal risks that banks must navigate when implementing overdraft protection programs. *See id.* at 9130.

Third, because § 7.4001 does not define "extension of credit," Plaintiff suggests the Court should look to the definition in Regulation O, 12 C.F.R. § 215.3,[10] which includes "[a]n advance by means of an overdraft, cash item or otherwise." 12 C.F.R. § 215(a)(2). Plaintiff acknowledges that Regulation O is explicitly directed at extensions of credit to bank insiders (*see* 12 C.F.R. § 215.2 (defining "insider" as an executive officer, director, or principal shareholder, and their related interests)), but insists that it is still relevant to the questions at issue here because "it is an integral part of the entire regulatory framework, designed to ensure that insiders are treated in the same manner as non-insiders." (*See* ECF No. 23 at 21 n.8.) Moreover, Plaintiff cites FDIC reporting regulations, case law from several states, Article 4 of the Uniform Commercial Code, and two banking treatises for the general proposition that a bank makes a loan when it honors an overdraft. (*See id.* at 21-23.)

Fourth, Plaintiff extensively cites the commentary that accompanied the OCC's 2001 amendments to § 7.4001 (including revision of the definition of "interest" for purposes of 12 U.S.C. § 85), and extrapolates the notion that the OCC specifically reserved for future decision the issue of whether sustained overdraft fees constitute interest. (*See* ECF No. 23 at 24-26.)[11] Therefore, Plaintiff avers, the question remains

---

[9] Plaintiff does not explain how the Joint Guidance is relevant here. The Joint Guidance's reference to overdrafts as extensions of credit is made in the context of its generalized discussion of the safety and soundness considerations faced by financial institutions when implementing overdraft protection programs. The Joint Guidance does not interpret the NBA or the term "interest" therein.
[10] Regulation O is promulgated by the Federal Reserve.
[11] This is a very strained reading of the OCC commentary, which does not even mention sustained overdraft fees, though it peripherally mentions the *Video Trax* decision in a footnote. *See* 66 Fed. Reg.

open, and there is no regulatory guidance that overcomes her position. (*Id.*)

Finally, Plaintiff attempts to distinguish the litany of federal decisions that have held that overdraft fees do not constitute interest by claiming that those decisions wrongly conceived the direction of the creditor-debtor relationship in the overdraft fee context (i.e., as an exception to the general rule that the depositor is the creditor and the bank is the debtor) and wrongly concluded that sustained overdraft charges do not arise from a credit transaction. (*See id.* at 26-29.) Plaintiff urges the Court to adopt the reasoning in *Farrell* that a sustained overdraft fee differs from an initial overdraft fee because it is "more of a charge in consideration for the time value of money." 224 F. Supp. 3d at 1020, *motion to certify appeal granted*, No. 3:16-CV-00492-L-WVG, 2017 WL 1325572 (S.D. Cal. Apr. 11, 2017).[12]

---

34784-01, 34786-87. The commentary merely states: "In the most recent Federal case related to this issue of which the OCC is aware, the court held that overdraft fees were not 'interest' within the meaning of 12 U.S.C. 85 and current § 7.4001(a). [citing *Video Trax*]." *Id.* at n.11. Even if it is true that the OCC intentionally reserved proper categorization of sustained overdraft fees for future determination, nothing in the commentary suggests that the OCC would tend toward including such fees in the interest category rather than the service charge category. In fact, the Court finds that the text of the commentary lends itself toward the opposite conclusion. Specifically, the OCC's comments pertaining to the revision of § 7.4002, "National Bank Non-Interest Charges," explain that the proposal "eliminated two examples in § 7.4002(a) of the types of non-interest charges and fees that national banks may impose: charges a bank's board determines to be reasonable on dormant accounts and reasonable fees for credit reports or investigations." The examples were removed from the revised rule because "the explicit reference to the two types of fees is unnecessary and *could be misinterpreted as a limitation on a national bank's ability to charge other types of fees.*" *Id.* at 34787 (emphasis added). However, the comments make clear that "*dormant account charges* . . . continue to be permissible non-interest charges . . . even though they are no longer specifically mentioned in the rule." *Id.* (emphasis added). Under Plaintiff's limited conception of what should qualify as a "service charge," one would hardly include a fee that a bank imposes merely because an account sits idle for an itemized period, because the bank has not provided any additional "service" to the customer as Plaintiff would wish the Court to construe that concept. Yet the OCC explicitly permits this type of fee as a non-interest charge properly categorized under § 7.4002. The nature of "dormant account charges," as a function of the amount of additional "service" provided to the customer, is sufficiently analogous to sustained overdraft fees that the permissibility of the former counsels toward the inclusion of the latter under § 7.4002(a).

[12] Plaintiff also asserts that Defendant's Motion to Dismiss should be denied because the arguments raised by the Bank invoke disputed issues of fact—including whether payment of a debit that creates an overdraft is an extension of credit—thereby necessitating discovery before the Court adjudicates the merits of the usury claim. (*See* ECF No. 23 at 29-30.) However, even the *Farrell* court—on which Plaintiff so heavily relies—rejected the need for discovery when certifying an interlocutory appeal on the usury issue, stating: "The fundamental question is whether a bank's coverage of an overdraft constitutes 'an

To begin, the Court has little doubt that some of the various regulatory bodies to which Plaintiff appeals, in certain contexts unrelated to §§ 85-86 of the NBA, either already consider overdrafts to be "extensions of credit," or if directly queried would likely confirm the point. So much is uncontroversial. The second part of Plaintiff's overarching argument, however—that sustained overdraft fees must therefore be viewed as interest charges under the NBA's usury provision—is a non sequitur. Notably, Plaintiff fails to cite a single regulation or Congressional source that even mentions sustained overdraft fees, though this flavor of overdraft fee is ubiquitous throughout the banking industry and by no means a new phenomenon. Ironically, the statutory, regulatory, case law, and secondary sources cited by Plaintiff in support of her theory actually undercut the viability of her claim. This is true because, despite the length, breadth, and diversity of these sources, with the exception of the *Farrell* decision, not a single one suggests that sustained overdraft fees are interest charges distinct from overdraft fees generally. On the other hand, as discussed below, there is ample evidence to suggest that the most pertinent regulator, the OCC, considers "overdraft fees" to be deposit account service charges, *not* interest.[13] Unless and until a controlling authority changes the rather intuitive premise that sustained overdraft fees are included within that group, the Court's ruling on Plaintiff's usury claim will remain unchanged. Moreover, until that time,

---

extension of credit.' No further factual development is necessary to decide this issue. Indeed this Court and all three other federal district court decisions to decide this issue did so on a motion to dismiss." *Farrell v. Bank of Am., N.A.*, No. 3:16-CV-00492-L-WVG, 2017 WL 1325572, at *1 n.1 (S.D. Cal. Apr. 11, 2017) (citing *Mcgee*, 2015 WL 4594582 (S.D. Fla 2015); *Shaw*, 2015 WL 6142903 (N.D. Okla. 2015); *In re TD Bank, N.A.*, 150 F. Supp. 3d 593 (D.S.C. 2015)).

[13] The OCC has confirmed this distinction multiple times, including in OCC Interpretive Letter No. 1082, wherein the OCC concluded: "When the [b]ank processes an overdraft item and recovers a fee for doing so, *it is not exercising its right to collect a debt*. Rather, the processing of an overdraft and recovery of an overdraft fee by balancing debits and credits on a deposit account are activities *directly connected with the maintenance of a deposit account*." OCC Inter. Ltr. 1082 (May 17, 2007) (emphasis added). Nothing in the relevant OCC regulations indicates any inclination on the OCC's part to treat sustained overdraft fees differently than initial overdraft fees in this respect.

Plaintiff's attempt to shoehorn sustained overdraft fees into the usury statute remains a creative but unsuccessful pleading theory, nothing more.

The Court agrees with the majority of federal courts that have considered these issues and finds that the sustained overdraft fee is not interest within the meaning of 12 U.S.C. § 85 and 12 C.F.R. § 7.4001. As such, the *Dorsey* Complaint fails to state a plausible claim for relief and is hereby dismissed. The OCC clarified any ambiguity on the point of whether overdraft fees constitute interest in the following commentary entitled, "Definition of 'Interest' for Purposes of 12 U.S.C. 85 (Revised § 7.4001(a))," issued when promulgating a final rule regarding banking activities and operations dated July 2, 2001:

> The OCC proposed revising § 7.4001 to clarify the scope of the term "NSF fees" for purposes of 12 U.S.C. 85. Section 85 governs the interest rates that national banks may charge, but it does not define the term "interest." Section 7.4001 generally defines the charges that are considered "interest" for purposes of section 85, and then sets out a nonexclusive list of charges covered by that definition. The list includes "NSF fees."

> The inclusion of "NSF fees" in the definition of "interest" was intended to codify a position the OCC took in Interpretive Letter 452, issued in 1988. IL 452 concluded that charges imposed by a **credit card bank** on its customers who paid their accounts with checks drawn on insufficient funds were "interest" within the meaning of section 85. The charges were referred to as "NSF charges" in the letter. The term, however, is also is [sic] commonly used to refer to fees imposed by a bank on its checking account customers whenever a customer writes a check against insufficient funds, regardless of whether the check was intended to pay an obligation due to the bank. ***These different uses of the term "NSF fees" have created ambiguity about the scope of the term as used in § 7.4001(a).***

> The proposal invited comments on a change to § 7.4001(a) that would clarify that the term "NSF fees" includes only those fees imposed by a creditor bank when a borrower attempts to pay an obligation to that bank with a check drawn on insufficient funds. ***Fees that a bank charges for its deposit account services—including overdraft and returned check charges—are not covered by the term "NSF fees" as that term is***

*used in § 7.4001(a).* The OCC received no objections on that proposed change, and, therefore, we adopt it in the final rule as proposed. change. [sic] Thus, we are clarifying the definition of "interest" by stating in the final rule that interest includes creditor-imposed NSF fees that are charged when a borrower tenders payment on a debt with a check drawn on insufficient funds.

66 Fed. Reg. 34784-01, 34786-87 (emphasis added). It is of course true that this section does not discuss "sustained" overdraft fees specifically. However, the Court remains unconvinced that a one-time sustained overdraft fee constitutes the accrual of interest on an extension of credit merely because it occurs ten days after the initial overdraft fee is imposed. In general, the nature of interest is the application, over time, of an established rate to an identified principal. In contrast, the sustained overdraft fee is a flat $20.00 fee, applied universally after ten consecutive days of negative balance and without regard to the total amount of the negative balance or fluctuations within that negative balance during the ten-day period. (*See Dorsey* Complaint ¶¶ 12-16, ECF No. 1 at 6-7); *but see Smiley*, 517 U.S. at 745 (finding that the non-variable nature of late fees charged on a *credit card account* did not remove such fees from the purview of the term "interest" in 12 U.S.C. § 85, and setting forth definitions of "interest" unlimited to charges expressed as a function of time or of amount owing).[14] Most importantly, the sustained overdraft fee arises from the terms of the PDAA, and is therefore properly categorized as a deposit account service charge.

Federal courts that have considered the question of whether NSF fees (including overdraft fees) arising from a deposit agreement can be "interest" for purposes of the NBA have consistently held that they cannot constitute "interest," and have dismissed claims under 12 U.S.C. § 85 that relate to overdraft fees. *See Armstrong v. Colonial*

---

[14] The Court has explained, *supra* n.6, why *Smiley* does not control the outcome of the instant motion.

*Bank, N.A.*, 196 F. App'x 872 (11th Cir. 2006) (affirming district court's order concluding that overdraft charges are not interest and dismissing related action for failure to state a claim); *In re Wash. Mut. Overdraft Prot. Litig.*, 2004 WL 5046210, at *5 (C.D. Cal. Apr. 26, 2004) (applying the NBA's definition of "interest" to the Home Owner's Loan Act and concluding that overdraft fees are not interest because they are "a deposit account service charge arising from the terms of the depository agreement" and thus controlled by 12 C.F.R. § 7.4002), *aff'd in part, rev'd in part on other grounds*, 201 F. App'x 409 (9th Cir. 2006); *Video Trax, Inc.*, 33 F. Supp. 2d at 1049-51; *Terrell v. Hancock Bank*, 7 F. Supp. 2d 812, 816 (S.D. Miss. 1998) (assuming for purposes of argument that the NBA applied to defendant state bank and concluding that overdraft fees are not interest because they "arise[] from the terms of the Depository Agreement" and are addressed in 12 C.F.R. § 7.4002); *Nicolas v. Deposit Guar. Nat'l Bank*, 182 F.R.D. 226, 231 (S.D. Miss. 1998) (same); *Soto*, 2011 WL 1050213, at *8-*9; *Cargile*, 2010 WL 5491200, at *3-*4.

The majority of federal courts that have considered the specific question at issue in the case *sub judice*, whether *sustained* overdraft fees constitute "interest" for purposes of 12 U.S.C. § 85, have held that such fees are not interest. In *McGee v. Bank of Am., N.A.*, 2015 WL 4594582, at *4 (S.D. Fla. July 30, 2015), *aff'd*, 674 F. App'x 958 (11th Cir. 2017), the court held that an "extended overdrawn balance charge" was not interest within the meaning of 12 U.S.C. §§ 85 and 86, and dismissed the plaintiffs' complaint for failure to state a plausible claim for relief. The *McGee* court specifically considered and rejected many of the same arguments raised by Plaintiff in this case, namely: 1) that the sustained overdraft fees cannot be non-interest charges because no

additional service is provided, 2) that the sustained fees are "interest" because they qualify as "late fees" within the text of 12 C.F.R. § 7.4001(a), (3) that the initial overdraft fees are extensions of credit, and (4) that the Plaintiff's arguments raise questions of fact inappropriate for resolution at the pleading stage. *Id.* at *3-*4. The *McGee* court stated, "The [extended overdrawn balance charges] at issue are flat fees contingent upon a customer's failure to remedy an overdrawn account, rather than payment for the use of money, and are not 'interest' within the ordinary meaning of the word." *Id.* at *3 (citing *Video Trax*, 33 F. Supp. 2d at 1050). Furthermore, "the extended overdrawn balance charges—like initial overdraft charges—*do not arise from a credit transaction*, and are not interest under 12 U.S.C. § 85." *Id.* (emphasis added). In so holding, the *McGee* court relied upon the reasoning in *Video Trax*, "that flat fees for overdrafts serve purposes other than compensation for the use of money, such as covering the costs of banking services, discouraging harmful customer behavior, and fostering the safety and stability of the banking system." *Id.* at *2 (citing *Video Trax*, 33 F. Supp. 2d at 1050-53). The Court continues to find the reasoning in *McGee* persuasive.

Likewise, in *Shaw v. BOKF, N.A.*, 2015 WL 6142903, at *4 (N.D. Okla. Oct. 19, 2015), the court held that the "extended overdraft fees" being challenged by the plaintiffs were not "interest" as that term is defined in the NBA. The *Shaw* court relied upon the reasoning and results in *McGee* and *Video Trax* for the proposition that "the extended overdraft charges were incurred as part of maintaining a deposit account, not a credit transaction, and the extended overdraft charges could not be considered interest." *Id.* at *3 (citing *McGee*, 2015 WL 4594582 at *3). In addition, the *Shaw* court directly confronted the plaintiffs' argument that 12 C.F.R. § 215, also known as

Regulation O, defines overdrafts as "extensions of credit." As the *Shaw* court explains:

> Regulation O is entirely inapplicable to the ordinary bank customer with a
> deposit account, because Regulation O was intended to prevent "banking
> abuses by bank insiders." This understanding of Regulation O is
> confirmed by 12 C.F.R. § 215.1, which states that the "purpose and
> scope" of Regulation O is to govern "any extension of credit made by a
> member bank to an executive officer, director, or principal shareholder of
> the member bank . . ." or "any extension of credit made by a member bank
> to a company controlled by such a person . . . ." Regulation O does not
> apply to a transaction between a bank and an ordinary customer with a
> deposit account, and the Court does not find that the definition of
> "extension of credit" stated in Regulation O is applicable to this case.

2015 WL 6142903 at *4 (internal citations omitted).[15]

Similar to the plaintiffs in *Shaw*, Plaintiff Dorsey had no credit card account with
TD Bank, such that the imposition of "late fees" might fall squarely within the definition
of interest charges in § 7.4001(a). Rather, Plaintiff maintained a deposit account with
the Bank and overdrew that account, at which point the Bank provided the service of
covering her overdrafts. Accordingly, Plaintiff was not charged interest for the use of
money, but was charged fees for overdrawing her account and for failing to remedy the
status of those overdrafts within the contractually allotted time period. It is immaterial
that TD's honoring debit transactions into overdraft *may* be construed as "extensions of
credit" or "unsecured loans" in certain unrelated contexts (e.g., FDIC reporting
requirements, the Joint Guidance, Article 4 of the UCC, etc.). Such a categorization
does not affect the status of sustained overdraft fees, which indisputably arise from the
terms of a deposit agreement, and therefore fit most naturally within the meaning of
"deposit account service charges" in § 7.4002(a). *See Video Trax*, 33 F. Supp. 2d at
1050.

---

[15] Regulation O does not purport to define "interest" under the NBA and 12 C.F.R. § 7.4001, nor would it
make sense for it to do so, because the Federal Reserve is not charged with interpreting the NBA.

There is now one district court decision that disagrees with this majority view. In *Farrell*, the court denied the defendant bank's motion to dismiss and held that the plaintiff had adequately alleged that an "extended charge" levied against deposit account holders for failing to rectify an overdrawn balance within five days constituted "interest" within the meaning of 12 U.S.C. § 85. 224 F. Supp. 3d at 1022. The *Farrell* court adopted many of the same arguments made by Plaintiff Dorsey in this case, and in particular the assertion that by advancing funds to an over-drafted depositor a bank creates a debt on which the customer pays interest. *Id.* at 1020-22. However, the *Farrell* court did not cite OCC Interpretive Letter No. 1082, which squarely contradicts this construction. (*See supra* n.13.) Moreover, the *Farrell* court failed to distinguish *Smiley v. Citibank (South Dakota), N.A.*, which ruling plainly pertained to late fees charged to a credit card account, not a deposit account. Finally, the *Farrell* court relied upon the characterization of overdrafts as "extensions of credit" in Regulation O and the Joint Guidance without significant explanation as to why those sources should apply to a claim under § 85 of the NBA. With respect, the Court disagrees with *Farrell* and finds that decision unpersuasive to modify its previous holdings in this case. (*See* ECF No. 141 (denying Plaintiff Robinson's Motion to Reconsider based upon *Farrell*).)

As in previous unsuccessful usury cases, Plaintiff attempts to distinguish the sustained overdraft fee from initial overdraft fees by claiming, *inter alia*, that the Bank provides no additional service that would justify the imposition of the sustained fees as a "*service* charge." The *McGee* court succinctly dealt with this argument:

> [T]he text of § 7.4002(b) does not require that all non-interest charges be assessed in connection with services. Instead, it describes several factors that a bank should consider in arriving at a reasonable non-interest charge, which include the cost of any underlying services. *See Video Trax*,

> 33 F. Supp. 2d at 1050-51. On the other hand, § 7.4002(a) provides: "A national bank may charge its customers non-interest charges and fees, including deposit account service charges." By implication, deposit account service charges are only a subset of these non-interest charges. That a charge is based upon something other than services does not necessarily remove it from the category of non-interest charges.

2015 WL 4594582, at *3. But assuming arguendo that additional services are necessary to justify the fee as a non-interest charge, the Court need not become too imaginative to identify services rendered by the Bank for which the sustained fee, but not initial overdraft fees, provides compensation. For one thing, the sustained fee can easily be viewed as compensating the Bank for holding open a non-credit type account, though it remains in the red for an itemized period. For another, it can readily be associated with the additional monitoring that the Bank must employ to protect itself against losses when a deposit account holder fails to remedy her negative balance. Moreover, the sustained fee, just like initial overdraft fees, serves the important goal of deterring misuse by customers of deposit account services. *See* 12 C.F.R. § 7.4002(b)(2)(iii) (itemizing deterrence as one factor a bank must consider when establishing non-interest charges and fees in accordance with safe and sound banking principles). The initial fees deter the act of running a deposit account into the red; the sustained fee deters the failure to remedy that situation in accordance with the contract.

In summary, Plaintiff Dorsey's reworked arguments are no more persuasive than Plaintiff Robinson's previous attempts to cram a square peg into the proverbial round hole. Accordingly, the *Dorsey* Complaint fails to state a claim and is dismissed.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (*Dorsey* ECF No. 15) is GRANTED.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

February 28, 2018
Greenville, South Carolina