**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

**CASE NO. 6:15-MN-02613-BHH
ALL CASES**

| |
|---|
| IN RE:  TD BANK, N.A. DEBIT CARD OVERDRAFT FEE LITIGATION  MDL No. 2613 |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

E. Adam Webb
**WEBB, KLASE & LEMOND, LLC**
1900 The Exchange, SE, Suite 480
Atlanta, GA 30339
Telephone: (770) 444-0773
Adam@WebbLLC.com

Richard D. McCune
**McCUNE WRIGHT AREVALO, LLP**
3281 E. Guasti Road, Suite 100
Ontario, CA 91761
Telephone: (909) 557-1250
rdm@mccunewright.com

*Co-Lead Counsel for Plaintiffs*

Mark C. Tanenbaum
**LAW OFFICE OF MARK C. TANENBAUM**
1017 Chuck Dawley Blvd., Suite 101
Mt. Pleasant, SC 29464
Telephone: (843) 577-5100
mark@tanenbaumlaw.com

William E. Hopkins, Jr.
**HOPKINS LAW FIRM, LLC**
12019 Ocean Highway
Pawleys Island, SC 29585
Telephone: (843) 314-4202
bill@hopkinslawfirm.com

*Liaison Counsel for Plaintiffs*

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ....................................... 3

    A.      History of the Litigation ........................................................................... 3

        1.      MDL 2036 ..................................................................................... 3

        2.      Formation of MDL 2613 ............................................................. 3

        3.      MDL 2613 Litigation .................................................................. 5

        4.      The *Dorsey* and *Lawrence* Matters ........................................... 6

    B.      Settlement Negotiations ............................................................................ 7

III.    SUMMARY OF THE SETTLEMENT TERMS ............................................... 8

    A.      Class Definition ......................................................................................... 8

    B.      Monetary Payment. ................................................................................. 10

    C.      Debt Forgiveness ..................................................................................... 10

    D.      Distribution of Net Settlement Fund ..................................................... 10

    E.      Allocation Formula ................................................................................. 12

    F.      *Cy Pres* Distribution .............................................................................. 16

    G.      Class Notice ............................................................................................. 16

    H.      Opt-Out Procedure ................................................................................. 19

    I.      Opportunity to Object ............................................................................ 20

    J.      Attorneys' Fees, Costs, and Service Award .......................................... 20

    K.      Release ...................................................................................................... 21

IV.     CLASS SETTLEMENT PROCEDURE ........................................................ 21

V.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE BECAUSE IT IS FAIR, ADQUATE, AND REASONABLE .................................................. 23

    A.      The Proposed Settlement Is the Product of Good-Faith Bargaining During Extensive, Arm's-Length Negotiations Between Experienced Counsel ...................................... 25

    B.      The Relative Strength of the Parties' Positions and Complexity of Protracted Litigation Support Approval of the Settlement .......................................................... 27

        1.      MDL 2036 Release ..................................................................... 28

        2.      The Certification of Classes ...................................................... 29

        3.      TD Bank Available Balance Claims and Damages ................. 29

        4.      South Financial Class Claims and Damages Issues. ............... 31

        5.      Usury Claim and Damages ....................................................... 32

i

|   | 6. | Regulation E Claims and Damages | 33 |
|   | 7. | Uber/Lyft Overdraft Claims and Damages | 34 |
|   | 8. | Business Account Claims and Damages | 35 |
|   | 9. | Methodology of Damages to Be Employed Presents a Difficulty of Proof Even if Plaintiffs Were to Prevail on the Merits | 36 |
| C. | | TD Bank's Solvency Does Not Impact Preliminary Approval | 37 |
| D. | | Degree of Opposition to the Settlement Voiced by Class Members Can Be Evaluated at Final Approval | 38 |
| VI. | | CERTIFICATION OF THE THREE NON-CERTIFIED SETTLEMENT CLASSES IS APPROPRIATE | 39 |
| A. | | Numerosity | 40 |
| B. | | Commonality | 41 |
| C. | | Typicality | 43 |
| D. | | Adequacy of the Named Plaintiffs and Their Counsel | 45 |
|   | 1. | Plaintiffs' Interests Do Not Conflict With the Interests of the Classes | 46 |
|   | 2. | Plaintiffs' Counsel Are Qualified. | 47 |
| E. | | Certification Is Proper Under Rule 23(b)(3) | 49 |
|   | 1. | Common Questions Predominate | 49 |
|   | 2. | Class Action Is a Superior Mechanism | 51 |
| VII. | | THE PROPOSED CLASS NOTICE AND CLAIM FORMS ARE APPROPRIATE | 52 |
| VIII. | | THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING | 54 |
| IX. | | CONCLUSION | 54 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*Am. Timber & Trading Co. v. First Nat'l Bank of Or.*,
   690 F.2d 781 (9th Cir. 1982) ................................................. 43

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................. 40, 46, 49, 50

*Austell v. Smith*,
   634 F. Supp. 326 (W.D.N.C. 1986) ................................................. 50

*Beaulieu v. EQ Indus. Servs., Inc.*,
   No. 06 Civ. 400, 2009 WL 2208131 (E.D.N.C. July 22, 2009) ............................................. 49

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015)................................................. 28

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) ................................................. 44, 46

*Brown v. Cameron-Brown Co.*,
   92 F.R.D. 32 (E.D. Va. 1981)................................................. 52

*Brown v. Nucor Corp.*,
   785 F.3d 895 (4th Cir. 2015) ................................................. 49

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981)................................................. 27

*Central Wesleyan Coll. v. W.R. Grace & Co.*,
   143 F.R.D. 628 (D.S.C. 1992) ................................................. 41

*Chatelain v. Prudential-Bache Sec., Inc.*,
   805 F.Supp.209 (S.D.N.Y. 1992) ................................................. 28, 36

*Chisolm v. TranSouth Fin. Corp.*,
   184 F.R.D. 556 (E.D. Va. 1999)................................................. 43

*City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*,
   270 F.R.D. 247 (D.S.C. 2010)................................................. 45

*City of Detroit v. Grinnell Corp.*,
   356 F. Supp. 1380 (S.D.N.Y. 1972) ................................................. 28

*Clark v. Experian Info. Sols., Inc.*,
   2004 WL 256433 (D.S.C. Jan. 14, 2004) ................................................. 38

*Cohen v. Chilcott*,
   522 F. Supp. 2d 105 (D.D.C. 2007)................................................. 50

*Cohen v. D.C. Nat'l Bank*,
   59 F.R.D. 84 (D.D.C. 1972)................................................. 43

*Comer v. Life Ins. Co. of Ala.*,
   2010 WL 233857 (D.S.C. Jan. 14, 2010) ................................................................. 43

*Cosgrove v. First & Merchants Nat'l Bank*,
   68 F.R.D. 555 (E.D.Va. 1975) ................................................................................... 43

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................................................... 53

*EQT Prod. Co. v. Adair*,
   764 F.3d 347 (4th Cir. 2014) ..................................................................................... 49

*Evans v. Jeff D.*,
   475 U.S. 717, 742 (1986) ........................................................................................... 40

*Falcon v. General Tel. Co.*,
   626 F.2d 369 (5th Cir. 1980) ..................................................................................... 47

*Fawcett v. Citizens Bank, N.A.*,
   2019 WL 1349225 (1st Cir. March 26, 2019) ........................................................... 32

*Fisher v. Va. Elec. & Power Co.*,
   217 F.R.D. 201 (E.D. Va. 2003) .......................................................................... 41, 53

*Flinn v. FMC Corp.*,
   528 F.2d 1169 (4th Cir. 1975) ........................................................................ 27, 37, 38

*Gen. Tel. Co. of SW v. Falcon*,
   457 U.S. 147 (1982) ................................................................................................... 47

*Gray v. Talking Phone Book*,
   2012 WL 12978113 (D.S.C. Aug. 13, 2012) ............................................................. 38

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003) ................................................................................ 47, 49

*Hall v. Higher One Machs., Inc.*,
   2016 WL 5416582 (E.D.N.C. Sep. 26, 2016) ............................................................ 25

*Harris v. Rainey*,
   299 F.R.D. 486 (W.D. Va. 2014) ............................................................................... 46

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   855 F. Supp. 825 (E.D.N.C. 1994) ..................................................... 24, 27, 36, 37

*In re A.H. Robins Co.*,
   880 F.2d 709 (4th Cir.1989) ...................................................................................... 40

*In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prod. Liab. Litig.*,
   2014 WL 12621614 (D.S.C. Oct. 15, 2014) .............................................................. 25

*In re Checking Account Overdraft Litigation*,
   281 F.R.D. 687 (S.D. Fla. 2012) ................................................................................. 3

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969) ............................................................................ 37

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir.1991) ............................................................................ passim

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F.Supp.2d 654 (E.D. Va. 2001) ...................................................... 23, 25, 40

*In re NeuStar, Inc. Sec. Litig.*,
    2015 WL8484438 (E.D. Va. Sep. 23, 2015) ...................................................... 24

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
    148 F.3d 283 (3d Cir. 1998) ............................................................................. 50

*In re Se. Hotel Props. Ltd. P'ship Inv'r Litig.*,
    151 F.R.D. 597 (W.D.N.C. 1993) ...................................................................... 45

*In re The Mills Corp. Sec. Litig.*,
    265 F.R.D. 246, 255 (E.D. Va. 2009) ............................................................... 25

*Kelley v. Norfolk & W. Ry.*,
    584 F.2d 34 (4th Cir. 1978) .............................................................................. 40

*Lienhart v. Dryvit Sys., Inc.*,
    255 F.3d 138 (4th Cir. 2001) ............................................................................ 43

*Lloyd v. Gen. Motors Corp.*,
    266 F.R.D. 98 (D. Md. 2010) ............................................................................ 45

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
    2009 WL 3094955 (E.D. Va. Sept. 28, 2009) ................................................... 24

*Mitchell-Tracey v. Utd. Gen. Title Ins. Co.*,
    237 F.R.D. 551 (D. Md. 2006) .......................................................................... 41

*Moodie v. Kiawah Island Inn Co.*,
    309 F.R.D. 370 (D.S.C. 2015) .......................................................................... 48

*Muhammad v. Nat'l City Mortg., Inc.*,
    2008 WL 5377783 (S.D. W. Va. Dec. 19, 2008) ............................................... 25

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 28

*Parker v. Asbestos Processing, LLC*,
    2015 WL 127930 (D.S.C. Jan. 8, 2015) ........................................................... 43

*Reed v. Big Water Resort, LLC*,
    2015 WL 5554332 (D.S.C. Sept. 21, 2015) ...................................................... 42

*Reyes v. Altamarea Grp., LLC*,
    2010 WL 5508296 (S.D.N.Y. Dec. 22, 2010) ................................................... 53

*Robinson v. Carolina First Bank NA*,
    2019 WL 719031 (D.S.C. Feb. 14, 2019) .................................................... 24, 25

*S.C. Nat'l Bank v. Stone*,
    139 F.R.D. 335 (D.S.C. 1991) ..................................................................... 27, 47

*Smith v. One Nev. Credit Union*,
    2018 U.S. Dist. LEXIS 157770 (D. Nev. Sep. 16, 2018) .................................................. 27, 28

*Smith v. Res-Care, Inc.*,
    2015 WL 461529 (S.D. W. Va. Feb. 3, 2015) ........................................................................... 47

*Soutter v. Equifax Info. Servs., LLC*,
    307 F.R.D. 183 (E.D. Va. 2015) ....................................................................................... 46, 52

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ...................................................................................................... 44

*Stillmock v. Weis Mkts.*,
    385 F. App'x 267 (4th Cir. 2010) ...................................................................................... 49, 51

*Talbott v. GC Servs., Ltd. P'ship*,
    191 F.R.D. 99 (W.D. Va. 2000) ........................................................................................ 44, 50

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
    2012 WL 13008138 (D.S.C. July 31, 2012) .......................................................... 37, 38, 40, 41

*Thomas v. La.-Pac. Corp.*,
    246 F.R.D. 505 (D.S.C. 2007) .................................................................................................. 41

*Trombley v. Nat'l City Bank*,
    826 F. Supp. 2d 179 (D.D.C. 2011) .......................................................................................... 50

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................................... 44

*Ward v. Dixie Nat'l Life Ins. Co.*,
    595 F.3d 164 (4th Cir. 2010) ..................................................................................................... 47

*Williams v. Henderson*,
    129 F. App'x 806 (4th Cir. 2005) .............................................................................................. 40

**Statutes**

Fed. R. Civ. P. 23(a)(1) ................................................................................................................. 39

Fed. R. Civ. P. 23(a)(2) ................................................................................................................. 40

Fed. R. Civ. P. 23(a)(3) ................................................................................................................. 42

Fed. R. Civ. P. 23(a)(4) ........................................................................................................... 44, 46

Fed. R. Civ. P. 23(b)(3) ....................................................................................... 39, 48, 50, 51

Fed. R. Civ. P. 23(c)(2)(b) ........................................................................................................... 53

Fed. R. Civ. P. 23(e) ............................................................................................................... 21, 23

Fed. R. Civ. P. 23(g)(1)(B)-(E) .................................................................................................... 46

Fed. R. Civ. P. 23(g)(1)(C)(i) ....................................................................................................... 46

**Treatises**

Wright, Miller & Kane, Fed. Prac. & Proc. § 1762 (2d ed. 1986)................................................. 40

Newberg & Conte, Newberg on Class Actions §§ 11.22, et seq. (4th ed. 2002)......................... 21

Manual For Complex Litig., Fourth, § 13.14 (2004) .................................................... 23

Moore's Fed. Practice, ¶ 23.45 ........................................................................ 52

Wright, Miller & Kane, Fed. Prac. & Proc. § 1779 (3d ed. 2005)................................................. 51

## I.    INTRODUCTION

This is a Multi-District Litigation ("MDL") involving TD Bank, N.A. ("TD Bank" or "TD"), the ninth largest national bank which operates in 15 states, and Carolina First Bank ("Carolina First"), a South Carolina-chartered bank which operated in North and South Carolina under the name of Carolina First, and in Florida as Mercantile Bank.  TD Bank acquired Carolina First on September 30, 2010.  The claims brought in this action and resolved by the proposed Settlement focus on several overdraft-related practices of TD Bank and Carolina First.

After six years of extensive and substantive litigation, the Parties have reached a Settlement to resolve claims brought on behalf of all class members and now present the Settlement to the Court for preliminary approval.

The terms of the Settlement are set forth in the detailed Settlement Agreement and, as further explained herein, the terms of the proposed Settlement are fair, adequate, and reasonable and the proposed Notice Program provides the best practicable notice under the circumstances and comports with Rule 23(c)(2) of the Federal Rules of Civil Procedure.  This motion is the first step in the settlement approval process.  During this phase, Plaintiffs[1] respectfully request that the Court enter the proposed Preliminary Approval Order (attached as Exhibit 1 to this Motion), and:  (1) find that it is likely to approve the terms of the Settlement under Rule 23(e)(2); (2) find that it will likely be able to certify the Settlement Classes for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the procedures for the Notice Program for Members of the Settlement Classes to exclude themselves from the Settlement Class or to object to the

---

[1] One of the named Plaintiffs, Amos Jones, has declined to participate in the Settlement. This motion is brought on behalf of all of the other named Plaintiffs identified in the Consolidated Amended Class Action Complaint.

Settlement; (5) appoint E. Adam Webb of Webb, Klase & Lemond, LLC and Richard D. McCune of McCune Wright Arevalo, LLP as Settlement Class Counsel, appoint G. Franklin Lemond, Jr. of Webb, Klase & Lemond, LLC, Michele M. Vercoski of McCune Wright Arevalo, LLP, Richard M. Golomb of Golomb & Honik, P.C.; Hassan A. Zavareei of Tycko & Zavareei LLP;  Joseph C. Kohn or Kohn, Swift & Graft, P.C.; Francis J. "Casey" Flynn, Jr. of Consumer Protection Legal, LLC; John R. Hargrove of the Hargrove Law Group, Mark C. Tanenbaum of the Law Office of Mark C. Tanenbaum, William E. Hopkins, Jr. of the Hopkins Law Firm, LLC, Christina Pierson of Kelley Uustal, PLLC, Dick Harpootlian of Richard A. Harpootlian, PA, Taras Kick of The Kick Law Firm, APC, Mark Kindall of Izard, Kindall & Raabe, LLP, and Jeff Ostrow of Kopelowitz Ostrow PA as Class Counsel; (6) appoint the named Plaintiffs, with the exception of Amos Jones, as representatives of the Settlement Classes; (7) stay the Action pending Final Approval of the Settlement; and (8) schedule a Final Approval hearing for a time and date mutually convenient for the Court, Class Counsel, and counsel for TD Bank to determine whether to approve the Settlement and Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards to Plaintiffs ("Final Approval Hearing").

As the proposed Settlement meets all criteria for preliminary approval, Plaintiffs' counsel respectfully requests that the Court preliminarily approve the Settlement so that notice of a final approval hearing may be disseminated to the Classes at this time.  Defendant has reviewed this motion and does not oppose the relief requested herein.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    History of the Litigation

#### 1.    MDL 2036.

In June 2009, the Judicial Panel on Multidistrict Litigation ("JPML") created *In re Checking Account Overdraft Litigation* (MDL 2036). TD Bank was among the defendant banks in MDL 2036. Plaintiffs in MDL 2036 alleged, *inter alia*, that TD Bank's practice of posting debit transactions in high-to-low order by amount violated the law and increased the number of overdraft fees it assessed customers. After the district court granted the plaintiffs' motion for class certification (*see In re Checking Account Overdraft Litig.,* 281 F.R.D. 687 (S.D. Fla. 2012)), TD settled the claims against it for $62 million. TD did amend its customer agreements during and after the MDL 2036 litigation in efforts to better describe its overdraft practices.

Although the claims brought by Plaintiffs here differ from those brought in MDL 2036 (as described below), TD has asserted throughout this litigation that those MDL 2613 Plaintiffs and putative Class Members who were members of the MDL 2036 settlement class are precluded from advancing the claims asserted here because the MDL 2036 release barred future overdraft-related claims against TD. Plaintiffs allege in this MDL that Class Members' overdraft-related claims arising after the date of preliminary approval of the MDL 2036 settlement were not waived.

#### 2.    Formation of MDL 2613

On August 21, 2013, Plaintiffs James E. King, Jr. and Jan Kasmir filed in this district *King v. TD Bank, N.A.*, Case No. 6:13-cv-02264-BHH ("*King*"), the first of several putative class action lawsuits against TD Bank alleging improper assessment and collection of overdraft fees and seeking monetary damages, restitution, and equitable relief. *King* also asserted claims

3

concerning the overdraft practices of Carolina First (including Mercantile Bank).  On February 24, 2014, *Padilla v. TD Bank, N.A.*, Case No. 2:14-cv-1276 ("*Padilla*") was filed in the United States District Court for the Eastern District of Pennsylvania, followed by *Hurel v. TD Bank, N.A.*, Case No. 14-cv-07621 ("*Hurel*"), a putative class action complaint filed on December 5, 2014, in the United States District Court for the District of New Jersey.

Three weeks later, *Koshgarian v. TD Bank, N.A.*, Case No. 14-cv-10250 ("*Koshgarian*"), was filed in the United States District Court for the Southern District of New York, followed by *Goodall v. TD Bank, N.A.*, Case No. 15-cv-00023 ("*Goodall*"), filed one week later on January 8, 2015, in the United States District Court for the Middle District of Florida.  The next day, *Klein v. TD Bank, N.A.*, Case No. 15-cv-00179 ("*Klein*") was filed, followed by *Ucciferri v. TD Bank, N.A.*, Case No. 15-cv-00424 ("*Ucciferri*") on January 21, 2015, both in the United States District Court for the District of New Jersey.  The class action complaint of *Austin v. TD Bank, N.A.*, Case No. 15-cv-00088 ("*Austin*"), was filed in the United States District Court for the District of Connecticut, also on January 21, 2015.

On March 9, 2015, Plaintiff Kendall Robinson filed *Robinson v. TD Bank, N.A.*, Case No. 15-cv-60469 ("*Robinson*"), in the United States District Court for the Southern District of Florida, and a second class action complaint styled *Robinson v. TD Bank, N.A.,* Case No. 15-cv-60476 ("*Robinson II*"), asserting a claim for usury under the National Bank Act.

In April 2015, pursuant to an order of the Judicial Panel for Multi-District Litigation ("JPML"), the majority of the class action cases were transferred to this Court and joined with *King* under the MDL caption *In Re: TD Bank, N.A. Debit Card Overdraft Litigation*, Case No. 1:15-md-02613-JLK ("MDL 2613").  ECF No. 6.  Eventually, all of the cases filed by 2015 were made a part of MDL 2613.  The following month, the Court appointed Adam Webb and Richard

McCune as Plaintiffs' Co-Lead Counsel; Richard Golomb, Hassan Zavereei, Joseph Kohn, Francis Flynn, and John Hargrove as Plaintiffs' Executive Committee; and Mark Tanenbaum and William Hopkins as Plaintiffs' Liaison Counsel.  ECF No. 28.

On June 19, 2015, named Plaintiffs from the above-entitled actions filed a Consolidated Amended Class Action Complaint in MDL 2613 alleging improper assessment and collection of overdraft fees and seeking monetary damages, restitution, and equitable relief.  ECF No. 37.

### 3.    MDL 2613 Litigation

In August 2015, TD Bank filed a motion to dismiss the Consolidated Amended Class Action Complaint, which Plaintiffs strongly opposed.  The Court issued an order granting in part and denying in part TD Bank's motion to dismiss.  ECF No. 68.  Following that ruling, the Parties aggressively pursued discovery.  TD Bank ultimately produced over 1,000,000 pages of documents (in addition to voluminous data files and spreadsheets) in the course of MDL 2613. Dozens of depositions of the named Plaintiffs and TD Bank executives, witnesses, and four experts were taken.  The depositions required national and international travel, as the Plaintiffs are spread out around the United States, and TD Bank's executives were in the northeast and Canada.

After a grueling discovery schedule over nine months, Plaintiffs moved for class certification on September 22, 2016, which TD Bank aggressively opposed.  In May 2017, the Court heard oral argument on Plaintiffs' motion for class certification, and an order was issued granting in part and denying in part Plaintiffs' motion for class certification.  ECF No. 169.  The Court certified two classes:  (1) the TD Sufficient Funds Class; and (2) the South Financial Class.  The Court also certified 17 subclasses of the TD Sufficient Funds Class and nine subclasses of the South Financial Class.  The Electronic Funds Transfer Act ("EFTA") Class,

asserting a claim for statutory damages, was eventually certified following two revisions of the EFTA Class definition.  *See* ECF Nos. 174, 184.  Concerning the scope of the certified classes, the Parties filed respective statements with the Court, with Plaintiffs contending that the TD Sufficient Funds Class includes business accounts.  *See* ECF Nos. 204-05.  The Court issued an Order limiting the certified classes in this case to consumer checking accounts only.  ECF No. 206.

TD Bank unsuccessfully filed a petition for leave to appeal the District Court's class certification order pursuant to Federal Rule of Civil Procedure 23(f).  The United States Court of Appeals for the Fourth Circuit denied TD Bank's petition.  ECF No. 181.

### 4.    The *Dorsey* and *Lawrence* Matters

Two additional cases were transferred into MDL 2613 since its inception.  On May 31, 2017, the JMPL transferred *Dorsey v. TD Bank, N.A.,* No. 1:17-cv-00074 (D.N.J.), and approximately one year later, it also transferred *Lawrence v. TD Bank, N.A.,* No. 1:17-cv-12583 (D.N.J.).

*Dorsey,* like the *Robinson II* case that was already included in MDL 2613, alleged that TD's sustained overdraft fee was usurious.  TD filed a motion to dismiss *Dorsey* which the Court granted in February 2018.  ECF No. 171.  That order is on appeal to the Fourth Circuit, which has stayed the matter pending this Court's consideration of the Settlement.

While *Lawrence* also deals with overdraft fees, its theory is fundamentally different than the other cases in this MDL because it focuses exclusively on TD's practice of charging overdraft fees on ride-share transactions (Uber/Lyft) when a customer has not opted-into TD's overdraft program (TD Debit Card Advance).  Plaintiff alleged that such fees violate the plain language of the account agreements and state law.  TD has moved to dismiss *Lawrence* on

various grounds. The motion has been denied as moot following the announcement of this settlement. ECF No. 27 in Case No. 6:18-cv-00982-BHH.

### B.    Settlement Negotiations

Over the long course of this litigation, the Parties participated in four separate mediations at various stages. First, after the ruling on the motion to dismiss but prior to class certification, on May 10, 2016, the Parties participated in mediation with an experienced mediator, who was particularly knowledgeable regarding overdraft fee litigation, Professor Eric Green of Resolutions LLC. The mediation was unsuccessful.

Second, after all briefs were submitted on class certification, but prior to the Court's ruling, the Parties participated in a two-day mediation with Magistrate Judge Mary Gordon Baker on March 8 and 9, 2017. The mediation adjourned without a resolution.

Third, after class certification was granted and TD Bank's Rule 23(f) petition to appeal the class certification order was denied, the Parties participated in a second mediation with Magistrate Judge Mary Gordon Baker on October 10, 2018. This mediation was also adjourned without resolution. However, the Parties initiated renewed settlement discussions in late 2018 which resulted in the scheduling of the fourth and final mediation.

The fourth and final mediation occurred on January 23, 2019, again mediated by Professor Green. As a result, on February 1, 2019, the Parties executed a Settlement Terms Sheet memorializing the material terms of the Settlement and filed a Joint Notice of Settlement with the Court. The final Settlement Agreement, if finally approved by the Court, resolves all remaining issues and settles this action in its entirety. The Parties intend the Settlement Agreement, subject to the Court's approval, to bind Plaintiffs, TD Bank, and all Members of the Settlement Classes who do not timely request to be excluded from the Settlement.

III.    **SUMMARY OF THE SETTLEMENT TERMS**

A.    **Class Definitions**

For settlement purposes only, the Plaintiffs have agreed to ask the Court to certify the

following "Settlement Classes" under Rule 23(b)(3) of the Federal Rules of Civil Procedure:

> All holders of a TD Bank Personal Account, who, from August 16, 2010 to and including April 22, 2016, incurred one or more Overdraft Fees as a result of TD Bank's practice of assessing Overdraft Fees based on the Account's Available Balance rather than its Ledger Balance ("TD Available Balance Consumer Class");

and

> All holders of a Carolina First Bank/Mercantile Bank Account, who, from December 1, 2007 to and including June 20, 2011, incurred one or more Overdraft Fees as a result of Carolina First Bank's and/or Mercantile Bank's practices of (1) High-to-Low Posting, or (2) assessing Overdraft Fees based on the Account's Available Balance rather than its Ledger Balance ("South Financial Class");

and

> All holders of a TD Bank Personal Account who were assessed one or more Overdraft Fees for an ATM or One-Time Debit Card Transaction from August 16, 2010 to and including [date of Preliminary Approval] ("Regulation E Class");

and

> All holders of a TD Bank Personal or Business Account who, from March 8, 2013 to and including [date of Preliminary Approval], incurred one or more Sustained Overdraft Fees ("Usury Class");

and

> All holders of a TD Bank Personal Account who, from December 5, 2011 to and including [date of Preliminary Approval], incurred one or more Overdraft Fees on Uber or Lyft ride-sharing transactions while not enrolled in TD Debit Card Advance ("Uber/Lyft Class");

and

> All holders of a TD Bank Business Account who, from August 16, 2010 to and including [date of Preliminary Approval], incurred one or more Overdraft Fees as a result of TD Bank's practice of assessing Overdraft Fees based on the Account's

8

Available Balance rather than its Ledger Balance ("TD Available Balance Business Class").

Excluded from the Settlement Classes are all current TD Bank employees, officers, and directors, the judge presiding over this Action, and all TD Bank account holders whose claims were released as a result of their membership in the Settlement Class in *In re Checking Account Overdraft Litigation*, Case No. 09-MD-2036 (S.D. Fla.) ("MDL 2036"). *See* Settlement Agreement ("SA"), ¶ 108; *see also In re Checking Account Overdraft Litig.*, Final Judgment, ¶ 6, Case No. 09-MD-2036, Dkt. No 3340 (S.D. Fla. Mar. 18, 2013) ("Final Judgment"). For purposes of this Settlement, the Parties agree that any potential Member of the Settlement Classes who was also a member of the Settlement Class in MDL 2036 has released any and all claims relating to Overdraft Fees that were incurred on an Account prior to September 20, 2012 (the date of Preliminary Approval of the MDL 2036 settlement).[2]  Accordingly, any member of the Settlement Class in MDL 2036 who did not incur one or more Overdraft Fees on an Account after September 20, 2012 will be excluded from this Settlement and shall not receive Notice.

Three of the six proposed Settlement Classes are the functional equivalents of the classes previously certified in the Court's Class Certification Orders, although the exact wording of the Settlement Class definitions and periods have been slightly modified. Namely, the TD Bank Available Balance Consumer Class is the functional equivalent of the TD Sufficient Funds Class (ECF No. 169), the Regulation E Class is the functional equivalent of the EFTA Class (ECF No. 184), and the South Financial Class is the functional equivalent of the certified litigation class of the same name (ECF No. 169).

---

[2] TD Bank expressly reserves, and does not waive, the right to take the position in other litigation that the release in the Final Judgment foreclosed certain claims of members of the MDL 2036 settlement class beyond September 20, 2012.  SA ¶ 109 n.2.

**B.**    **Monetary Payment.**

Under the proposed Settlement Agreement and Release, TD Bank shall pay $43,000,000 as monetary compensation to the six Settlement Classes ("Settlement Payment Amount").  *See* Exhibit 1 to the Declaration of Co-Lead Counsel ("Co-Lead Decl."); SA ¶ 102.  The settlement payment is inclusive of all monetary payments to the Settlement Classes, all fees, costs, charges, and expenses of Notice and administration of the Settlement, all attorneys' fees, costs, and expenses awarded to Class Counsel (subject to this Court's approval), and all Service Awards to the class representatives for their work on behalf of the class. *Id.* ¶111.

**C.**    **Overdraft Forgiveness**

In addition to the Settlement Payment Amount, TD Bank shall also provide $27,000,000, in the form of reductions to the outstanding balances of those members of the Settlement Classes whose Accounts were closed with amounts owed to TD Bank ("Overdraft Forgiveness Amount"). SA ¶ 82.  Specifically, the Overdraft Forgiveness Amount shall serve to reduce the amounts that members of the Settlement Classes owe TD Bank for overdraft fees, sustained overdraft fees, other TD Bank fees, and overdrafts the Bank paid but for which the Bank was not reimbursed. TD Bank reports to ChexSystems, a nationwide specialty consumer reporting agency for deposit accounts, any account that is closed with an amount owed to TD Bank of $75.00 or greater.  As part of the Settlement, TD Bank will inform ChexSystems to remove reporting for each Account that has its amount owed to TD Bank reduced to below $75 as a result of applying the Overdraft Forgiveness Amount. *Id.*

**D.**    **Distribution of Net Settlement Fund**

The Net Settlement Fund is equal to the Settlement Payment Amount plus any interest earned from the instruments or accounts into which the monetary settlement is deposited, and

less the (a) amount of the Court-awarded attorneys' fees, costs, and expenses to Class Counsel; (b) Court-awarded Service Awards to the Plaintiffs; (c) costs of Notice and administration of the Settlement, including a reservation of a reasonable amount of funds for prospective costs of Settlement administration including tax administration; and (d) all other necessary costs and/or expenses as permitted by the Settlement Agreement. SA ¶¶ 77, 111.

After complying with the procedures set out in the Settlement and summarized below, every qualified Settlement Class Member – either by submitting a claim or otherwise – shall be paid from the Net Settlement Fund the Total Settlement Payment Amount to which he or she is entitled, calculated as set forth in Section E, *infra.* Settlement Fund Payments to current account holders will be made by a credit to their accounts. SA ¶ 151. Settlement Fund Payments to past account holders will be made by check and will be sent to the addresses that the Settlement Administrator identifies as valid. SA ¶ 153. Checks shall be valid for 180 days. *Id.* For jointly held accounts, checks will be payable to all account holders, and will be mailed to the first account holder listed on the account. *Id.* The Settlement Administrator will make reasonable efforts to locate the proper address for any intended recipient of Settlement Funds whose check is returned by the Postal Service as undeliverable, and will re-mail it once to the updated address, or, in the case of a jointly held account, to an account holder other than the one listed first. *Id.*

The amount of the Net Settlement Fund attributable to uncashed or returned checks sent by the Settlement Administrator shall remain in the Settlement Fund for one year from the date that the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator shall make a reasonable effort to locate intended recipients of Settlement Funds whose checks were returned to effectuate delivery of such checks. SA ¶ 153.

### E.    Allocation Formula

The $43 million Settlement Payment Amount will be allocated to the six Settlement Classes as follows, prior to any reductions for attorneys' fees, costs, and expenses awarded to Class Counsel, costs of Notice and administration of the Settlement, and Service Awards for named Plaintiffs:

| Settlement Class | Settlement Payment Amount |
|---|---|
| TD Available Balance Consumer Class | $    33,385,964 |
| South Financial Class | $    4,173,246 |
| Regulation E Class | $    1,000,000 |
| Usury Class | $    2,086,623 |
| Uber/Lyft class | $    267,544 |
| TD Available Balance Business Class | $    2,086,623 |
| Total | $    43,000,000 |

SA ¶ 137.[3]   Additional information concerning the specific amounts allocated to each Settlement Class is provided later in this motion.

The Settlement consideration also includes TD Bank's promise to provide the Overdraft Forgiveness Amount of $27,000,000 in the form of reductions to the outstanding balances of those members of the Settlement Classes whose accounts were closed with amounts owed to TD Bank.  SA ¶ 141.   The Overdraft Forgiveness Amount serves to reduce the amounts that members of the Settlement Classes owe TD Bank for overdraft fees, sustained overdraft fees,

---

[3] The percentage of the total Settlement Payment Amount allocated to each class shall remain the same following reductions for attorneys' fees, costs, and expenses awarded to Class Counsel, costs of Notice and administration of the Settlement, and Service Awards for named Plaintiffs. For example, the TD Available Balance Consumer Class shall be entitled to 77.6% of the Net Settlement Fund ($33,385,964/$43,000,000 = 77.6%).  SA ¶ 143.

other TD Bank fees, and overdrafts the Bank paid but for which the Bank was not reimbursed. The methodology to apportioning the Overdraft Forgiveness Amount is set forth below:

| Settlement Class | Overdraft Forgiveness Amount |
|---|---|
| TD Available Balance Consumer Class | $      21,600,000 |
| South Financial Class | $          000.00 |
| Regulation E Class | $          000.00 |
| Usury Class | $        2,700,000 |
| Uber/Lyft class | $          000.00 |
| TD Available Balance Business Class | $        2,700,000 |
| Total | $      27,000,000 |

SA ¶ 141.

Plaintiffs propose that the amount of the distribution from the Net Settlement Fund to which each identifiable Member of the Settlement Classes is entitled be determined using the following methodologies.

*TD Available Balance Consumer Class.* The TD Available Balance Consumer Class is comprised of TD Bank Personal Account holders who incurred one or more Overdraft Fees during the class period as a result of TD Bank's practice of assessing Overdraft Fees based on the Account's Available Balance rather than its Ledger Balance.   Any Member of the TD Available Balance Consumer Class who wishes to receive a distribution from the Net Settlement Fund must submit a Claim Form.  SA ¶ 143(a).  To the extent the portion of the Net Settlement Fund allocated to the TD Available Balance Consumer Class is not sufficient to make full payment for all Eligible TD Available Balance Consumer Overdraft Fees assessed to Settlement Class Members who submit timely and valid claims, it shall be distributed on a *pro rata* basis to such Class Members.  *Id.*

13

*South Financial Class.* The South Financial Class is comprised of Carolina First Bank and Mercantile Bank account holders who incurred one or more Overdraft Fees during the class period as a result of Carolina First Bank's and/or Mercantile Bank's practices of (1) High-to-Low Posting, or (2) assessing Overdraft Fees based on the Account's Available Balance rather than its Ledger Balance. The portion of the Net Settlement Fund allocated to the South Financial Class will be distributed to Settlement Class Members who were assessed one or more Eligible South Financial Available Balance Overdraft Fees and/or Eligible South Financial High-to-Low Overdraft Fees on a *pro-rata* basis using calculations performed by Plaintiffs' expert. Members of the South Financial Class shall not be required to submit a Claim Form to receive a distribution. SA ¶ 143(b).

*Regulation E Class*. Settlement Class Members who were assessed Eligible Regulation E Overdraft Fees during the class period shall be entitled to make a claim for payment from the Net Settlement Fund of up to $35.00, and to the extent the portion of the Net Settlement Fund allocated to pay Eligible Regulation E Overdraft Fees is not sufficient to make a full $35.00 payment to all Settlement Class Members who submit timely and valid claims, it shall be distributed on a *pro rata* basis to such Class Members. SA ¶ 143(c).

*Usury Class.* The Usury Class is comprised of TD Bank account holders who incurred one or more Sustained Overdraft Fees during the class period. Any Member of the Usury Class who wishes to receive a distribution from the Net Settlement Fund must submit a Claim Form. To the extent the portion of the Net Settlement Fund allocated to the Usury Class is not sufficient to make full payment for all Eligible Sustained Overdraft Fees assessed to Settlement Class Members who submit timely and valid claims, it shall be distributed on a *pro rata* basis to such Class Members. SA ¶ 143(d).

*Uber/Lyft Class*. The Uber/Lyft Class is comprised of TD Bank personal account holders who incurred one or more Overdraft Fees on Uber or Lyft ride-sharing transactions during the class period while not enrolled in TD Debit Card Advance.  The portion of the Net Settlement Fund allocated to the Uber/Lyft Class will be distributed to Settlement Class Members who were assessed one or more Eligible Uber/Lyft Overdraft Fees on a *pro-rata* basis using calculations performed by Plaintiffs' expert.  Members of the Uber/Lyft Class shall not be required to submit a Claim Form to receive a distribution.  SA ¶ 143(e).

*TD Available Balance Business Class.* The TD Available Balance Business Class is comprised of TD Bank Business Account holders who incurred one or more Overdraft Fees during the class period as a result of TD Bank's practice of assessing Overdraft Fees based on the Account's Available Balance rather than its Ledger Balance.    Any Member of the TD Available Balance Business Class who wishes to receive a distribution from the Net Settlement Fund must submit a Claim Form.  To the extent the portion of the Net Settlement Fund allocated to the TD Available Balance Business Class is not sufficient to make full payment for all Eligible TD Available Balance Business Overdraft Fees assessed to Settlement Class Members who submit timely and valid claims, it shall be distributed on a *pro rata* basis to such Class Members. SA ¶ 143(f).

A Settlement Class Member may belong to more than one Settlement Class, and may receive distributions from the Net Settlement Fund for each Settlement Class to which the Class Member belongs.

In addition to distributions from the Net Settlement Fund, Members of the TD Available Balance Consumer Class, TD Available Balance Business Class, and Usury Class whose Accounts were closed with $75.00 or more owed to TD Bank may be entitled to be credited with

a portion of the Overdraft Forgiveness Amount. The Overdraft Forgiveness Amount allocated to these Classes will be distributed in such a manner as to reduce the amount owed to TD Bank to below $75.00 for the maximum number of Accounts possible, as described in the Settlement Agreement. SA ¶ 144. TD Bank shall inform ChexSystems to remove any reporting for each Account that has its amount owed to TD Bank reduced to below $75.00 as a result of applying the Overdraft Forgiveness Amount. As a result, in addition to a reduction in their amounts owed to TD Bank Settlement Class Members participating in the Overdraft Forgiveness Amount will have negative reporting associated with their Accounts removed from the ChexSystems database. *Id.* ChexSystems reporting can preclude consumers from opening bank accounts, and can be highly damaging to consumers who must handle common banking functions through other providers, such as payday lenders. *See* "Helping Consumers Who Have Been Denied Checking Accounts," CFPB (available at https://files.consumerfinance.gov/f/201602_cfpb_helping-consumers-who-have-been-denied-checking-accounts.pdf).

### F.    *Cy Pres* Distribution

Under no circumstances will any of the money from this Settlement revert to TD Bank. SA ¶ 155. Rather, if there are any residual funds remaining in the Net Settlement Fund after all Settlement Class Members have been paid the amounts to which they are entitled, the Settlement provides for a *cy pres* distribution of such residual funds, if approved by this Court, to a program that benefits consumer financial literacy education, and to educate and assist consumers with financial services issues through advisory and related services (excluding litigation). *Id.*

### G.    Class Notice

The Notice Program shall include the following three components: (1) Mail and/or E-Mail notice to Members of the Settlement Classes at their current or last known address in TD's

records, or at a more current address, if that information can reasonably be obtained by the Settlement Administrator; (2) Long-Form Notice on the Settlement Website; and (3) any other components necessary to satisfy the requirements of due process and Rule 23.  SA ¶ 120.

Subject to its statutory and regulatory obligations to protect its customers' private financial information, and pursuant to the terms of the Consent Order on Production of Customer Transactional Data entered in this Action, as well as a separate Confidentiality Agreement in a form acceptable to TD Bank which protects the confidentiality of Settlement Class Members' personal identifying information, which the Settlement Administrator shall be required to sign, TD Bank will provide to the Settlement Administrator a list that identifies, subject to the availability of information in reasonably accessible electronic form, the names, last known mailing addresses, and last known email addresses, if any, of identifiable Members of the Settlement Classes, delineating those who are Current Account Holders and those who are Past Account Holders (the "Class List").  SA ¶ 121.  The Parties and Class Counsel agree that the Settlement Administrator shall maintain the Class List and other information provided to it by or on behalf of TD Bank, including information derived therefrom, in a confidential manner, and that the Settlement Administrator will not provide such Class List or other information to any other person, including Class Counsel and Plaintiffs, without the prior written consent of TD Bank.  *Id.*

The primary method of notice for Members of the Settlement Classes is individual E-Mail Notice to the last known email address shown on TD Bank's records.  The secondary method of notice is individual Mail Notice to the last known mail address shown on TD Bank's records, or at a more current address, if that information can reasonably be obtained by the Settlement Administrator.   SA ¶ 122.   Within 30 days from the date that the Settlement

Administrator receives the Class List, the Settlement Administrator shall (1) send E-Mail Notice to Members of the Settlement Classes for whom the Settlement Administrator was provided an email address; and (2) mail Mail Notice to Members of the Settlement Classes for whom there are no email addresses on file.  *Id.*

The Settlement Administrator shall run the mailing addresses through the National Change of Address Database before mailing.  *Id.*  If an email is returned as undeliverable, the Settlement Administrator shall mail the Mail Notice to the Settlement Class Member.  *Id.*  For all Members of the Settlement Classes, if the mailed postcard is returned as undeliverable, the Settlement Administrator shall use reasonable efforts to locate a current mailing address for the Settlement Class Member and re-mail the notice to the current address.  *Id.*

The E-Mail and Mail Notice will direct Members of the Settlement Classes to the Long-Form Notice, which will be posted on the Settlement Website.  The E-Mail Notice will include a hyperlink to the Long-Form Notice and Claim Form.  The Mail Notice shall include a copy of the Claim Form.  SA ¶ 124.

As soon as practicable following Preliminary Approval, but prior to the sending of Notice, the Settlement Administrator shall establish the Settlement Website and a toll-free telephone line for Members of the Settlement Classes to call with questions.  SA ¶ 125.  The Internet address (URL) of the Settlement Website and the toll-free number shall be included in all forms of Notice sent to Members of the Settlement Classes.  *Id.*  The Settlement Website shall include this Agreement, the Long-Form Notice, the Preliminary Approval Order, the Claim Form, and such other documents as Settlement Class Counsel and TD Bank agree to post or that the Court orders posted on the website.  The website shall be capable of allowing Members of the Settlement Classes to complete and submit Claim Forms online.  *Id.*

The telephone line shall be capable of providing general information concerning the Settlement, including deadlines for objecting to or opting out of the Settlement or submitting a claim, and the dates of relevant Court proceedings, including the Final Approval Hearing. *Id.* The URL of the Settlement Website shall be www.TDBankOverdraftClassAction.com or such other URL as Settlement Class Counsel and TD Bank may subsequently agree upon in writing. *Id.* The Settlement Website and toll-free number shall be maintained at least through the Effective Date. *Id.* The Settlement Website shall not include any advertising, and shall not bear or include TD Bank's logos or trademarks. Operation of the Settlement Website shall cease no later than 60 days after distribution of the Net Settlement Fund to Members of the Settlement Classes has been completed as set forth in paragraphs 143 and 150, or such other date as Settlement Class Counsel and TD Bank shall agree, and ownership of the Settlement Website URL shall be transferred to TD Bank within ten days of the date on which operation of the Settlement Website ceases.

The Settlement Administrator shall cause to be maintained a record of activities, including Claim Form submissions, inquiries to the Settlement Website, downloads, phone calls and/or mailings, and shall ensure that a running tally is kept of the number and types of materials mailed by it or downloaded from the Settlement Website in a computerized database form. *Id.*

### H.    Opt-Out Procedure

The Notice shall include a procedure for Members of the Settlement Classes to opt-out of the Settlement. A Settlement Class Member may opt-out of the Settlement at any time during the Opt-Out Period. SA ¶ 126. Any Settlement Class Member who does not timely and validly request to opt-out shall be bound by the terms of the Agreement, including but not limited to the Releases contained in the Agreement. *Id.*

### I.    Opportunity to Object

The Notice also includes a procedure for members of the Settlement Classes to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and expenses and/or Service Awards to Plaintiffs. SA ¶ 127. Any such objections must be mailed to the Clerk of the Court, Settlement Class Counsel, and TD Bank's counsel. *Id.* For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Opt-Out Period, as specified in the Notice, and must include the specific information set forth in the Notice. SA ¶¶ 126-30.

### J.    Attorneys' Fees, Costs, and Service Award

Attorneys' fees and costs are to be paid out of the Settlement Fund. SA ¶ 161. TD Bank will not oppose Class Counsel's request for attorneys' fees of up to one-third of the $70 million value of the Settlement, or reimbursement of reasonable costs and expenses. *Id.* Class Counsel's request for attorneys' fees will be based on controlling Fourth Circuit precedent. *Id.* Any award of attorneys' fees, costs, and expenses to Class Counsel shall be payable solely out of the Settlement Fund.

Settlement Class Counsel will also request the Court to approve Service Awards of up to $10,000 per participating named Plaintiff, or $7,500 per Plaintiff for married couples in which both spouses are named Plaintiffs ("Service Awards"). SA ¶ 164. Service Awards are to be paid from the Settlement Fund and paid in addition to Plaintiffs' Settlement Class Member Payments. *Id.* TD Bank agrees not to oppose Settlement Class Counsel's request for the Service Awards. *Id.*

### K.    Release

In consideration for the Settlement, Class Members are releasing all claims that were or could have been alleged in this Action by Plaintiffs or other members of the Settlement Classes up to and including the date of preliminary approval of the Settlement relating in any way to Overdraft Practices, Overdraft Fees, and Sustained Overdraft Fees.  SA ¶ 156.

## IV.    CLASS SETTLEMENT PROCEDURE

Rule 23's class action settlement procedure includes the following steps:

1. The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class;

2. The court must direct notice in a reasonable manner to all Class Members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:
   a.    approve the proposal under Rule 23(e)(2); and

   b.    certify the class for purposes of judgment on the proposal.

3. A final settlement approval hearing at which Class Members may be heard regarding the settlement, and at which arguments concerning the fairness, adequacy, and reasonableness of the settlement, whether the proposal was negotiated at arm's length, whether the relief provided for is adequate, and whether the proposal treats Class Members equitably relative to each other, may be presented.

*See* Fed. R. Civ. P. 23(e).  This process safeguards Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian of the class's interests.  With this motion, Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement and approving Plaintiffs' proposed Notice and Claim Forms and ordering their distribution.

The Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1. Within **60 days** of the Court's order granting preliminary approval, TD Bank will provide the Settlement Administrator with the Class List, which includes the Class Members' names and contact information as may exist on file with TD Bank.  SA ¶¶ 119-21.

2. Within **30 Days** from the Date the Settlement Administrator receives the Class List, the Settlement Administrator shall distribute E-Mail Notice  to Members of the Settlement Classes for whom the Settlement Administrator was provided an email address and Mail Notice to Member of the Settlement Classes for whom there are no email addresses on file, as previously described.

3. The Settlement Administrator shall complete the Notice Program (which includes both E-Mail Notice and Mail Notice) no later than **70 days** before the Final Approval Hearing.

4. Following completion of the Notice Program, the Settlement Administrator shall provide Settlement Class Counsel and TD Bank an affidavit that confirms that the Notice Program was completed in a timely manner. Settlement Class Counsel shall file that affidavit with the Court as an exhibit to or in conjunction with Plaintiffs' Motion for Final Approval of the Settlement.  SA ¶ 123.

5. Class Members who wish to object or opt-out must do so within the Opt-Out Period, which ends no later than **35 days** prior to the Final Approval Hearing.  SA ¶¶ 80, 126.

6. Members of those Settlement Classes for which a Claim Form is required for payment must submit completed claims to the Settlement Administrator no later than **30 days** after the Final Approval Hearing.  SA ¶ 145.

7. No later than **56 days** prior to the Final Approval Hearing, Class Counsel shall file their motion for final approval of the Settlement, and their application for attorneys' fees, costs, and expenses and for Service Awards for Plaintiffs.  SA ¶ 134.

8. A Final Approval Hearing will be held as soon as is convenient for the Court.

9. Defendant shall fund the Settlement within **14 calendar days** after Preliminary Approval by providing the Settlement Payment Amount to the Settlement Administrator.  SA ¶ 136.

10. As soon as practicable, but in no event sooner than **30 days** after the Effective Date, the Settlement Administrator shall distribute the Net Settlement Fund as set forth in Section XII of the Settlement Agreement. "Effective Date" means the fifth business day after which all of the following events have occurred:

    a. All Parties, TD Bank's counsel, and Settlement Class Counsel have executed the Settlement;

    b. The Court has entered the Final Approval Order; and

    c. The time for seeking rehearing or appellate or other review has expired, and no appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired and relief from a failure to file same is not available.  SA ¶¶ 59, 148.

11. Settlement Class Members shall have **180 days** to negotiate their settlement checks.  SA ¶ 153.

## V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE BECAUSE IT IS FAIR, ADEQUATE, AND REASONABLE

Federal Rule of Civil Procedure 23(e) requires judicial approval of any proposed settlement of claims brought on behalf of a class.  *See* Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class may be settled . . . only with the court's approval.").  Courts may grant final approval of a proposed class settlement upon a "finding that [the settlement] is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Courts in the Fourth Circuit follow a bifurcated approach to determine whether a settlement is "fair, reasonable, and adequate" under Rule 23.  *See In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)).

First, at the preliminary approval stage, courts determine whether the proposed Settlement is "within the range of possible approval" or, whether there is "probable cause" to give notice of the proposed Settlement to class members. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 855 F. Supp. 825, 827 (E.D.N.C. 1994); *accord In re NeuStar, Inc. Sec. Litig.*, 2015 WL8484438, at *3 (E.D. Va. Sept. 23, 2015). The primary issue before the Court is whether the proposed Settlement is within the range of what might be found fair, reasonable, and adequate. *Robinson v. Carolina First Bank, N.A.,* 2019 WL 719031, at *7 (D.S.C. Feb. 14, 2019); *accord* Manual For Complex Litig., Fourth, § 13.14, at 172-73 (2004) (at the preliminary approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed Settlement, and date of the final fairness hearing").

The Court of Appeals for the Fourth Circuit has laid out a series of factors for courts to consider when determining whether a proposed settlement is fair and adequate and, thereby, reasonable. *Jiffy Lube*, 927 F.2d at 159. To determine the fairness of a proposed settlement, courts consider: (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation. *Jiffy Lube*, 927 F.2d at 159. There is a "strong presumption in favor of finding a settlement fair." *Lomascolo v. Parsons Brinckerhoff, Inc*., 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (internal quotation omitted). To determine the adequacy of a proposed settlement, courts consider: (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the

likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *Jiffy Lube*, 927 F.2d at 159; *MicroStrategy*, 148 F. Supp. 2d at 665.  These factors support preliminary approval here, as addressed below.

In making the determination of preliminary approval, the Court does not answer the ultimate question of whether the proposed Settlement is fair, reasonable, and adequate; this analysis is reserved for the second stage of the settlement approval process.  Instead, the first stage of the settlement approval process is focused on whether the settlement is sufficiently adequate to permit notice to be sent to the class.  *See Hall v. Higher One Machs., Inc.*, 2016 WL 5416582, at *5 (E.D.N.C. Sept. 26, 2016) ("If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to and opt out of the settlement.").  The court has the discretion to determine whether to approve the proposed Settlement.  *Jiffy Lube*, 927 F.2d at 158.  This Court has noted, however, that "[t]here is a strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation."  *Robinson*, 2019 WL 719031, at *8.

### A. The Proposed Settlement Is the Product of Good-Faith Bargaining During Extensive, Arm's-Length Negotiations Between Experienced Counsel

Courts in this circuit give substantial weight to the experience of the attorneys who prosecuted and negotiated the class settlement.  *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prod. Liab. Litig.,* 2014 WL 12621614, at *4 (D.S.C. Oct. 15, 2014); *Muhammad v. Nat'l City Mortg., Inc.,* 2008 WL 5377783, at *4 (S.D. W. Va. Dec. 19, 2008) (citing Newberg § 11.28); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 255 (E.D. Va. 2009); *see also In re MicroStrategy*, 148 F. Supp. 2d at 665 (holding that it is "appropriate for the court to give significant weight to the judgment of class counsel that the proposed settlement

25

is in the interest of their clients and the class as a whole, and to find that the proposed partial settlement is fair").

Here, the proposed Settlement resulted from arm's-length negotiations between counsel well versed in overdraft fee litigation. Co-Lead Decl. ¶ 2. Plaintiffs' Co-Lead Counsel are private law firms specializing in class action litigation involving overdraft practices of financial institutions, and Mr. McCune and Mr. Webb have both been appointed lead counsel in numerous state and federal class actions. Co-Lead Decl. ¶¶ 69-81. The members of Plaintiffs' Executive Committee have enormous class action experience, including in dozens of overdraft-related cases. *Id.*

Moreover, the Parties settled only after zealously litigating this case. Early in the case, the Parties exchanged significant discovery, conducted dozens of depositions, engaged four expert witnesses, performed detailed damages calculations, engaged in contested substantive motion practice, and engaged in vigorous settlement negotiations during and after all four of the mediations and in the context of negotiating the terms of the Settlement Agreement. *E.g.*, Co-Lead Decl. ¶¶ 22-23, 36-40. *See Jiffy Lube*, 927 F.2d at 159 (approving settlement, holding that although the settlement was reached early in the litigation before formal discovery had occurred, "documents filed by plaintiffs and evidence obtained through informal discovery yielded sufficient" information, as contrasted with extensive discovery in the instant matter). Prior to each of the mediation sessions, Class Counsel analyzed complex TD Bank data and reviewed extensive documents, including TD Bank's batch processing, opt-in policies and procedures, overdraft practices currently and historically, and rationales for such changes, as well as extensive class member overdraft data.

After agreeing on the settlement amount and material terms after extensive and multiple mediations conducted before an experienced magistrate judge and a learned professor and one of the most experienced mediators in the United States in consumer bank class actions, the Parties negotiated a lengthy settlement agreement over a period of several months.  Co-Lead Decl. ¶¶ 36-40.  These negotiations were arm's-length at all times, and resulted in a settlement that Plaintiffs' Counsel believe is in the best interest of the classes.  *Id*. ¶¶ 67-105.

Accordingly, because the negotiations were conducted through several years of arm's-length negotiations between experienced Parties, this factor supports a finding that the Settlement Agreement is fair, adequate, and reasonable.

### B.    The Relative Strength of the Parties' Positions and Complexity of Protracted Litigation Support Approval of the Settlement

In evaluating the strength of a case on the merits balanced against a proposed settlement, courts refrain from reaching conclusions on issues that have not been fully litigated.  *See S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (citing *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981)).  Because the object of settlement is to avoid, not confront, the determination of contested issues, the approval process should not be converted into an abbreviated trial on the merits.  *See Flinn v. FMC Corp.,* 528 F.2d 1169, 1172-73 (4th Cir. 1975) (noting that the settlement hearing is not "a trial or a rehearsal of the trial").

Accepting a settlement below the full recovery amount, even sometimes representing only a fraction of the full damages is warranted based on the strength of the claims and basis for damages.  *See Horton*, 855 F. Supp. at 833  ("The mere fact that the proposed settlement may amount to only a fraction of plaintiffs' loss, even if damages allowed recovery of such a loss, is not reason to deny approval.")  Courts in other Circuits have also determined that settlements are, of course, reasonable where plaintiffs recover only part of their actual losses.  *See Smith v.*

*One Nev. Credit Union*, 2018 U.S. Dist. LEXIS 157770, at *16 (D. Nev. Sept. 16, 2018) (settlement may be approved where it amounts to a "fraction of the potential recovery"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) ("it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)); *see also City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1386 (S.D.N.Y. 1972) (a recovery of 3.2% to 3.7% of the amount sought is "well within the ball park"), *aff'd in part, rev'd on other grounds*, 495 F.2d 448 (2d Cir. 1974); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) (approving settlement of approximately three percent of potential recovery in securities class action).

Based on the Parties' experiences to date with the litigation, mediations, and negotiations, the following areas were some of the major areas of contention between the Parties that factored into the risk evaluation of taking the case to trial.

### 1.    MDL 2036 Release

As stated above, TD has asserted since the inception of this MDL that several named Plaintiffs in MDL 2613 and many certified Class Members released some of their claims as part of the settlement entered in a prior MDL regarding overdraft fees. Although Plaintiffs believed and continue to believe that they were likely to prevail on this issue, discounting on this significant point of contention factored into the settlement analysis. The settlement of this action takes away the real risk of the MDL 2036 release entirely precluding recovery for certain Class Members.

## 2.    The Certification of Classes

While Plaintiffs believed class certification was warranted, TD Bank heavily contested class certification, arguing, *inter alia*, that individual issues predominated over common and uniform issues, that the class representatives were neither typical nor adequate, and that Plaintiffs' methodology for ascertaining Class Members and calculating damages was speculative and unreliable. Assuming that Plaintiffs were successful in overcoming a motion for summary judgment and could obtain a favorable verdict, there was a significant risk that on appeal the order certifying the class would be reversed, essentially ending the case. That issue factored into discounting for settlement purposes.

## 3.    TD Bank Available Balance Consumer Claims and Damages

Although Plaintiffs believe strongly in this claim, TD Bank has aggressively contested both the allegations and damages for Plaintiffs' claim that the use of Available Balance to determine overdraft fees was improper when the account's Ledger Balance was sufficient to cover the transaction at the time of posting. That claim was contested in the motion to dismiss, on class certification, and was likely to be heavily contested in a motion for summary judgment and trial if Plaintiffs were successful in overcoming the motion for summary judgment. While Plaintiffs felt strongly about the merits of the claim, there was a substantial risk that the Court or a jury could conclude that the relevant contract language authorized TD Bank to use Available Balance for assessing overdraft fees, resulting in no recovery for Plaintiffs. Moreover, even if Plaintiffs prevailed on liability, there were significant damage obstacles to overcome that influenced the settlement amount.

Like most banks, TD Bank makes use of three different customer balance calculations: (1) "Ledger Balance" is a customer's current account balance without reductions for any pending

debit transactions or holds on deposited funds; (2) "Collected Balance" is the current balance with reductions for pending debit transactions, but no reductions for holds on deposited funds; and (3) "Available Balance" is the current balance with reductions for any pending debit transactions and holds on deposited funds. Because Available Balance, unlike the other two balances, subtracts pending debit transactions, it will almost always be the lowest of the three balances any time there is a pending debit on the account. Ledger Balance will be greater than Collected Balance any time there is a pending debit on an account; otherwise, the two calculations will be identical. Based on the disagreement as to which is the proper balance on which to assess damages, it was appropriate for Plaintiffs to settle for a discounted amount.

Throughout the litigation, it has been anticipated that in order to present reduced damages in mediation and trial, TD would contend that even if Plaintiffs succeed in establishing the Bank was not entitled to assess overdraft fees based on Available Balance, the proper method of calculating damages is to determine the amount of fees assessed on a positive Collected Balance rather than a positive Ledger Balance. Damages based on Collected Balance methodology would have significantly reduced the recovery for Plaintiffs.

There was an additional damage issue that was strongly advanced by TD Bank that posed a significant risk to the recovery of this class. TD Bank, unlike most financial institutions, mailed customers an educational brochure ("TIPS Brochure") each time the customer overdrafted the account. The TIPS Brochure specifically stated the balance used to assess overdraft fees was the Available Balance, and explained how the Available Balance was reduced by pending debit transactions and holds on deposited funds. TD Bank advanced the theory that even accepting that the customer was unaware of the use of the Available Balance for assessing overdrafts at the time of account opening, the TIPS Brochure specifically advised the customer

30

of the use of Available Balance the first time they were assessed an overdraft fee, and therefore, damages were limited to this first occasion when the Class Members received an overdraft fee. This cut-off would have severely reduced damages for Plaintiffs, even if Plaintiffs were successful in the argument that assessing overdraft fees based on Available Balance violated TD's account agreements.

Even if Plaintiffs were to win on liability, but the jury was to accept TD Bank's theory of damages, then the full damages for the certified TD Available Balance consumer class would have been $38,214,422. In this Settlement, these Class Members will recover $54,985,964, consisting of $33,385,964 in monetary compensation and $21,600,000 in overdraft forgiveness. Accordingly, this Settlement constitutes an attractive percentage of potential recovery in light of the risks. Based on the likelihood that these Class Members would receive nothing if the case was lost, the risk of winning the verdict but having a significantly reduced damages, the risk of the class certification being reversed, the cost of litigation to secure a recovery, and the length of time necessary to secure the recovery should there be one, this is a very good recovery for the class and more than reasonable. Co-Lead Decl. ¶¶ 82-105.

### 4.    South Financial Class Claims and Damages Issues

The South Financial Class (which includes customers of Carolina First Bank in North and South Carolina and Mercantile Bank in Florida) pursues claims dealing with the reordering of debit card transactions from highest to lowest by amount and assessing overdraft fees based on Available Balance rather than Ledger Balance. Admittedly, there is some overlap between these two claims when it comes to calculating damages. In order for Plaintiffs to recoup damages from as far back as 2007, Plaintiffs would have to demonstrate that the statutes of limitations in certain states were tolled by the fact that the case against TD in MDL 2036 was pending. The

risk of the statutes of limitations having run on such damages was factored into settlement negotiations. While Plaintiffs feel strongly about the merits of both claims by the South Financial Class, TD Bank aggressively defended the claims and there was a significant chance that these Class Members would not have prevailed on some or all of their claims and damages.

Even if Plaintiffs were to win on liability, but the jury was to accept TD Bank's theory of damages, then the full damages for the certified South Financial Class would have been $5,922,183, comprised of $3,135,716 (available balance claims) and $2,786,467 (high to low claims). In this Settlement, South Financial Class Members will recover $4,173,246 in monetary compensation. Accordingly, this Settlement includes an attractive percentage of the total potential verdict. Based on the likelihood that these Class Members would receive nothing if the case was lost, the cost of litigation to secure a recovery, and the length of time necessary to secure the recovery if there was one, this is a very good recovery for the class and more than a reasonable settlement. Co-Lead Decl. ¶ 82-105.

### 5.    Usury Claim and Damages

As set forth in the case background, *supra,* the Court had granted the motions to dismiss the usury claims in the *Robinson* and *Dorsey* cases. Although *Dorsey* was being briefed on appeal prior to the appeal being stayed, the inclusion of the usury claims in the Settlement Classes eliminates a very significant risk of adverse decision from the Fourth Circuit. Moreover, settlement of the Usury Class claims is now further supported by the First Circuit recently affirming the Massachusetts district court's holding that "sustained overdraft fees" were not "interest" under the National Bank Act. *See Fawcett v. Citizens Bank, N.A.,* 2019 WL 1349225 at 7 (1st Cir. March 26, 2019). Although not binding on this Circuit or this Court, such a ruling

is certainly persuasive and increases the risk of no recovery for the Usury Class, other than through settlement and is therefore properly discounted.

In light of this Court's prior rulings and those in other courts, nearly any recovery for the usury theory should be deemed reasonable. In this Settlement, members of the Usury Class will recover $4,708,623, consisting of $2,086,623 in monetary compensation and $2,700,000 in overdraft forgiveness. Accordingly, this Settlement offers a substantial recovery. Based on the high likelihood that these Class Members would receive nothing if the case was lost, the cost of litigation to secure a recovery, and the length of time necessary to secure the recovery if there was one, this is a very good recovery for the class and more than a reasonable settlement. Further, the true percentage of recovery for those customers who come forward and make a claim and receive a portion of the Settlement will potentially be quite high. That percentage will be provided to the Court before final approval. Co-Lead Decl. ¶¶ 82-105.

### 6. Regulation E Claims and Damages

As also discussed in the case background, the Court certified five subclasses of alleged Regulation E violations. These claims were hotly contested by Defendant and would have continued to be aggressively contested in a motion for summary judgment, trial, and appeal.

Plaintiffs take the position that the full value of the Regulation E claims if Plaintiffs were to win on all five theories and receive full damages was $2,500,000, five times the statutory damages cap of $500,000. TD Bank, in turn, has argued that the $500,000 statutory cap applies to the action as a whole, and that multiple violations cannot be stacked to increase the cap, thereby limiting damages for the entire Regulation E class to $500,000. In this Settlement, the Regulation E Class Members will receive $1,000,000. Accordingly, this Settlement constitutes approximately 40% of the total potential verdict under Plaintiffs' damages theory, and double the

total available damages under TD's theory.  Based on the high likelihood that these Class Members would receive nothing if the case was lost, the obstacles to maintaining class certification, the cost of litigation to secure a recovery, and the length of time necessary to secure the recovery if there was one, this is a very good recovery for the class and more than a reasonable settlement.  Co-Lead Decl. ¶¶ 82-105.

### 7.    Uber/Lyft Overdraft Claims and Damages

As also discussed in the case background, *supra,* another looming risk is the pending decision on the motion to dismiss the claims alleged in the *Lawrence* matter, which claims damages for TD Bank's charging of overdraft fees on ride-share transactions when a customer has not opted-in to TD Bank's overdraft program.  While Plaintiffs felt strongly about the merits of the claim, TD Bank aggressively contested the claim.  At the very least there is an uncertain outcome both on motion to dismiss and on the merits of the claim if Plaintiffs were successful in overcoming the motion to dismiss.

The full value of the Uber/Lyft claim if Plaintiffs were to win on all theories and receive full damages was $611,409.  If Plaintiffs were to win on liability, but the jury was to accept TD Bank's theory of damages, then the full damages would have been $309,386.  In this Settlement, Uber/Lyft Class Members will recover $267,544 in monetary compensation.  Accordingly, this Settlement constitutes between approximately 44% and 86.5% of the total potential verdict. Based on the high likelihood that these Class Members would receive nothing if the case was lost, the cost of litigation to secure a recovery, and the length of time necessary to secure the recovery if there was one, this is a very good recovery for the class and more than a reasonable settlement.  Co-Lead Decl. ¶¶ 82-105.

### 8.    TD Bank Available Balance Business Account Claims and Damages

The Parties disagreed about whether TD Bank business accounts were included in the Consolidated Complaint and in the Class Certification Order.  It was Plaintiffs' position that the TD Sufficient Fund Class specifically includes "[a]ll customers of TD Bank" and therefore includes business accounts.  In addition, several of the named Plaintiffs had business accounts.  However, the Court declined Plaintiffs' request to include business accounts in the certified classes.  ECF No. 206.  Therefore, by including TD Bank Business Accounts as a Settlement Class, this Settlement provides business account customers with some relief, rather than none.  This Settlement provides business customers relief that was very much at risk in proceeding with the litigation.

Even if Plaintiffs were to eventually have the Court's ruling reversed and win on liability for business customers, if the jury was to accept TD Bank's theory of damages, then the full damages would have been $9,685,412 (through February 22, 2018).  In this Settlement, TD Available Balance Business Class members will recover $4,786,623, consisting of $2,086,623 in monetary compensation and $2,700,000 in overdraft forgiveness.  Accordingly, this Settlement constitutes an attractive percentage of potential recovery in light of the risks.  Based on the high likelihood that these Class Members would receive nothing if the case was lost, the cost of litigation to secure a recovery, and the length of time necessary to secure the recovery if there was one, this is a very good recovery for the class and more than a reasonable settlement.  Further, the true percentage of recovery for those customers who come forward and make a claim and receive a portion of the Settlement will be a much higher percentage of their potential claims.  That percentage will be provided to the Court before final approval.  Co-Lead Decl. ¶¶ 82-105.

9.      **Methodology of Damages to Be Employed Presents a Difficulty of Proof Even if Plaintiffs Were to Prevail on the Merits**

As demonstrated above with respect to each Settlement Class and each Settlement Class's damages, the methodology employed by Plaintiffs' database expert results in damages that varies greatly from TD's calculation of damages, as well as the point in which damages are cut off and how they are discounted.  Such disputes are legitimate and reasonable minds certainly may differ and have differed among the neutrals employed to mediate this case.  Consequently, whether Plaintiffs could employ their standard measure of damages is questionable, even if Plaintiffs were to prevail on the merits at trial.

The settlement provides $43,000,000 of new money and $27,000,000 of overdraft forgiveness for a total benefit of $70,000,000.  The calculated trial damages of the Settlement Classes is much higher but, if the trier of fact accepts TD's position on damages of approximately $60,000,000 (i.e., fees assessed on Collected Balance and cut off at TD's mailing of the TIPS Brochure), the proposed settlement would constitute approximately 116% of what TD alleges Plaintiffs could recover, which is more than the full damages.  Co-Lead Decl. ¶ 103.[4] This Circuit and all others have approved settlements involving small percentages of possible recovery in class action suits.  *See, e.g., Horton,* 855 F. Supp. at 833 (approving a settlement of approximately five percent of plaintiffs' potential recovery); *Grinnell*, 495 F.2d at 455 (approving a three to five percent recovery); and *Chatelain*, 805 F. Supp. at 212 (approving settlement of approximately three percent of potential recovery in securities class action).  More

---

[4] Based on this Court's rulings with respect to usury in *Robinson II* and *Dorsey*, this figure excludes usury damages.  Inclusion of usury damages would increase TD's damages number by more than $50,000,000.  Including usury, the proposed Settlement constitutes approximately 64% of what TD alleges Plaintiffs could recover at trial, if Plaintiffs were to prevail on liability on all asserted theories.

importantly, however, the adequacy of the Settlement depends on the strengths and weaknesses of Plaintiffs' case, and several courts, including the Fourth Circuit, have stated that a settlement that amounted to only a fraction of the potential recovery would not be *per se* inadequate. *See Horton,* 855 F. Supp. at 833 (citing *Flinn*, 528 F.2d at 1173-74). Therefore, "the mere fact that the proposed settlement may amount to only a fraction of plaintiffs' loss, even if damages allowed recovery of such a loss, is not reason to deny approval." *Horton,* 855 F. Supp. at 833. Therefore, while it would be unnecessary at this stage to make a final determination on the measure of damages to be employed, Plaintiffs' potential difficulties and risks surrounding the issue of damages support a finding that the Settlement is adequate.

In sum, although Plaintiffs believe their claims have merit and recognize the relative strengths of the case, Plaintiffs also recognize the existence of the defenses and risks detailed above involved in a trial of this case and the great expense for both sides. The Parties have incurred significant costs in litigating for over six years and, although considerable time and money has been expended, to continue to trial would involve exponentially more work for the Parties, counsel, and the Court. Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969). In contrast to this uncertainty, this Settlement provides for significant compensation to Class Members in all six classes. Co-Lead Decl. ¶ 105; SA ¶ 137.

### C.    TD Bank's Solvency Does Not Impact Preliminary Approval

When comparing the amount of the Settlement with the potential liability of the settling defendant, the Fourth Circuit advises courts to consider a defendant's ability to pay any subsequent judgment and the availability or lack thereof of insurance proceeds. *See Jiffy Lube*, 927 F.2d at 159. However, courts in this circuit agree that where a defendant is in no danger of becoming insolvent, this factor does not impede settlement approval. *See, e.g., Temp. Servs.,*

*Inc. v. Am. Int'l Group, Inc.*, 2012 WL 13008138, at *11 (D.S.C. July 31, 2012); *Gray v. Talking Phone Book*, 2012 WL 12978113, at *6 (D.S.C. Aug. 13, 2012) ("The Defendants' ability to pay is not in question and does not raise questions about the circumstances or adequacy of the Settlement."); *Clark v. Experian Info. Sols., In*c., 2004 WL 256433, at *9 (D.S.C. Jan. 14, 2004) ("The court has also considered but given little weight to the fourth *Jiffy Lube* factor: Defendant's ability to pay such judgments as could be rendered against it were this action to proceed to trial. This factor is either neutral or slightly favors settlement.").

Here, Carolina First Bank was acquired by TD Bank in 2010, and there is no record of TD Bank being at risk of insolvency.  This factor does not impact the preliminary approval analysis.

### D.    Degree of Opposition to the Settlement Voiced by Class Members Can Be Evaluated at Final Approval

As stated by the Fourth Circuit, "[t]he attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court . . . ."  *Flinn*, 528 F.2d at 1173.

Because Class Members have not been notified of the Settlement at this stage, the Court will be in a better position to fully analyze this factor after notice issues and Class Members have had an opportunity to opt-out or object to the Settlement.  Thus, this factor is neutral and supports Plaintiffs' Motion to the extent it does not preclude preliminary approval.

In sum, the terms of the proposed Settlement are fair, adequate, and reasonable, as evidenced by application of the relevant Fourth Circuit factors, which support preliminary approval of the Settlement.

## VI.    CERTIFICATION OF THE SETTLEMENT CLASSES FOR SETTLEMENT PURPOSES IS APPROPRIATE[5]

Plaintiffs seek to certify the six Settlement Classes set forth at pages 7-9 of this Motion for settlement purposes only.  As stated above, three of the six proposed Settlement Classes are the functional equivalents of the classes previously certified in the Court's Class Certification Orders.  Specifically, the TD Available Balance Consumer Class (ECF No. 169), the South Financial Class  (ECF No. 169), and the Regulation E Class (ECF No. 184) were previously certified by this Court in an adverse, fully contested Class Certification proceeding. Because the Court has already addressed Rule 23's requirements with respect to these three classes, it need not do so again here for settlement purposes.

In addition to the three classes addressed by the Court's prior Class Certification Orders, Plaintiffs seek certification of three additional classes for settlement purposes only:  TD Available Balance Business Class; Usury Class; and Uber/Lyft Class (collectively, the "Additional Settlement Classes").

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Certification of the Additional Settlement Classes under Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the

---

[5] The arguments presented in this section do not reflect the position of TD Bank with respect to Rule 23's requirements.  As stated in the Settlement Agreement, TD Bank's support for certification of the Settlement Classes is without prejudice to its right to oppose certification of litigation classes if the Settlement is not approved or the Effective Date does not occur. *See* Advisory Committee Notes to 2018 Amendments to Rule 23, subdivision (e)(1) ("the standards for certification differ for settlement and litigation purposes….If the settlement is not approved, the parties' positions regarding certification for settlement should not be considered if later sought for purposes of litigation.").

> claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

A potential settlement "is a relevant consideration when considering class certification." *Temp. Servs.*, 2012 WL 4061537, at *1.  "If not a ground for certification *per se*, certainly settlement should be a factor, and an important factor, to be considered when determining certification."  *Id*. (citing *In re A.H. Robins Co.*, 880 F.2d 709, 740 (4th Cir. 1989), *abrogated by Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997)).

"Ultimately, approval of a class action settlement is committed to the sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case by-case basis, in light of the relevant circumstances."  *In re MicroStrategy*, 148 F. Supp. 2d at 663 (quoting *Evans v. Jeff D.,* 475 U.S. 717, 742 (1986)) (internal quotation marks omitted).

## A.    Numerosity

Numerosity requires that the class be so numerous that "joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied."  *Kelley v. Norfolk & W. Ry.,* 584 F.2d 34, 35 (4th Cir. 1978).  However, the Fourth Circuit has indicated that a class with over thirty members is numerous enough to satisfy this inquiry.  *See Williams v. Henderson*, 129 F. App'x 806, 811 (4th Cir. 2005) (citing 7A Wright, Miller & Kane, Fed. Prac. & Proc. § 1762 (2d ed. 1986)).

The putative Additional Settlement Classes here easily satisfy the numerosity requirement. Although the exact number of the members of each class is unknown at this time, TD Bank has represented in discovery responses and negotiations that the proposed Classes are comprised of hundreds of thousands of TD customers and tens of thousands of Carolina First customers, making joiner of them all impracticable. Accordingly, the Additional Settlement Classes meet Rule 23(a)'s numerosity requirement.

### B.    Commonality

Rule 23(a)(2) requires that the court find that "that there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires "little more than the presence of common questions of law and fact." *Thomas v. La.-Pac. Corp.*, 246 F.R.D. 505, 513 (D.S.C. 2007) (internal citations omitted). The commonality requirement of Rule 23(a)(2) "does not require that all, or even most issues be common, nor that common issues predominate, but only that common issues exist." *Central Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992), *aff'd* 6 F.3d 177 (4th Cir. 1993).

Rule 23(a)(2)'s commonality requirement is met where the defendant engaged in a common course of conduct. *Temp. Servs.*, 2012 WL 2370523, at *2 (citing *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 223 (E.D. Va. 2003)). This commonality requirement does not, however, mandate complete identity of a plaintiffs' claims with those of the class. *Temp. Servs.*, 2012 WL 2370523, at *2 (citing *Fisher*, 217 F.R.D. at 212). The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Jeffreys*, 212 F.R.D. at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory").

41

Just as this Court found that Rule 23(a)(2) commonality was satisfied with respect to Plaintiffs' available balance theory for consumer accounts (ECF No. 169, p. 28), then the same is true for the TD Available Balance Business Class and the Uber/Lyft Class. Here, just like the available balance theory for consumers, all members of the Business Class and Uber/Lyft Class are unified by common factual allegations and questions of law. This Court found that "[s]pecifically, the *answer* to the overarching question of whether it was permissible, under the contract and/or other legal duties, for the Bank to charge overdraft fees before it actually advanced any funds to the customer" will resolve Plaintiffs' available balance claims for consumer accounts, which is the same theory and contracts underlying the Business Class and Uber/Lyft Class claims. *Id.* Although the business account contracts may differ from the consumer contracts, it is the interpretation of the same contractual provision at issue for all class members, *i.e.*, common questions generating common answers. *See Reed v. Big Water Resort, LLC,* 2015 WL 5554332, at *6 (D.S.C. Sept. 21, 2015) (finding that where at issue for all class member is interpretation of the same contract and/or provisions, "this common question should generate a common answer").

Likewise, individual issues do not predominate as to Plaintiffs' Usury Class. The questions of law and fact common to the Usury Class are whether TD Bank (a) charged interest to its customers under the guise of a "sustained" overdraft fee in amounts that violate applicable usury laws; (b) developed and engaged in an unlawful practice that mischaracterized or concealed the true usurious nature of the "sustained" overdraft fee; and (c) imposed a "fee" on its customers that bears no relationship to the actual costs and risks of covering insufficient funds transactions.

Similar issues have been found to satisfy the commonality requirement in usurious claims against banks. *See Am. Timber & Trading Co. v. First Nat'l Bank of Or.*, 690 F.2d 781 (9th Cir. 1982) (district court certified usury class action, where bank required customers to maintain balance in special accounts equal to a percentage of their loans, and where bank charged a daily interest above the stated rate); *Cosgrove v. First & Merchants Nat'l Bank*, 68 F.R.D. 555 (E.D. Va. 1975) (class certification appropriate where plaintiffs alleged that bank's 2% charge on cash advances was usurious); *Cohen v. D.C. Nat'l Bank*, 59 F.R.D. 84, 89 (D.D.C. 1972) (usury issue met the commonality test of Rule 23(a)(2) and the court certified a class composed of "all members who, because of the computational method use and the various charges imposed, have been allegedly required to pay money in excess of the . . . limit of 8 percent per annum on the loans which they have transacted with a particular bank").

## C.     Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is met if a plaintiff's "claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Parker v. Asbestos Processing, LLC*, 2015 WL 127930, at *8 (D.S.C. Jan. 8, 2015); *see also Comer v. Life Ins. Co. of Ala.*, 2010 WL 233857, at *4 (D.S.C. Jan. 14, 2010). Complete identity between claims in each individual action is not required. *Parker*, 2015 WL 127930, at *8 (citing *Chisolm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 563-64 (E.D. Va. 1999)).

"A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). Nevertheless, the class representatives and the class members need not have identical

43

factual and legal claims in all respects. *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998). "'The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.'" *Broussard*, 155 F.3d at 340 (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998), *cert. denied*, 524 U.S. 923 (1998)).

Commonality and typicality tend to merge because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, n. 5 (2011). The existence of routine and standardized practices giving rise to numerous claims weigh in favor of finding commonality, as well as typicality. *See, e.g.*, *Talbott v. GC Servs., Ltd. P'ship,* 191 F.R.D. 99 (W.D. Va. 2000) (Fair Debt Collection Practices Act claim arising from the mailing of numerous standardized notices).

This Court also found that Plaintiffs' available balance theory for consumer accounts also satisfied Rule 23(a)(3)'s typicality requirement. ECF No. 169, pp. 33-34. Plaintiffs' claims are typical because TD's liability under the available balance theory "depends on legal and factual issues that are the same for all Plaintiffs and class members" and "TD's checking account policies and practices were governed by form contracts with terms applicable to Plaintiffs and class members alike" as well as controlling processing systems that applied across the board. *Id.* at 33. The Court further found that the question of "whether it was permissible under the Bank's materially uniform contract with its customers, and associated common law and statutory duties" for TD to impose overdraft fees before money actually left the accounts was a common issue typical to the class as opposed to an individual issue. *Id.*

Again, the same common issues that resolve the Plaintiffs' available balance claims are typical of the class as a whole, and the same is true with the representative parties' claims for the Business Class and Uber/Lyft Class claims. Likewise, each Plaintiff and the members of the Usury Class were governed by common and materially uniform practices and policies of TD Bank and the applicable usury laws, and were charged interest under the guise of a "sustained" overdraft fee. The members of the Usury Class were exposed to the same enterprise-wide campaign of misleading representations and omissions which, as alleged, resulted in fees on its customers in the same manner that bears no relationship to the actual costs and risks of covering insufficient funds transactions.

Thus, the claims of Plaintiffs and the Business, Uber/Lyft, and Usury Classes arise from the same course of TD's conduct and are based on the same legal theories, thereby satisfying Rule 23(a)(3).

### D.   Adequacy of the Named Plaintiffs and Their Counsel

Rule 23(a)(4) requires that the representative parties will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry involves two issues: "(i) whether plaintiffs have any interest antagonistic to the rest of the class; and (ii) whether plaintiffs' counsel are qualified, experienced and generally able to conduct the proposed litigation." *City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*, 270 F.R.D. 247, 252 (D.S.C. 2010); *see also Lloyd v. Gen. Motors Corp.*, 266 F.R.D. 98, 103 (D. Md. 2010) (providing similar inquiry). "The burden is on the defendant's [sic] to prove that the representation will be inadequate." *In re S.E. Hotel Props. Ltd. P'ship Investor Litig.*, 151 F.R.D. 597, 606-07 (W.D.N.C. 1993).

### 1.    Plaintiffs' Interests Do Not Conflict With the Interests of the Classes

Rule 23(a)(4) seeks to ensure that the named plaintiff will protect the class in matters germane to the claims in the litigation, and it also looks to the personal characteristics of the named plaintiff to see whether he or she is a fit representative. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). "The premise of a class action is that litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members." *Broussard*, 155 F.3d at 338. Whereas "typicality focuses on the similarities between the class representative's claims and those of the class, . . . adequacy focuses on evaluating the incentives that might influence the class representative in litigating the action, such as conflicts of interest." Newberg § 3:32; *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 212 (E.D. Va. 2015).

Neither Plaintiffs nor their counsel have any interests that are antagonistic to those of the absent Class Members. The central issues in this case – the existence, unlawfulness, and effect of TD's and Carolina First's assessment of overdraft fees even when consumer and/or business accounts were not overdrawn and to evade Reg E and usury laws – are common to the claims of Plaintiffs and the other members of the Classes. Each representative Plaintiff, like each absent Class Member, has a strong interest in establishing the impropriety of these practices, demonstrating the impact of the conduct, and obtaining redress.

Certainly, no Class Member has an interest in paying more overdraft fees or disguised usurious fees, and there is no colorable argument to be made that TD's imposition of excessive overdraft fees benefitted the Classes. As Plaintiffs can prove their own claims if this case goes to trial, they also will be proving the claims of hundreds of thousands of absent Class Members. *See Harris v. Rainey*, 299 F.R.D. 486, 491 (W.D. Va. 2014) (recognizing that "[a] conflict must

be fundamental to defeat adequacy of representation; a conflict is not fundamental when all class members 'share common objectives and the same factual and legal positions and have the same interest in establishing the liability of defendants'") (quoting *Ward v. Dixie Nat'l Life Ins. Co*., 595 F.3d 164, 180 (4th Cir. 2010), and *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 431 (4th Cir. 2003)).  Plaintiffs thus share the true interests and goals of the class here.  There is no conflict between the Plaintiffs and the absent Class Members in the Business, Uber/Lyft, or Usury Classes, like the previously-certified classes, and Plaintiffs satisfy the requirements of Rule 23(a)(4).

### 2.     Plaintiffs' Counsel Are Qualified.

Rule 23(a)(4) also "raises concerns about the competency of class counsel and conflicts of interest."  *Gen. Tel. Co. of SW v. Falcon,* 457 U.S. 147, 158 (1982).  Additionally, Rule 23(g) requires that a court certifying a class appoint class counsel after considering several factors:

> The work counsel has done in identifying or investigating potential claims in the action; [c]ounsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; [c]ounsel's knowledge of the applicable law; and [t]he resources counsel will commit to representing the class.

*Smith v. Res-Care, Inc.,* 2015 WL 461529, at *7 (S.D. W. Va. Feb. 3, 2015) (citing Fed. R. Civ. P. 23(g)(1)(C)(i)).  The Court: [a] may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class; [b] may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and [c] may make further orders in connection with the appointment.  Fed. R. Civ. P. 23(g)(1)(B)-(E).

As to vigorous prosecution, the adequacy of Plaintiffs' counsel is "presumed in the absence of specific proof to the contrary."  *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 325, 330-31 (D.S.C. 1991) (quoting *Falcon v. General Tel. Co*., 626 F.2d 369, 376 n.8 (5th Cir. 1980),

*vacated on other grounds*, 450 U.S. 1036 (1981)).  Courts generally hold that the "employment of counsel assures vigorous prosecution." *Id.*

The law firms seeking to represent the uncertified Classes here include very qualified lawyers experienced in the successful prosecution of consumer class actions, and they have collectively recovered billions of dollars for class members in other litigation.  The same law firms were already appointed as Class Counsel to represent the Available Balance Consumer Class and related subclasses, and the South Financial Class, with its related subclasses and Regulation E Class.  *See* ECF Nos. 169, 184.  Thus, the same firms are qualified to represent the Business, Uber/Lyft, and Usury Classes.

To support the determinations required under Federal Rules 23(a)(4) and 23(g), the firms seeking appointment as Class Counsel have all previously submitted information prior to appointment to leadership positions in the Court's prior orders.  *See* ECF Nos. 9, 16.  These firms have shown that they are indeed ready, willing, and able to litigate this case and have already devoted the resources necessary to litigate this case vigorously and to see it through to the best possible resolution, which is this Settlement.  Plaintiffs have demonstrated their commitment to the case during the discovery period and expressed their commitment to prosecuting the case going forward and have already submitted declarations in support of Plaintiffs' Motion for Class Certification.  *See* ECF No. 140-3, Appendix II.

Given the above and as evidenced by the proceedings to date, there is no doubt Plaintiffs and their counsel will adequately represent the Classes.  *See Moodie v. Kiawah Island Inn Co*., *LLC*, 309 F.R.D. 370, 378 (D.S.C. 2015) (appointing class counsel where counsel had "considerable experience in class action litigation and sufficient funds to advance appropriate

costs," "defendant did not challenge the qualifications of counsel," and "the Court had no doubt that class counsel would ably and vigorously prosecute this action on behalf of the class").

### E.    Certification Is Proper Under Rule 23(b)(3)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. To be certified, a proposed class must satisfy the four prerequisites of Rule 23(a), as well as one of the three categories in Rule 23(b). *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). Here, Plaintiffs seek certification of the Business, Uber/Lyft, and Usury Classes under Rule 23(b)(3) for settlement purposes only. Rule 23(b)(3) requires that (1) common questions of law or fact must predominate over any questions affecting only individual class members; and (2) proceeding as a class must be superior to other available methods of litigation. Fed. R. Civ. P. 23(b)(3).

#### 1.    Common Questions Predominate

The Rule 23(b)(3) predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance inquiry focuses on the balance between individual and common issues. *Brown v. Nucor Corp.*, 785 F.3d 895, 917-21 (4th Cir. 2015). Common issues of law and fact predominate "where the same evidence would resolve the question of liability for all class members." *Beaulieu v. EQ Indus. Servs., Inc.*, 2009 WL 2208131, at *20 (E.D.N.C. July 22, 2009); *see Stillmock v. Weis Mkts.*, 385 F. App'x 267, 273 (4th Cir. 2010); *Gunnells*, 348 F.3d at 428. The need for individualized determination of the amount of compensatory damages suffered by putative class members will not alone defeat certification. *Gunnells,* 348 F.3d at 429 (collecting cases). "In fact, Rule 23 explicitly envisions class actions with such individualized damage

determinations." *Id*. at 428 (citing the Advisory Committee's note (1966), amend. sub div. (c)(4)).

Furthermore, "Rule 23(b)(3) is normally satisfied where there is an essential common factual link, such as standardized documents and practices, even though the nature and amount of damages may differ among class members." *Talbott*, 191 F.R.D. at 106; *see also Austell v. Smith*, 634 F. Supp. 326, 333-34 (W.D.N.C. 1986) ("Each class member received the same standardized proxy materials and all the claims arise out of the same transaction"). For example, in *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 194 (D.D.C. 2011), the defendant had a uniform practice of reordering debit charges from high-to-low. The court found that plaintiffs met the requirements of Rule 23(b)(3) predominance in certifying a class for final approval because proof of defendant's liability would be based on the bank's policies and practices that would have been applicable to all class members and that "the existence of minor differences in state law does not preclude the certification of a nationwide class." *Id*. (citing *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 116 (D.D.C. 2007) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 315 (3d Cir. 1998)). Finally, in *Amchem*, the Supreme Court stated that "[p]redominance is a test readily met in certain cases alleging consumer . . . laws." *Amchem*, 521 U.S. at 625 (acknowledging relative ease with which predominance is met in consumer cases).

This Court found that predominance was met with respect to the certified consumer available balance class because "both the overdraft practices and the contracts were uniform across the Bank's checking account customer based at all times relevant to the available balance clams." ECF No. 169, pp. 32-33. Likewise, when considering the same available balance theory as applied to the Business Class, as well as the Uber/Lyft and Usury Classes, TD's practices were uniform, standard, automated, programmatic, and identically applied to all Class Members.

Specifically, as to the three Additional Settlement Classes, the following common issues predominate over individualized issues: (1) TD assessed overdraft fees in a way that TD charged Plaintiffs and the Available Balance Classes, both consumer and business, an overdraft fee even though the ledger balances in their account remained positive ; (2) TD Bank charged Plaintiffs and the Uber/Lyft Class Members an overdraft fee on ride-share transactions in violation of TD's form contracts, with similar terms, which are applicable to all Plaintiffs and Class Members; (3) as to the Usury Class, TD's practice of charging of interest to its customers under the guise of sustained overdraft fees was done systematically through automated software programs.

Just as the Court found that TD's liability under the available balance theory for consumer accounts, and each cause of action through which it is alleged, "depends on legal and factual issues that are the same for all Plaintiffs and class members, and that Rule 23(b)(3) predominance is therefore satisfied", *see* ECF No. 169, p. 33, the same conclusion is reached on the TD Available Balance Business, Uber/Lyft, and Usury Classes.

### 2.    Class Action Is a Superior Mechanism

The superiority requirement ensures that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "A determination of superiority necessarily depends greatly on the circumstances surrounding each case." *Stillmock*, 385 F. App'x at 274 (quoting § 1779 of 7AA Fed. Prac. & Proc. Civ. § 1779 (3d ed.)). The goal of superiority is to ascertain whether "the objectives of the class-action procedure really will be achieved in the particular case." *Id.*

Here, nearly all of the Class Members have claims that are so small that it would cost them much more to litigate an individual case than they could ever hope to recover in damages. Here, as in *Stillmock*, "the low amount of . . . damages available means no big punitive damages

award on the horizon, thus making an individual action unattractive from a plaintiff's perspective." 385 F. App'x at 274. There is a strong presumption in favor of a finding of superiority where, as here, the alternative to a class action is likely to be no action at all for the majority of class members. *See, e.g., Soutter*, 307 F.R.D. at 218. To the extent any individual does wish to retain control, or seek actual damages, the opt-out mechanism will be available to protect their interests. *Id.*

Further, numerous class action lawsuits based on the same facts at issue here have been filed against TD. Through the MDL process, cases against TD were transferred to this Court and are part of this consolidated litigation, including the later-added usury and Uber/Lyft cases of *Robinson, Dorsey,* and *Lawrence*. That the Judicial Panel on Multidistrict Litigation chose this Court to be the transferee court is one indication that having a single case – as opposed to multiple cases – makes sense.

Alternatives to the class action device include: the test case, joinder, intervention, consolidation, and individual actions. 4 H. Newberg, supra, § 7526; 3B Moore's Federal Practice, ¶ 23.45(3); *Brown*, 92 F.R.D. at 50. None of these alternatives appears to offer a superior solution to the fair and efficient adjudication of the case than a class action. Indeed, this Court has already found that "a class action is the superior means for litigating the available balance claims." ECF No. 169, pp. 50-51.

## VII.     THE PROPOSED CLASS NOTICE AND CLAIM FORMS ARE APPROPRIATE

As part of the preliminary approval process, the district court must also approve the notice of the settlement that the Parties propose be sent to Class Members. *See* Fed. R. Civ. P. 23(c)(2)(b). The notice must comport with due process and provide the "the best notice that is practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort." *Id.*; *accord Eisen*, 417 U.S. at 177. Furthermore, the notice must clearly and concisely state in plain, easily understood language:

(i)     the nature of the action;

(ii)    the definition of the class certified;

(iii)   the class claims, issues or defenses;

(iv)    that a class member may enter an appearance through counsel if the member so desires,

(v)     that the court will exclude from the class any member who requests exclusion,

(vi)    the time and manner for requesting exclusion; and

(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(b). Rule 23 leaves the form of the notice to the Court's discretion. *See Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va. 2003) ("a court may exercise its discretion to provide the best notice practicable under the circumstances."); *see also* Fed. R. Civ. P. 23(c)(2)(b).

The Notice and Claim Forms, attached as Exhibits 2, 3, and 4 to this Motion, satisfy these requirements. They are written in plain English and are organized and formatted to be as clear as possible. The Notice is based on the model notice forms provided by the Federal Judicial Center ("FJC") on its website, www.fjc.gov. *See Reyes v. Altamarea Grp., LLC*, 2010 WL 5508296, at *2 (S.D.N.Y. Dec. 22, 2010) (approving notice based on FJC model). SA ¶ 118-21. The Settlement Agreement provides that the Settlement Claims Administrator will provide Notice in two different ways: E-mailed or Mailed Notice and Long Form Notice on the Settlement Website, as well as any other components necessary to satisfy the requirements of due process and Rule 23. SA ¶ 119.

The Notice shall include, among other information: a description of the material terms of the Settlement; an explanation of the procedure and deadline for submitting Claim Forms; a date by which Members of the Settlement Classes may exclude themselves from or "opt-out" of the

Settlement Classes; a date by which Members of the Settlement Classes may object to the Settlement; the date, time, and location of the Final Approval Hearing; and the address of the Settlement Website at which Members of the Settlement Classes may access this Agreement, the Long-Form Notice, the Claim Form and other related documents and information. Settlement Class Counsel and TD Bank's counsel shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. SA ¶ 118. The Claim Form will provide clear and specific instructions on how to make a claim. *Id.* at ¶ 143.

## VIII.    THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear all evidence and argument necessary to make its final evaluation of the Settlement. Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of Final Approval. The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter a Final Approval Order under Rule 23(e); and whether to approve Class Counsel's application for attorneys' fees and reimbursement of costs and expenses. Plaintiffs and Class Counsel request that the Court schedule the Final Approval Hearing for a half day no sooner than the week of January 6, 2020, if convenient for the Court. Plaintiffs and Class Counsel will file their motion for Final Approval and Fee Application and request for Service Awards for Plaintiffs no later than 56 days prior to the Final Approval Hearing.

## IX.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the Proposed Order.

DATED this 13th day of June, 2019.

Respectfully submitted by,

/s/ E. Adam Webb
E. Adam Webb
**WEBB, KLASE & LEMOND, LLC**
1900 The Exchange, SE, Suite 480
Atlanta, GA 30339
Telephone: (770) 444-0773
Adam@WebbLLC.com

/s/ Richard D. McCune
Richard D. McCune
**McCUNE WRIGHT AREVALO, LLP**
3281 East Guasti Road, Suite 100
Ontario, CA 91761
Telephone: (909) 557-1250
rdm@mccunewright.com

*Co-Lead Counsel for Plaintiffs*

/s/ Mark C. Tanenbaum
Mark C. Tanenbaum
**LAW OFFICE OF MARK C. TANENBAUM**
120 Church Street
Charleston, SC 29413
Telephone: (843) 577-5100
mark@tanenbaumlaw.com

/s/ William E. Hopkins, Jr.
William E. Hopkins, Jr.
**HOPKINS LAW FIRM, LLC**
12019 Ocean Highway
Pawleys Island, SC 29585
Telephone: (843) 314-4202
bill@hopkinslawfirm.com

*Liaison Counsel for Plaintiffs*

Richard M. Golomb
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
rgolomb@golombhonik.com

Hassan A. Zavareei
**TYCKO & ZAVAREEI LLP**
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
Telephone: (202) 973-0900
hzavareei@tzlegal.com

Joseph C. Kohn
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700
jkohn@kohnswift.com

Francis J. "Casey" Flynn, Jr.
**CONSUMER PROTECTION LEGAL, LLC**
308 Hutchinson Road
Ellisville, Missouri 63011-2029
Telephone: (323) 424-4194
francisflynn@gmail.com

John R. Hargrove
**HARGROVE LAW GROUP**
925 S. Federal Highway, Suite 715
Boca Raton, FL 33432
Telephone: (561) 300-3900
JRH@HargroveLawGroup.com

*Plaintiffs' Executive Committee*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 13, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause a true and correct copy to be served via e-mail on all ECF-registered counsel of record.

*/s/ E. Adam Webb*
E. Adam Webb
