# Exhibit 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into this 13th day of June, 2019, by and among (1) Plaintiffs,[1] for themselves and on behalf of the Settlement Classes, and (2) TD Bank, N.A. ("TD Bank"), subject to preliminary and final Court approval as required by Rule 23(e) of the Federal Rules of Civil Procedure. As provided herein, TD Bank, Class Counsel, and Plaintiffs hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a Final Order and Judgment, all claims of the Settlement Classes against TD Bank in the several actions consolidated in the Multi-District Litigation titled *In Re: TD Bank, N.A. Debit Card Overdraft Fee Litigation*, Case No. 6:15-mn-02613-BHH (collectively, the "Action"), shall be settled and compromised upon the terms and conditions contained herein.

## I.    Recitals

1.    On August 21, 2013, Plaintiffs James E. King, Jr. and Jan Kasmir filed the complaint in *King v. TD Bank, N.A.*, Case No. 6:13-cv-02264-BHH ("*King*"), a putative class action, in the United States District Court for the District of South Carolina, alleging improper assessment and collection of overdraft fees by TD Bank and Carolina First Bank (including Mercantile Bank) and seeking, *inter alia*, monetary damages, restitution, and equitable relief..

2.    On December 4, 2013, TD Bank filed a motion to dismiss the complaint in *King*. On January 6, 2014, the *King* plaintiffs filed their opposition to the motion. On January 27, 2014, TD Bank filed its reply. On May 22, 2014, the Court heard argument, and on June 6, 2014, the Court issued an order granting in part and denying in part TD Bank's motion to dismiss.

---

[1] "Plaintiffs" and other capitalized terms used in this Introduction and in Section I of this Agreement are defined in Section II below.

3.      On February 24, 2014, Plaintiffs Sheila and Emilio Padilla filed the complaint in *Padilla v. TD Bank, N.A.*, Case No. 2:14-cv-1276 ("*Padilla*"), a putative class action, in the United States District Court for the Eastern District of Pennsylvania, alleging improper assessment and collection of overdraft fees and seeking, *inter alia*, monetary damages, restitution, and equitable relief from TD Bank.

4.      On May 5, 2014, TD Bank filed a motion to dismiss the *Padilla* complaint. On June 10, 2014, the *Padilla* plaintiffs filed their opposition to the motion and moved to transfer the case to the District of South Carolina.  On June 24, 2014, TD Bank filed its reply.  The court heard argument on August 7, 2014, but did not render a decision on the motion.

5.      On September 19, 2014, the Court entered a Consent Confidentiality Order in *King* relating to the production of documents and information.  TD Bank subsequently began producing documents to the *King* plaintiffs.

6.      On October 6, 2014, the parties in *King* filed a stipulated discovery plan and order for electronically stored information.

7.      On December 5, 2014, Plaintiff John Hurel filed the complaint in *Hurel v. TD Bank, N.A.*, Case No. 14-cv-07621 ("*Hurel*"), a putative class action, in the United States District Court for the District of New Jersey.

8.       On December 31, 2014, Plaintiff John Koshgarian filed the complaint in *Koshgarian v. TD Bank, N.A.*, Case No. 14-cv-10250 ("*Koshgarian*"), a putative class action, in the United States District Court for the Southern District of New York.

9.      On January 8, 2015, Plaintiff Elizabeth Goodall filed the complaint in *Goodall v. TD Bank, N.A.*, Case No. 15-cv-00023 ("*Goodall*"), a putative class action, in the United States District Court for the Middle District of Florida.

10.     On January 9, 2015, Plaintiffs Frederick Klein, Ronald Ryan, Geoffrey Grant, and Tashina Drakeford filed the complaint in *Klein v. TD Bank, N.A.*, Case No. 15-cv-00179 ("*Klein*"), a putative class action, in the United States District Court for the District of New Jersey.

11.     On January 21, 2015, Plaintiff Dawn Ucciferri filed the complaint in *Ucciferri v. TD Bank, N.A.*, Case No. 15-cv-00424 ("*Ucciferri*"), a putative class action, in the United States District Court for the District of New Jersey.

12.     On January 21, 2015, Plaintiff Caroline Austin filed the complaint in *Austin v. TD Bank, N.A.*, Case No. 15-cv-00088 ("*Austin*"), a putative class action, in the United States District Court for the District of Connecticut.

13.     On March 9, 2015, Plaintiff Kendall Robinson filed the complaint in *Robinson v. TD Bank, N.A.*, Case No. 15-cv-60469 ("*Robinson I*"), a putative class action, in the United States District Court for the Southern District of Florida.

14.     On March 9, 2015, Plaintiff Kendall Robinson filed a second class action complaint styled *Robinson v. TD Bank, N.A.*, Case No. 15-cv-60476 ("*Robinson II*"), also in the United States District Court for the Southern District of Florida, which asserted a claim for usury under the National Bank Act.

15.     On April 2, 2015, the Judicial Panel for Multi-District Litigation ("JPML") transferred the *Padilla*, *Hurel*, *Koshgarian*, *Goodall*, *Klein*, *Ucciferri*, and *Austin* actions to the United States District Court for the District of South Carolina and consolidated them for pretrial purposes with *King* under the MDL caption *In Re: TD Bank, N.A. Debit Card Overdraft Fee Litigation*, Case No. 6:15-mn-02613-JLK ("MDL 2613").  The JPML assigned the consolidated actions to District Judge Bruce Howe Hendricks.

16.    On April 15, 2015, the JPML transferred the *Robinson I* action to MDL 2613.

17.    On May 20, 2015, the Court appointed attorneys Adam Webb and Richard McCune as lead Plaintiffs' counsel.  The Court also appointed attorneys Richard Golomb, Hassan Zavereei, Joseph Kohn, Francis Flynn and John Hargrove as Plaintiffs' executive committee counsel, and attorneys Mark Tanenbaum and William Hopkins as Plaintiffs' liaison counsel.

18.    On May 22, 2015, the Court issued an Initial Case Management Order and an Initial Scheduling Order governing MDL 2613.  These orders, *inter alia*, extended the Consent Confidentiality Order and ESI protocol from *King* to all of the cases in MDL 2613.

19.    On June 19, 2015, Plaintiffs from the *King*, *Padilla*, *Hurel*, *Koshgarian*, *Goodall*, *Klein*, *Ucciferri*, *Austin* and *Robinson I* actions, along with additional named plaintiffs, filed a Consolidated Amended Class Action Complaint in MDL 2613 alleging improper assessment and collection of overdraft fees and seeking, *inter alia*, monetary damages, restitution, and equitable relief from TD Bank.  The Consolidated Amended Class Action Complaint asserted the same or similar claims to the claims asserted in the original class action complaints, including a usury claim substantively identical to the claim asserted in *Robinson II*.

20.    On August 7, 2015, the JPML transferred *Robinson II* to MDL 2613.

21.    On August 3, 2015, TD Bank filed a motion to dismiss the Consolidated Amended Class Action Complaint under Fed. R. Civ. P. 12(b)(b)(6) for failure to state a claim.  On September 2, 2015, Plaintiffs filed their opposition to the motion.  On September 23, 2015, TD Bank filed its reply.  On October 14, 2015, the Court heard oral argument, and on December 10, 2015, the Court issued an order granting in part and denying in part TD Bank's motion to dismiss.

22.     On January 14, 2016, TD Bank filed an answer to the Consolidated Amended Class Action Complaint in MDL 2613, denying any and all wrongdoing and liability and asserting various affirmative defenses.

23.      Discovery in MDL 2613 continued with TD Bank ultimately producing over 1,000,000 pages of documents (in addition to voluminous data files and spreadsheets).  Dozens of depositions of the named Plaintiffs and TD Bank executives and witnesses were taken.  The parties also engaged in expert discovery.

24.     On May 10, 2016, the Parties participated in a mediation with Professor Eric Green of Resolutions LLC as Mediator.  That mediation was unsuccessful.

25.     On September 22, 2016, Plaintiffs moved for class certification with respect to all of the claims that were not dismissed in MDL 2613.  On November 22, 2016, TD Bank filed its opposition to class certification, and on December 22, 2016, Plaintiffs filed their reply.

26.     On January 5, 2017, Plaintiff Shaina Dorsey filed the complaint in *Dorsey v. TD Bank, N.A.*, Case No. 17-cv-00074-RMB ("*Dorsey*"), a putative class action, in the United States District Court for the District of New Jersey, which asserted a claim for usury under the National Bank Act.  The claim was substantively identical to the usury claim asserted in the Consolidated Amended Class Action Complaint, which the Court had dismissed for failure to state a claim.

27.     On January 31, 2017, the JPML issued a Conditional Transfer Order as to *Dorsey*.  Over the objection of the plaintiff in *Dorsey*, the matter was transferred to MDL 2613 on May 31, 2017.

28.     On March 8 and 9, 2017, the parties participated in a mediation with Magistrate Judge Mary Gordon Baker.  The mediation adjourned without a resolution being reached.

29.     On May 26, 2017, the Court heard oral argument on Plaintiffs' motion for class certification.  On February 22, 2018, the Court issued an order granting in part and denying in part Plaintiffs' motion for class certification ("the Class Certification Order").

30.     On July 11, 2017, TD Bank filed a motion to dismiss *Dorsey* for failure to state a claim.  Plaintiff Dorsey filed her opposition on August 10, 2017, and TD Bank filed a reply on August 22, 2017.  The Court granted TD Bank's motion to dismiss in Dorsey on February 28, 2018.  On March 29, 2018, Plaintiff Dorsey filed a notice of appeal in the United States Court of Appeals for the Fourth Circuit.

31.     On December 5, 2017, Plaintiff Brittney Lawrence filed the complaint in *Lawrence v. TD Bank, N.A.*, Case No. 17-cv-12583 ("*Lawrence*"), a putative class action, in the United States District Court for the District of New Jersey, alleging that TD Bank improperly assessed overdraft fees on Uber and Lyft ride-sharing transactions.

32.     On March 8, 2018, TD Bank filed a petition for leave to appeal the Class Certification Order in the United States Court of Appeals for the Fourth Circuit pursuant to Federal Rule of Civil Procedure 23(f) (the "Petition").  Plaintiffs filed an opposition to the Petition on March 19, 2018.  The Fourth Circuit denied the Petition on April 19, 2018.

33.     On April 4, 2018, the JPML transferred *Lawrence* to MDL 2613.  On June 4, 2018, TD Bank filed a motion to dismiss *Lawrence* for failure to state a claim.  Plaintiff Lawrence filed her opposition on July 18, 2018, and TD Bank filed a reply on August 1, 2018.

34.     The Class Certification Order left unresolved the class definition for the class asserting claims for statutory damages under the Electronic Fund Transfer Act ("EFTA").  On June 20, 2018, the Court entered an order adopting Plaintiffs' second revised EFTA class definition and certifying the EFTA Class for the purposes of a statutory damages claim.

35.     Following class certification, the Parties negotiated an agreement regarding the production of customer transactional data, and on August 1, 2018, the Court entered a Consent Order on Production of Customer Transactional Data.

36.     On October 10, 2018, the Parties participated in a second mediation with Magistrate Judge Mary Gordon Baker.  This mediation also adjourned without a resolution being reached.

37.     Beginning in late 2018, the Parties initiated renewed settlement discussions.  The preliminary discussions resulted in the scheduling of a fourth mediation.

38.     Thereafter, the Parties participated in a mediation on January 23, 2019 with Professor Green.  As a result of that mediation, on February 1, 2019, Settlement Class Counsel and TD Bank executed a Settlement Term Sheet memorializing the material terms of the Settlement.  On February 1, 2019, Settlement Class Counsel and TD Bank filed a Joint Notice of Settlement with the Court, which was based on the same terms, and requested a suspension of deadlines pending the drafting and execution of a final settlement agreement.  The Court granted the requested suspension on February 4, 2019.  On February 21, 2019, Plaintiff Dorsey and TD Bank jointly requested that the Fourth Circuit stay the *Dorsey* appeal pending the District Court's review and potential approval of the Settlement.  On February 22, 2019, the Fourth Circuit suspended the proceedings in *Dorsey*.  Following further discussions, the Parties resolved all remaining issues, culminating in this Agreement.

39.     The Parties now agree to settle the Action in its entirety, without any admission of liability, with respect to all Released Claims of the Settlement Class.  The Parties intend this Agreement to bind Plaintiffs, TD Bank, and all Members of the Settlement Classes who do not timely request to be excluded from the Settlement.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.    Definitions

In addition to the terms defined at various points within this Agreement, the following Defined Terms apply throughout this Agreement:

40.    "Account" means any Personal Account, Business Account or Carolina First Bank/Mercantile Bank Account as defined herein.

41.    "Action" means *In Re: TD Bank, N.A. Debit Card Overdraft Fee Litigation*, MDL 2613, Case No. 6:15-mn-02613-BHH, and any and all other cases pending in MDL 2613 as of the date of Preliminary Approval to the extent they assert claims against TD Bank.

42.    "ATM and One-Time Debit Card Transaction" means any Debit Card Transaction that is subject to the requirements set forth at 12 C.F.R. § 1005.17(b)(1)(i-iv).

43.    "Available Balance" means the Account balance that TD Bank, Carolina First Bank and Mercantile Bank used to determine whether to assess an Overdraft Fee.  The Available Balance includes reductions for Pending Transactions and holds on deposited funds.

44.    "Available Balance Practice" means TD Bank's, Carolina First Bank's and/or Mercantile Bank's practice of assessing Overdraft Fees based on an Account's Available Balance rather than its Ledger Balance.

45.    "Business Account" means any business checking, demand deposit, money market or savings account maintained by TD Bank in the United States.

46.    "Carolina First Bank" means the South Carolina-chartered banking corporation that merged into TD Bank, N.A. on September 30, 2010.  Carolina First Bank (including

Mercantile Bank) ceased to exist as a South Carolina-chartered bank as of September 30, 2010, though legacy Carolina First Bank and Mercantile Bank customers remained subject to Carolina First Bank and Mercantile Bank systems and account agreements until June 2011.  As of June 20, 2011, the legacy Carolina First Bank and Mercantile Bank branches were re-branded as TD Bank, and all legacy Carolina First Bank and Mercantile Bank customers were converted to TD Bank systems and account agreements.

47.    "Carolina First Bank/Mercantile Bank Account" means any personal (*i.e.*, consumer) or business checking, demand deposit, money market or savings account maintained by Carolina First Bank or Mercantile Bank in the United States.

48.    "Claim Form" means the form that Members of the following Settlement Classes must use to claim payment from the Net Settlement Fund: (1) TD Available Balance Consumer Class; (2) Regulation E Class; (3) Usury Class; and (4) TD Available Balance Business Class.

49.    "Claims Submission Period" means the period that begins on the earliest date on which the Notice is first emailed or mailed, and that ends no later than 30 days after the Final Approval Hearing.  The deadline for the Claims Submission Period will be specified in the Notice.

50.    "Class Counsel" means:

E. Adam Webb
G. Franklin Lemond, Jr.
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, SE, Suite 480
Atlanta, GA 30339

Richard D. McCune
Michele Vercoski
McCUNE WRIGHT AREVALO, LLP
3281 East Guasti Road, Suite 100
Ontario, CA 91761

Mark C. Tanenbaum
LAW OFFICE OF MARK C. TANENBAUM
120 Church Street
Charleston, SC 29413

William E. Hopkins, Jr.
HOPKINS LAW FIRM, LLC
12019 Ocean Highway
Pawleys Island, SC 29585

Richard M. Golomb
GOLOMB & HONIK, PC
1835 Market Street, Suite 2900
Philadelphia, PA 19103

Hassan A. Zavareei
TYCKO & ZAVAREEI LLP
2000 L Street, N.W., Suite 808
Washington, D.C. 20036

Joseph C. Kohn
KOHN, SWIFT & GRAF, PC
1600 Market Street, Suite 2500
Philadelphia, PA 19103

Francis J. "Casey" Flynn, Jr.
Tiffany M. Yiatras
CONSUMER PROTECTION LEGAL, LLC
308 Hutchinson Road
Ellisville, MO 63011-2029

John R. Hargrove
HARGROVE LAW GROUP
925 S. Federal Highway, Suite 715
Boca Raton, FL 33432

Christina Pierson
KELLEY UUSTAL, PLLC
500 N. Federal Highway, Suite 200
Fort Lauderdale, FL 33301

Dick Harpootlian
RICHARD A. HARPOOTLIAN, PA
1410 Laurel Street
Columbia, SC 29201

Taras Kick
THE KICK LAW FIRM, APC
815 Moraga Drive
Los Angeles, CA 90049

Mark Kindall
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107

Jeff Ostrow
KOPELOWITZ OSTROW PA
2800 Ponce de Leon Blvd, Suite 1100
Coral Gables, FL 33134

and such other counsel as are identified in Class Counsel's request for attorneys' fees and costs.

51.     "Class Period" means the time periods specified in each of the class definitions set forth in paragraph 108 of this Agreement.

52.     "Confidential Information" means all documents, data, discovery materials and other information provided to Class Counsel by TD Bank during the course of the Action, whether by formal discovery or otherwise, that were designated as Confidential. Notwithstanding the above, neither documents nor information described in this paragraph that were filed in the public record during the course of this Action, unless currently under seal, shall be Confidential Information.

53.     "Court" means the United States District Court for the District of South Carolina, Greenville Division.

54.     "Current Account Holder" means a Settlement Class Member who continues to hold an Account, individually or jointly, with TD Bank as of the date that the Net Settlement Fund is distributed to Members of the Settlement Classes pursuant to this Agreement.

55.     "Day" or "Days," unless otherwise noted, means a calendar day.

56.    "Debit Card" means a card or similar device issued or provided by TD Bank, Carolina First Bank, or Mercantile Bank, including a debit card, check card, or automated teller machine ("ATM") card, that could or can be used to debit funds from an Account by Point of Sale and/or ATM transactions.

57.    "Debit Card Transaction" means any debit transaction effectuated with a Debit Card, including, without limitation, Point of Sale transactions (whether by PIN or signature/PIN-less) and ATM transactions.

58.    "E-Mail Notice" means the form of notice that will be e-mailed to Members of the Settlement Classes for whom TD Bank possesses e-mail addresses.

59.    "Effective Date" means the fifth business day after which all of the following events have occurred:

a.    All Parties, TD Bank's counsel, and Settlement Class Counsel have executed this Agreement;

b.    The Court has entered the Final Approval Order; and

c.    The time for seeking rehearing or appellate or other review has expired, and no appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired and relief from a failure to file same is not available.

60.    "Eligible Regulation E Overdraft Fee" means any Overdraft Fee assessed on a Settlement Class Member's Personal Account for an ATM or One-Time Debit Card Transaction

from August 16, 2010 to and including the date of Preliminary Approval, as identified by Plaintiffs' expert based on review and analysis of TD Bank transactional data and information.

61.    "Eligible South Financial Available Balance Overdraft Fee" means any Overdraft Fee incurred by a Settlement Class Member on a Carolina First Bank/Mercantile Bank Account from December 1, 2007 to and including June 20, 2011 which was assessed on a positive Ledger Balance, as identified by Plaintiffs' expert based on review and analysis of Carolina First Bank and Mercantile Bank transactional data and information.

62.    "Eligible South Financial High-to-Low Overdraft Fee" means any Overdraft Fee incurred by a Settlement Class Member on a Carolina First Bank/Mercantile Bank Account from December 1, 2007 to and including June 20, 2011 which would not have been incurred had Carolina First Bank or Mercantile Bank posted transactions on each business day in the order set forth below, as identified by Plaintiffs' expert based on review and analysis of Carolina First Bank and Mercantile Bank transactional data and information:

    i.       All credits;

    ii.      All fees and other bank-initiated debits ordered from highest dollar amount to the lowest dollar amount of the transaction;

    iii.    All Debit Card Transactions ordered from the lowest dollar amount to the highest dollar amount of the transaction;

    iv.    All other debit transactions, including check transactions, Automated Clearing House (ACH) transactions, and non-Debit Card initiated cash withdrawals, ordered from highest dollar amount to the lowest dollar amount of the transaction.

63.     "Eligible Sustained Overdraft Fee" means any Sustained Overdraft Fee assessed on a Settlement Class Member's Account from March 8, 2013 to and including the date of Preliminary Approval, as identified by Plaintiffs' expert based on review and analysis of TD Bank transactional data and information.

64.     "Eligible TD Available Balance Business Overdraft Fee" means any Overdraft Fee incurred by a Settlement Class Member on a Business Account from August 16, 2010 to and including the date of Preliminary Approval which was assessed on a positive Ledger Balance, as identified by Plaintiffs' expert based on review and analysis of TD Bank transactional data and information.

65.     "Eligible TD Available Balance Consumer Overdraft Fee" means any Overdraft Fee incurred by a Settlement Class Member on a Personal Account from August 16, 2010 to and including April 22, 2016 which was assessed on a positive Ledger Balance, as identified by Plaintiffs' expert based on review and analysis of TD Bank transactional data and information.

66.     "Eligible Uber/Lyft Overdraft Fee" means any Overdraft Fee assessed on a Settlement Class Member's Personal Account for an Uber or Lyft ride-sharing transaction from December 5, 2011 to and including the date of Preliminary Approval when the Settlement Class Member was not enrolled in TD Debit Card Advance, as identified by Plaintiffs' expert based on review and analysis of TD Bank transactional data and information.

67.     "Escrow Account" means the account to be established consistent with the terms and conditions described in Section X hereof.

68.     "Escrow Agent" means Epiq Systems, Inc.  Settlement Class Counsel and TD Bank may, by agreement, substitute a different organization as Escrow Agent, subject to approval by the Court.  In the absence of agreement, either Settlement Class Counsel or TD Bank

may move the Court to substitute a different organization as Escrow Agent, upon a showing that the responsibilities of Escrow Agent have not been adequately executed by the incumbent. The Escrow Agent shall administer the Escrow Account.

69.    "Final Approval" means the date of the Court's final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2) and determination of the amount of fees, costs, and expenses awarded to Class Counsel and the amount of the Service Awards to Plaintiffs. In the event that the Court issues multiple orders addressing the foregoing matters, then the date of Final Approval shall be the date of the last of such orders.

70.    "Final Approval Hearing" means the hearing set pursuant to Section IX hereof.

71.    "Final Approval Order" means the order and judgment that the Court enters upon Final Approval. The proposed Final Approval Order that will be submitted pursuant to the Motion for Final Approval of the Settlement shall be in a form agreed upon by Settlement Class Counsel and TD Bank. In the event that the Court issues multiple orders addressing the matters constituting Final Approval, the Final Approval Order includes all such orders.

72.    "High-to-Low Posting" means TD Bank's, Carolina First Bank's and/or Mercantile Bank's practice of posting debit transactions each business day in the order from highest to lowest dollar amount.

73.    "Ledger Balance" means the balance in an Account without reductions for Pending Transactions or holds on deposited funds.

74.    "Long-Form Notice" means the detailed notice of the Settlement that will be posted on the Settlement Website. The Long-Form Notice will provide more detailed information about the Settlement and the processes for objection, exclusion and submission of claims than the E-Mail Notice or Mail Notice.

75.     "Mail Notice" means the post card notice that will be mailed by U.S. Postal Service to Members of the Settlement Classes.

76.     "Mercantile Bank" means the Florida-chartered banking corporation that merged into Carolina First Bank on July 1, 2007, and from that date until September 30, 2010 was run as a division of Carolina First Bank under the brand name Mercantile Bank.

77.     "Net Settlement Fund" means the Settlement Payment Amount less all court-awarded attorneys' fees and expenses, costs of Notice and administration of the Settlement, and the court-approved Service Awards, as more specifically described in paragraph 149 of this Agreement.

78.     "Notice" means the notices of proposed class action settlement that Plaintiffs will ask the Court to approve in connection with the motion for Preliminary Approval of the Settlement.

79.     "Notice Program" means the methods provided for in this Agreement for giving Notice and includes E-Mail Notice, Mail Notice and Long-Form Notice posted on the Settlement Website.  The form of the E-Mail Notice, Mail Notice and Long-Form Notice shall be agreed upon by Settlement Class Counsel and TD Bank.  By mutual agreement of the Parties, changes may be made to any or all of the forms of Notice.  Additional description of the contemplated Notice Program is provided in Section VIII hereof.

80.      "Opt-Out Period" means the period that begins the day after the earliest date on which the Notice is first emailed or mailed, and that ends no later than 35 days prior to the Final Approval Hearing.  The deadline for the Opt-Out Period will be specified in the Notice.

81.     "Overdraft Fee" means any fee assessed to an Account for an item paid when TD Bank, Carolina First Bank and/or Mercantile Bank determined the Account had insufficient

funds to cover the item, including but not limited to when the Account had a negative Available Balance.  Sustained Overdraft Fees and fees charged to transfer balances from other accounts are excluded.

82.    "Overdraft Forgiveness Amount" means the Twenty-Seven Million and 00/100 Dollars ($27,000,000.00) that TD Bank, without admission of liability, agrees to provide as consideration for this Settlement in the form of reductions to the outstanding balances of Members of the Settlement Classes whose accounts were closed with amounts owed to TD Bank, as more specifically described in paragraph 141 of this Agreement.

83.    "Overdraft Practices" means the practices, policies and procedures related to TD Bank's, Carolina First Bank's and/or Mercantile Bank's authorization, processing, payment, return and/or rejection of an item, and assessment of fees (including overdraft-paid and overdraft-return (NSF) fees), when the Bank determined an Account had insufficient funds to cover the item, including but not limited to when the Account had a negative Available Balance.

84.    "Parties" means Plaintiffs and TD Bank.

85.    "Past Account Holder" means a Settlement Class Member who no longer holds an Account as of the date that the Net Settlement Fund is distributed to Members of the Settlement Classes pursuant to this Agreement.

86.    "Pending Transaction" means a Debit Card Transaction that TD Bank, Carolina First Bank or Mercantile Bank has authorized for payment but which has not yet been submitted by the merchant for final settlement and payment.

87.    "Personal Account" means any personal (*i.e.*, consumer) checking, demand deposit, money market or savings account maintained by TD Bank in the United States.

88.     "Plaintiffs" means Jan Kasmir, James King, Jr., Joanne McLain, Michael McLain, Geoffrey Grant, Keith Irwin, Shawn Balensiefen, Elizabeth Goodall, Kendall Robinson, Ronald Ryan, Tashina Drakeford, John Koshgarian, John Hurel, Frederick Klein, Dawn Ucciferri, Caroline Austin, Brittney Lawrence, Emilio Padilla, Sheila Padilla, Jennifer Bond, John Laflamme, Jonathan Young, Brittney Brooker, Marilyn Vailati and Shaina Dorsey.[2]

89.     "Preliminary Approval" means the date that the Court enters, without material change, an order approving giving Notice of the Settlement to the Settlement Classes pursuant to Fed. R. Civ. P. 23(e)(1) substantially in the form jointly agreed upon by the Parties.

90.     "Point of Sale" or "POS" transaction means a transaction in which an Account holder uses his, her or its Debit Card to purchase a product or service.

91.     "Released Claims" means all claims to be released as specified in Section XIV hereof.

92.     "Released Parties" means those persons and entities released as specified in Section XIV hereof.

93.     "Releases" means all of the releases contained in Section XIV hereof.

94.     "Releasing Parties" means all Plaintiffs and all Members of the Settlement Classes who do not timely and properly opt out of the Settlement, and each of their respective heirs, executors, administrators, assigns, beneficiaries, and successors.

95.     "Service Awards" means the awards that Settlement Class Counsel will ask the Court to approve for Plaintiffs, as specified in paragraph 164 of this Agreement.

---

[2] "Plaintiffs" expressly excludes Amos Jones, who, while he was listed as a Plaintiff on the Consolidated Amended Complaint, has declined to participate in this Agreement.  Mr. Jones therefore also is not one of the "Parties" as defined above, but is a "Settlement Class Member" as defined below.

96.    "Settlement" means the settlement into which the Parties have entered to resolve the Action.  The terms of the Settlement are as set forth in this Agreement.

97.    "Settlement Administrator" means Epiq Systems, Inc.  Settlement Class Counsel and TD Bank may, by agreement, substitute a different organization as Settlement Administrator, subject to approval by the Court.  In the absence of agreement, either Settlement Class Counsel or TD Bank may move the Court to substitute a different organization as Settlement Administrator, upon a showing that the responsibilities of Settlement Administrator have not been adequately executed by the incumbent.

98.    "Settlement Classes" means all Account holders within the classes defined in Section III hereof.

99.    "Settlement Class Counsel" means E. Adam Webb of Webb, Klase & Lemond, LLC and Richard D. McCune of McCune Wright Arevalo, LLP.  Settlement Class Counsel are a subset of Class Counsel.  Settlement Class Counsel are responsible for handling all Settlement-related matters on behalf of Plaintiffs.

100.    "Settlement Class Member" means any person or entity included in any of the Settlement Classes.

101.    "Settlement Fund" means the fund established under Section X hereof.

102.    "Settlement Payment Amount" means the Forty-Three Million and 00/100 Dollars ($43,000,000.00) that TD Bank agrees to pay, without admission of liability, as the monetary component of this Settlement, as more specifically described in paragraph 137 of this Agreement.

103.    "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following Preliminary Approval, but prior to the commencement

of the Notice Program, as a means for Members of the Settlement Classes to obtain notice of and information about the Settlement. Additional description of the Settlement Website is provided in Section VIII hereof.

104. "Sustained Overdraft Fee" means the fee TD Bank assessed to an Account as a result of the Account remaining in an overdrawn status for ten (10) consecutive business days.

105. "Tax Administrator" means Epiq Systems, Inc. Settlement Class Counsel and TD Bank may, by agreement, substitute a different organization as Tax Administrator, subject to approval by the Court. In the absence of agreement, either Settlement Class Counsel or TD Bank may move the Court to substitute a different organization as Tax Administrator, upon a showing that the responsibilities of Tax Administrator have not been adequately executed by the incumbent. The Tax Administrator will perform all tax-related services for the Escrow Account as provided in this Agreement.

106. "TD Bank" means the national bank, a party to this Agreement, now existing as TD Bank, N.A., as well as Carolina First Bank, Mercantile Bank, and The South Financial Group, and any other banking institutions that during the Class Periods entered into a merger transaction or were otherwise acquired by TD Bank such that TD Bank has succeeded to pre-merger or pre-acquisition liabilities of such other institution by virtue of the merger or acquisition.

107. "The South Financial Group" means the entity that was the parent holding company of Carolina First Bank and Mercantile Bank before those banks were merged into TD Bank.

### III.     Conditional Certification of the Settlement Classes

108.     For settlement purposes only, Plaintiffs shall ask the Court to certify the following

"Settlement Classes" under Rule 23(b)(3) of the Federal Rules of Civil Procedure:

> All holders of a TD Bank Personal Account, who, from August 16, 2010 to and including April 22, 2016, incurred one or more Overdraft Fees as a result of TD Bank's practice of assessing Overdraft Fees based on the Account's Available Balance rather than its Ledger Balance ("TD Available Balance Consumer Class");

and

> All holders of a Carolina First Bank/Mercantile Bank Account, who, from December 1, 2007 to and including June 20, 2011, incurred one or more Overdraft Fees as a result of Carolina First Bank's and/or Mercantile Bank's practices of (1) High-to-Low Posting, or (2) assessing Overdraft Fees based on the Account's Available Balance rather than its Ledger Balance ("South Financial Class");

and

> All holders of a TD Bank Personal Account who were assessed one or more Overdraft Fees for an ATM or One-Time Debit Card Transaction from August 16, 2010 to and including [date of Preliminary Approval] ("Regulation E Class");

and

> All holders of a TD Bank Personal or Business Account who, from March 8, 2013 to and including [date of Preliminary Approval], incurred one or more Sustained Overdraft Fees ("Usury Class");

and

> All holders of a TD Bank Personal Account who, from December 5, 2011 to and including [date of Preliminary Approval], incurred one or more Overdraft Fees on Uber or Lyft ride-sharing transactions while not enrolled in TD Debit Card Advance ("Uber/Lyft Class");

and

> All holders of a TD Bank Business Account who, from August 16, 2010 to and including [date of Preliminary Approval], incurred one or more Overdraft Fees as a result of TD Bank's practice of assessing Overdraft Fees based on the Account's Available Balance rather than its Ledger Balance ("TD Available Balance Business Class").

Excluded from the Settlement Classes are all current TD Bank employees, officers, and directors,

the judge presiding over this Action, and all TD Bank account holders whose claims were released as a result of their membership in the settlement class in *In re Checking Account Overdraft Litigation*, Case No. 09-MD-2036 (S.D. Fla.) ("MDL 2036").  *See In re Checking Account Overdraft Litig.*, Final Judgment, ¶ 6, Case No. 09-MD-2036, Dkt. No 3340 (S.D. Fla. Mar. 18, 2013) ("Final Judgment").  For purposes of this Settlement, the parties agree that any potential Member of the Settlement Classes who was also a member of the settlement class in MDL 2036 has released any and all claims relating to Overdraft Fees that were incurred on an Account prior to September 20, 2012 (the date of Preliminary Approval of the MDL 2036 settlement).[3]  Accordingly, any member of the settlement class in MDL 2036 who did not incur one or more Overdraft Fees on an Account after September 20, 2012 will be excluded from this Settlement and shall not receive Notice.

109.    TD Bank agrees not to oppose Plaintiffs' request for certification of the Settlement Classes for settlement purposes only.  In so doing, TD Bank does not admit that any class may be certified for purposes of litigation.  This Agreement is entered into without prejudice to TD Bank's rights to oppose certification, or seek decertification, of any litigation class in this Action or any other litigation.

110.    This Settlement may be terminated as specified in Sections XVI and XVII hereof.

## IV.    Settlement Consideration

111.    Subject to approval by the Court, TD Bank shall, without admission of liability, pay the total amount of Forty-Three Million and 00/100 Dollars ($43,000,000.00) as the monetary component of the Settlement.   This Settlement Payment Amount includes all monetary

---

[3] TD Bank expressly reserves, and does not waive, the right to take the position in other litigation that the release in the Final Judgment foreclosed certain claims of members of the MDL 2036 settlement class beyond September 20, 2012.

disbursements incurred in connection with the Settlement, including but not limited to (a) all monetary payments to the Settlement Classes; (b) all fees, costs, charges, and expenses of Notice and administration of the Settlement (including, but not limited to, all such amounts incurred by the Settlement Administrator and Tax Administrator in connection with the Settlement);  (c) all attorneys' fees, costs, and expenses awarded by the Court to Class Counsel; and (d) all Service Awards to be paid to Plaintiffs.  For avoidance of doubt, TD Bank shall not be required to pay any additional monetary sums in settlement of the Action, nor shall it be required to bear any other fees, costs, charges, or expenses in connection with the Settlement (exclusive of the costs of CAFA notice and implementation of account credits as provided in paragraphs 151 and 152 of this Agreement).  TD Bank also shall not be required to take any action or refrain from taking any action as a result of this Settlement except to fulfill its obligations to implement the terms of this Agreement as specifically provided herein.

112.    In addition to the Settlement Payment Amount described in the preceding paragraph, TD Bank shall provide Twenty-Seven Million and 00/100 Dollars ($27,000,000.00) in the form of reductions to the outstanding balances of Members of the Settlement Classes whose accounts were closed with amounts owed to TD Bank.  This Overdraft Forgiveness Amount shall serve to reduce the amounts that Members of the Settlement Classes owe to TD Bank for Overdraft Fees, Sustained Overdraft Fees, other TD Bank fees, and overdrafts the Bank paid but for which the Bank was not reimbursed.  As described fully below, the Parties have agreed to use best efforts to apply the Overdraft Forgiveness Amount in a manner that maximizes the benefit to the Members of the Settlement Classes, including by factoring in the benefit to Class Members of being removed from the ChexSystems database which may preclude consumers from opening bank accounts at many financial institutions.  TD Bank reports to

ChexSystems, a nationwide specialty consumer reporting agency for deposit accounts, any account that is closed with an amount owed to TD Bank of $75.00 or greater. As part of this Settlement, TD Bank has agreed to inform ChexSystems to remove reporting for each Account that has its amount owed to TD Bank reduced to below $75.00 as a result of applying the Overdraft Forgiveness Amount.

## V.    Settlement Approval

113.    Upon execution of this Agreement by all Parties, Settlement Class Counsel shall promptly move for an Order pursuant to Fed. R. Civ. P. ("Rule") 23(e)(1) authorizing Notice of the proposed Settlement ("Preliminary Approval Order"). The proposed Preliminary Approval Order that will be attached to the motion shall be in a form agreed upon by Settlement Class Counsel and TD Bank. The motion for preliminary approval shall request that the Court: (1) find that it is likely to approve the terms of the Settlement under Rule 23(e)(2); (2) find that it will likely be able to certify the Settlement Classes for purposes of judgment on the Settlement for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the procedures set forth in Section VIII hereof and in the Notice Program for Members of the Settlement Classes to exclude themselves from the Settlement Class or to object to the Settlement; (5) appoint as Class Counsel and as Settlement Class Counsel the law firms and attorneys listed in Section II of this Agreement, and appoint the Plaintiffs listed in the Settlement as representatives of the Settlement Class; (6) stay the Action pending Final Approval of the Settlement; and (7) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, Settlement Class Counsel and counsel for TD Bank, at which the Court will conduct an inquiry to determine whether the proposed Settlement is fair, reasonable and adequate after considering the factors listed in Rule 23(e)(2),

and whether to approve the Settlement and Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards to Plaintiffs.

114.    TD Bank, at its own expense, shall serve or cause to be served a notice or notices of the proposed Settlement, in conformance with the Class Action Fairness Act, 28 U.S.C. § 1715(b).

## VI.    Discovery

115.    Class Counsel and TD Bank already have engaged in significant formal and informal discovery, including depositions of over 30 party and non-party witnesses, the production of approximately 1,000,000 pages of documents and the exchange of class-related data and overdraft fee information.  In addition, and subject to its contractual, statutory, and regulatory obligations to protect its customers' private financial information, and pursuant to the terms of the Consent Order on Production of Customer Transactional Data entered in this Action, TD Bank will continue to cooperate informally with Settlement Class Counsel by making pertinent and reasonably accessible data available for review by Settlement Class Counsel and their experts in connection with the allocation analysis contemplated by Section XI hereof.

## VII.    Settlement Administrator

116.    The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, providing Notice to Members of the Settlement Classes, processing Claim Forms, and distributing payments from the Settlement Fund.

117.    The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement, include the following:

a.    Implementing the Notice Program required by this Agreement;

b.    Establishing and maintaining a post office box for receiving Claim Forms and mailed written notifications of exclusion from the Settlement Classes;

c.    Establishing and maintaining the Settlement Website;

d.    Establishing and maintaining a toll-free telephone line for Members of the Settlement Classes to call with Settlement-related inquiries, and answering the questions of Members of the Settlement Classes that call with or otherwise communicate such inquiries;

e.    Responding to any mailed Settlement Class Member inquiries;

f.    Processing all written notifications of exclusion from the Settlement Class;

g.    Providing weekly reports and, no later than five days after the Opt-Out Deadline, a final report to Class Counsel and TD Bank's counsel, that summarize the number of written notifications of exclusion received that week, the total number of written notifications of exclusion received to date, the number of Claim Forms received to date, and other pertinent information as requested by Class Counsel and TD Bank's counsel;

h.    At Class Counsel's and/or TD Bank's counsel's request, in advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that: (i) attests to implementation of the Notice Program in accordance with the Preliminary Approval Order; (ii) states the number of valid Claim Forms received to date; and (iii) identifies each Settlement Class Member that timely and properly provided written notification of exclusion from the Settlement Class;

i.       Receiving, reviewing and processing all Claim Forms submitted by Members of the Settlement Classes, pursuant to criteria established by this Settlement Agreement;

j.       After the Effective Date, processing and transmitting distributions to Members of the Settlement Classes;

k.       Paying TD Bank from the Settlement Fund the amount of account credits to be provided by TD Bank to Current Account Holders;

l.       Paying the remainder of the Settlement Fund to TD Bank in the event of a termination of the Settlement pursuant to Section XVI hereof;

m.       Paying invoices, expenses and costs upon approval by Settlement Class Counsel and TD Bank's counsel, as provided in this Agreement; and

n.       Performing the duties of Escrow Agent as described in this Agreement, and any other function related to the administration of the Settlement at the instruction of Settlement Class Counsel and TD Bank, including, but not limited to, verifying that Settlement Funds have been distributed as required by Sections XII and XIII hereof.

118.    All costs associated with Notice to the Settlement Classes and administration of the Settlement shall be paid out of the Settlement Fund. The costs of Notice and administration shall include any fees of and reasonable expenses incurred by the Settlement Administrator and Tax Administrator; fees of the Escrow Agent, and any other reasonable expenses relating to the establishment, maintenance, and distribution of the Settlement Fund; and reasonable expenses incurred in hiring outside experts for the purpose of performing services relating to the

administration of the Settlement, such as the identification of Members of the Settlement Classes and calculation of benefits under the Settlement.

## VIII.    Notice to Members of the Settlement Classes

119.    Upon Preliminary Approval of the Settlement, at the direction of Settlement Class Counsel, the Settlement Administrator shall implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order.  The Notice shall include, among other information: a description of the material terms of the Settlement; an explanation of the procedure and deadline for submitting Claim Forms; a date by which Members of the Settlement Classes may exclude themselves from or "opt out" of the Settlement Classes; a date by which Members of the Settlement Classes may object to the Settlement; the date, time, and location of the Final Approval Hearing; and the address of the Settlement Website at which Members of the Settlement Classes may access this Agreement, the Long-Form Notice, the Claim Form and other related documents and information.  Settlement Class Counsel and TD Bank's counsel shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order.  Notices provided under or as part of the Notice Program shall not bear or include TD Bank's logos or trademarks or the return address of TD Bank, or otherwise be styled to appear to originate from TD Bank.

120.    The Notice Program shall include the following components: (1) E-mail Notice and/or Mail Notice; (2) Long-Form Notice posted on the Settlement Website; and (3) any other components necessary to satisfy the requirements of due process and Rule 23.

121.    Subject to its statutory and regulatory obligations to protect its customers' private financial information, and pursuant to the terms of the Consent Order on Production of Customer

Transactional Data entered in this Action, as well as a separate Confidentiality Agreement in a form acceptable to TD Bank which protects the confidentiality of Settlement Class Members' personal identifying information, which the Settlement Administrator shall be required to sign, TD Bank will provide to the Settlement Administrator a list that identifies, subject to the availability of information in reasonably accessible electronic form, the names, last known mailing addresses, and last known email addresses, if any, of identifiable Members of the Settlement Classes, delineating those who are Current Account Holders and those who are Past Account Holders (the "Class List"). The Parties and Class Counsel agree that the Settlement Administrator shall maintain the Class List and other information provided to it by or on behalf of TD Bank, including information derived therefrom, in a confidential manner, and that the Settlement Administrator will not provide such Class List or other information to any other person, including Class Counsel and Plaintiffs, without the prior written consent of TD Bank.

122. The primary method of notice for Members of the Settlement Classes is individual E-Mail Notice to the last known email address shown on TD Bank's records. The secondary method of notice is individual Mail Notice to the last known mail address shown on TD Bank's records, or at a more current address, if that information can reasonably be obtained by the Settlement Administrator. Within 30 days from the date that the Settlement Administrator receives the Class List, the Settlement Administrator shall (1) send E-Mail Notice to Members of the Settlement Classes for whom the Settlement Administrator was provided an email address; and (2) mail Mail Notice to Members of the Settlement Classes for whom there are no email addresses on file. The Settlement Administrator shall run the mailing addresses through the National Change of Address Database before mailing. If an email is returned as undeliverable, the Settlement Administrator shall mail the Mail Notice to the Settlement Class Member. For all

Members of the Settlement Classes, if the mailed postcard is returned as undeliverable, the Settlement Administrator shall use reasonable efforts to locate a current mailing address for the Settlement Class Member and re-mail the notice to the current address.

123.    The Notice Program (which is composed of E-Mail Notice, Mail Notice, and the posting of the Long-Form Notice on the Settlement Website, all as described herein) shall be completed no later than 70 days before the Final Approval Hearing.  Within seven days after the date the Settlement Administrator completes the Notice Program, the Settlement Administrator shall provide Settlement Class Counsel and TD Bank an affidavit that confirms that the Notice Program was completed in a timely manner. Settlement Class Counsel shall file that affidavit with the Court as an exhibit to or in conjunction with Plaintiffs' Motion for Final Approval of the Settlement.

124.    The E-Mail and Mail Notice will direct Members of the Settlement Classes to the Long-Form Notice, which will be posted on the Settlement Website.  The E-Mail Notice will include a hyperlink to the Long-Form Notice and Claim Form.  The Mail Notice shall include a copy of the Claim Form.

125.    As soon as practicable following Preliminary Approval, but prior to the sending of Notice, the Settlement Administrator shall establish the Settlement Website and a toll-free telephone line for Members of the Settlement Classes to call with questions.  The Internet address (URL) of the Settlement Website and the toll-free number shall be included in all forms of Notice sent to Members of the Settlement Classes.   The Settlement Website shall include this Agreement, the Long-Form Notice, the Preliminary Approval Order, the Claim Form, and such other documents as Settlement Class Counsel and TD Bank agree to post or that the Court orders posted on the website.  The website shall be capable of allowing Members of the Settlement

Classes to complete and submit Claim Forms online. The telephone line shall be capable of providing general information concerning the Settlement, including deadlines for objecting to or opting out of the Settlement or submitting a claim, and the dates of relevant Court proceedings, including the Final Approval Hearing. The URL of the Settlement Website shall be www.TDBankOverdraftClassAction.com or such other URL as Settlement Class Counsel and TD Bank may subsequently agree upon in writing. The Settlement Website and toll-free number shall be maintained at least through the Effective Date. The Settlement Website shall not include any advertising, and shall not bear or include TD Bank's logos or trademarks. Operation of the Settlement Website shall cease no later than 60 days after distribution of the Net Settlement Fund to Members of the Settlement Classes has been completed as set forth in paragraphs 143 and 150, or such other date as Settlement Class Counsel and TD Bank shall agree, and ownership of the Settlement Website URL shall be transferred to TD Bank within ten days of the date on which operation of the Settlement Website ceases. The Settlement Administrator shall cause to be maintained a record of activities, including Claim Form submissions, inquiries to the Settlement Website, downloads, phone calls and/or mailings, and shall ensure that a running tally is kept of the number and types of materials mailed by it or downloaded from the Settlement Website in a computerized database form.

126.    The Notice also shall include a procedure for Members of the Settlement Classes to opt out of the Settlement. A Settlement Class Member may opt out of the Settlement at any time during the Opt-Out Period. Any Settlement Class Member who does not timely and validly request to opt out shall be bound by the terms of this Agreement, including but not limited to the Releases contained in this Agreement.

127.    The Notice also shall include a procedure for Members of the Settlement Classes to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and expenses and/or Service Awards to Plaintiffs.  Objections to the Settlement or to the application for fees, costs, expenses, and/or to the Service Awards must be submitted to the Clerk of the Court, Settlement Class Counsel, and TD Bank's counsel.

128.    For an objection or opt-out to be considered by the Court, the objection or opt-out must be submitted no later than the last day of the Opt-Out Period, as specified in the Notice.  If submitted by mail, an objection or opt-out shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope and addressed in accordance with the instructions.  If submitted by private courier (*e.g.*, Federal Express), an objection or opt-out shall be deemed to have been submitted on the shipping date reflected on the shipping label.

129.    For an opt-out to be considered by the Court, the opt-out must set forth:

a.    the name of the Action;

b.    the person's or entity's full name, address, email address and telephone number;

c.    a specific statement of the person's or entity's intention to be excluded from the Settlement;

d.    the identity of the person's or entity's counsel, if  represented; and

e.    the person's or entity's authorized representative's signature and the date on which the request was signed.

130.    For an objection to be considered by the Court, the objection must also set forth:

a.    the name of the Action;

b.    the objector's full name, address, email address and telephone number;

c.    an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d.    a statement whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

e.    a statement with specificity of all grounds for the objection, accompanied by any legal support for the objection known to the objector or the objector's counsel;

f..   the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

g.    the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

h.    the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

      i.      any and all agreements that relate to the objection or the process of objecting – whether written or oral – between objector or objector's counsel and any other person or entity;

      j.      the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

      k.      a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection;

      l.      a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

      m.      the objector's signature (an attorney's signature is not sufficient). Any objection submitted on behalf of a business entity must identify the title of the authorized individual signing the objection.

131.     Settlement Class Counsel and TD Bank's counsel shall have the right to contact persons and entities who submit written notifications of exclusion from the Settlement Classes.

132.     The Settlement Administrator shall ensure that the information that it receives from TD Bank, Class Counsel and/or Members of the Settlement Classes is secured and managed in such a way as to protect the security and confidentiality of the information, consistent with the privacy policies of TD Bank and applicable law.  Except as specifically provided in this Agreement, the Settlement Administrator shall not disclose or disseminate any information that it receives from TD Bank, Class Counsel and/or Members of the Settlement Classes without prior written consent of the Parties or by order of the Court.

133.     Within the parameters set forth in this Section VIII, further specific details of the Notice Program shall be subject to the agreement of Settlement Class Counsel and TD Bank.

## IX.    Final Approval Order

134.    Plaintiffs' motion for Preliminary Approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur. Plaintiffs shall file their Motion for Final Approval of the Settlement, and their application for attorneys' fees, costs, and expenses, and for Service Awards for Plaintiffs, no later than 56 days prior to the Final Approval Hearing.    At the Final Approval Hearing, the Court will hear argument on Plaintiffs' Motion for Final Approval of the Settlement, and on Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards for Plaintiffs.    In the Court's discretion, the Court also may hear from any Members of the Settlement Classes (or their counsel) who object to the Settlement or to the fee, cost, expense, or Service Award application, provided the objectors filed timely objections that meet all of the requirements listed above.

135.    At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order granting Final Approval of the Settlement, and whether to approve Class Counsel's request for attorneys' fees, costs, expenses, and Service Awards.    The proposed Final Approval Order that will be attached to the motion shall be in a form agreed upon by Settlement Class Counsel and TD Bank.    Such proposed Final Approval Order shall, among other things:

    a.    Determine that the Settlement is fair, reasonable, and adequate, and grant Final Approval of the Settlement in accordance with Fed. R. Civ. P. 23(e)(2);

    b.    Finally certify the Settlement Class for settlement purposes only;

    c.    Determine that the Notice provided satisfies due process requirements;

    d.    Dismiss the Action with prejudice and without costs;

e.     Bar and enjoin Plaintiffs and all Members of the Settlement Classes from asserting any of the Released Claims, as set forth in Section XIV hereof, including during any appeal from the Final Approval Order;

f.     Release TD Bank and the Released Parties from the Released Claims, as set forth in Section XIV hereof; and

g.     Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including TD Bank, Plaintiffs, all Members of the Settlement Classes, and any objectors, to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## X.     Settlement Fund and Other Consideration

136.     In exchange for the mutual promises and covenants in this Agreement, including, without limitation, the Releases as set forth in Section XIV hereof and the dismissal of the action with prejudice upon Final Approval, within fourteen calendar days of Preliminary Approval, TD Bank shall deposit the Settlement Payment Amount of $43,000,000.00, into the Escrow Account to create the Settlement Fund as set forth herein.

137.     The $43 million Settlement Payment Amount shall be allocated to the six Settlement Classes as follows, prior to any reductions for attorneys' fees, costs, and expenses awarded to Class Counsel, costs of Notice and administration of the Settlement, and Service Awards for Plaintiffs:

| Settlement Class | Settlement Payment Amount |
|---|---|
| TD Available Balance Consumer Class | $ 33,385,964 |
| South Financial Class | $ 4,173,246 |
| Regulation E Class | $ 1,000,000 |
| Usury Class | $ 2,086,623 |
| Uber/Lyft Class | $ 267,544 |
| TD Available Balance Business Class | $ 2,086,623 |
| Total | $ 43,000,000 |

138. Upon the establishment of the Escrow Account, the Escrow Agent may, but shall not be required to, cause the Settlement Funds in the Escrow Account to be invested, in whole or in part, in interest-bearing short-term instruments or accounts – to be agreed upon by Settlement Class Counsel and TD Bank – that are backed by the full faith and credit of the United States Government or that are fully insured by the United States Government or an agency thereof (the "Instruments"). Settlement Class Counsel and TD Bank shall agree on the FDIC-insured financial institution at which the Escrow Account shall be established, which shall not be TD Bank. The Escrow Agent may thereafter re-invest the interest proceeds and the principal as they mature in similar Instruments, bearing in mind the liquidity requirements of the Escrow Account to ensure that it contains sufficient cash available to pay all invoices, taxes, fees, costs, and expenses, and other required disbursements, in a timely manner. Notwithstanding the foregoing, that portion of the Settlement Fund that the Settlement Administrator reasonably estimates needs to be available on a liquid basis to pay on-going costs of settlement administration, as provided in this Agreement, may be placed in one or more insured accounts that may be non-interest-bearing. Except as otherwise specified herein, the Instruments at all times will remain in the Escrow Account and under the control of the Escrow Agent. The Escrow Agent shall communicate with Settlement Class Counsel and counsel for TD Bank on at least a monthly basis to discuss potential cash needs for the following month. All costs or fees incurred in

connection with investment of the Settlement Fund in the Instruments shall be paid out of the investment proceeds or the Settlement Fund.

139.    The Settlement Fund at all times shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l.  All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Settlement Fund or otherwise, including any taxes or tax detriments that may be imposed upon TD Bank or its counsel, or Plaintiffs and Class Counsel, with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), shall be paid out of the Settlement Fund.  Plaintiffs and Class Counsel, and TD Bank and its counsel shall have no liability or responsibility for any of the Taxes.  The Settlement Fund shall indemnify and hold Plaintiffs and Class Counsel, and TD Bank and its counsel harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

140.    The Settlement Fund shall be used for the following purposes:

a.    Distribution of payments to Members of the Settlement Classes pursuant to Sections XI and XII hereof;

b.    Payment of the Court-ordered award of Class Counsel's attorneys' fees, costs, and expenses pursuant to Section XV hereof;

c.    Payment of the Court-ordered Service Awards to the Plaintiffs pursuant to Section XV hereof;

d.    Payment of any residual *cy pres* distribution as set forth in Section XIII hereof, together with any administrative costs associated therewith;

e.   Payment of all Taxes, including, without limitation, taxes owed as a result of accrued interest on the Escrow Account, in a timely manner consistent with the recommendation of the Tax Administrator, subject to approval by Settlement Class Counsel and TD Bank;

f.   Payment of any costs of Notice and administration of the Settlement; and

g.   Payment of additional fees, costs, and expenses not specifically enumerated in subparagraphs (a) through (f) of this paragraph, subject to approval of Settlement Class Counsel and TD Bank.

141.   The Settlement consideration shall also include TD Bank's promise to provide the Overdraft Forgiveness Amount of $27,000,000.00 in the form of reductions to the outstanding balances of Members of the Settlement Classes whose accounts were closed with amounts owed to TD Bank. The Overdraft Forgiveness Amount shall serve to reduce the amounts that Members of the Settlement Classes owe TD Bank for Overdraft Fees, Sustained Overdraft Fees, other TD Bank fees, and overdrafts the Bank paid but for which the Bank was not reimbursed. The Overdraft Forgiveness Amount shall be allocated to the six Settlement Classes as follows:

| Settlement Class | Overdraft Forgiveness Amount |
|---|---|
| TD Available Balance Consumer Class | $    21,600,000 |
| South Financial Class | $    000.00 |
| Regulation E Class | $    000.00 |
| Usury Class | $    2,700,000 |
| Uber/Lyft Class | $    000.00 |
| TD Available Balance Business Class | $    2,700,000 |
| Total | $    27,000,000 |

## XI.   Calculation of Distributions from Net Settlement Fund and Overdraft Forgiveness Amount

142.   TD Bank, in consultation with Settlement Class Counsel and their experts, shall identify data – to the extent it exists in reasonably accessible electronic form – sufficient to

calculate and implement the allocation of the Net Settlement Fund and the Overdraft Forgiveness Amount as provided in Sections XI and XII. The calculation of the allocations shall be performed by Settlement Class Counsel and their experts and/or the Settlement Administrator, as described below, and the implementation of the allocations contemplated by this Section XI shall be jointly undertaken by the Settlement Administrator and TD Bank.  The methodology provided for herein will be applied to the data as consistently, sensibly, and conscientiously as reasonably possible, recognizing and taking into consideration the nature and completeness of the data and the purpose of the computation.  Subject to its statutory and regulatory obligations to protect its customers' private financial information, and pursuant to the terms of the Consent Order on Production of Customer Transactional Data entered in this Action, TD Bank shall make available data and information sufficient to allow Settlement Class Counsel and their experts and the Settlement Administrator to determine and confirm the calculations and allocations contemplated by this Agreement and the Settlement Administrator's and TD Bank's implementation of such allocations.

143.    <u>Net Settlement Fund Allocation</u>:  The amount of the distribution from the Net Settlement Fund to which each identifiable Member of the Settlement Classes is entitled for the Class Periods (subject to the availability of data) shall be determined using the following methodologies, or such other methodologies as would have an equivalent result.  The amount of the Net Settlement Fund available for distribution to each Settlement Class shall equal the Net Settlement Fund multiplied by the percentage of the total Settlement Payment Amount allocated to that Class, as set forth in paragraph 137 of this Agreement.  For example, the TD Available Balance Consumer Class shall be entitled to 77.6% of the Net Settlement Fund ($33,385,964/$43,000,000 = 77.6%).

a.     *TD Available Balance Consumer Class.*   Any Member of the TD Available Balance Consumer Class who wishes to receive a distribution from the Net Settlement Fund must submit a Claim Form. Those Settlement Class Members who were assessed one or more Eligible TD Available Balance Consumer Overdraft Fees shall be provided a Claim Form with the Notice. To the extent the portion of the Net Settlement Fund allocated to the TD Available Balance Consumer Class is not sufficient to make full payment for all Eligible TD Available Balance Consumer Overdraft Fees assessed to Settlement Class Members who submit timely and valid claims, it shall be distributed on a *pro rata* basis. To the extent the claims received are less than the Net Settlement Fund allocated to the TD Available Balance Consumer Class, the excess amount will be allocated *pro rata* to the Settlement Class Members who submit claims consistent with an agreed *pro rata* distribution that does not provide a windfall to Class Members.

b.     *South Financial Class.*   The portion of the Net Settlement Fund allocated to the South Financial Class will be distributed to Settlement Class Members who were assessed one or more Eligible South Financial Available Balance Overdraft Fees and/or Eligible South Financial High-to-Low Overdraft Fees on a *pro-rata* basis using calculations performed by Plaintiffs' expert. Members of the South Financial Class shall not be required to submit a Claim Form to receive a distribution.

c.       *Regulation E Class.*  Any Member of the Regulation E Class who wishes to receive a distribution from the Net Settlement Fund must submit a Claim Form.  Those Settlement Class Members who were assessed one or more Eligible Regulation E Overdraft Fees shall be provided a Claim Form with the Notice.  Members of the Regulation E Class submitting timely and valid claims shall be entitled to a payment from the Net Settlement Fund of up to $35.00.  To the extent the portion of the Net Settlement Fund allocated to the Regulation E Class is not sufficient to make a full $35.00 payment to all Settlement Class Members who submit timely and valid claims, it shall be distributed on a *pro rata* basis.  To the extent the portion of the Net Settlement Fund allocated to the Regulation E Class exceeds the amount necessary to pay each eligible claimant $35.00, the amount paid to each shall be increased accordingly (*e.g.*, $43.71 or $51.30).

d.       *Usury Class.*  Any Member of the Usury Class who wishes to receive a distribution from the Net Settlement Fund must submit a Claim Form. Those Settlement Class Members who were assessed one or more Eligible Sustained Overdraft Fees shall be provided a Claim Form with the Notice. To the extent the portion of the Net Settlement Fund allocated to the Usury Class is not sufficient to make full payment for all Eligible Sustained Overdraft Fees assessed to Settlement Class Members who submit timely and valid claims, it shall be distributed on a *pro rata* basis. To the extent the claims received are less than the Net Settlement Fund

allocated to the Usury Class, the excess amount will be allocated *pro rata* to the Settlement Class Members who submit claims consistent with an agreed *pro rata* distribution that does not provide a windfall to Class Members.

e.  *Uber/Lyft Class*.  The portion of the Net Settlement Fund allocated to the Uber/Lyft Class will be distributed to Settlement Class Members who were assessed one or more Eligible Uber/Lyft Overdraft Fees on a *pro-rata* basis using calculations performed by Plaintiffs' expert.  Members of the Uber/Lyft Class shall not be required to submit a Claim Form to receive a distribution.

f.  *TD Available Balance Business Class.*  Any Member of the TD Available Balance Business Class who wishes to receive a distribution from the Net Settlement Fund must submit a Claim Form.  Those Settlement Class Members who were assessed one or more Eligible TD Available Balance Business Overdraft Fees shall be provided a Claim Form with the Notice. To the extent the portion of the Net Settlement Fund allocated to the TD Available Balance Business Class is not sufficient to make full payment for all Eligible TD Available Balance Business Overdraft Fees assessed to Settlement Class Members who submit timely and valid claims, it shall be distributed on a *pro rata* basis.  To the extent the claims received are less than the Net Settlement Fund allocated to the TD Available Balance Business Class, the excess amount will be allocated *pro rata* to the

Settlement Class Members who submit claims consistent with an agreed *pro rata* distribution that does not provide a windfall to Class Members.

g. *Adjustment for Overdraft Fee Refunds.* For all Settlement Classes other than the Regulation E Class, the Overdraft Fees or Sustained Overdraft Fees eligible for payment from the Net Settlement Fund shall be adjusted to account for fee refunds pursuant to the following methodology, prior to distribution of the Net Settlement Fund to Settlement Class Members. For each such Settlement Class, Plaintiffs' expert shall determine the total Overdraft Fees TD Bank refunded to Settlement Class Members' Accounts as a percentage of the total Overdraft Fees assessed to those Accounts during the applicable Class Period ("Fee Refund Percentage").[4] Thereafter, the Overdraft Fees or Sustained Overdraft Fees eligible for payment from the Net Settlement Fund shall be reduced by the applicable Fee Refund Percentage for each Settlement Class Member who received a refund of one or more Overdraft Fees or Sustained Overdraft Fees during the applicable Class Period. For example, if a Member of the TD Available Balance Consumer Class was assessed two Eligible TD Available Balance Consumer Overdraft Fees, totaling $70.00, and Plaintiffs' expert determined a Fee Refund Percentage of 10% for the TD Available Balance Consumer Class, the distribution from the Net Settlement Fund to which that Member would be eligible (before any *pro rata* adjustments) would be $63.00 ($70.00 – ($70.00 * 10%)). Distributions from the Net Settlement

---

[4] The Fee Refund Percentage for the Usury Class shall be based on the total Sustained Overdraft Fees TD Bank refunded to Members of the Usury Class as a percentage of total Sustained Overdraft Fees assessed to those Members during the Class Period.

Fund shall not be adjusted as a result of any Settlement Class Member's Account being closed with amounts owed to TD Bank.

144.    <u>Overdraft Forgiveness Amount Allocation:</u>  The amount of the distribution from the Overdraft Forgiveness Amount to which eligible Members of the Settlement Classes are entitled (subject to the availability of data) shall be determined using the following methodologies, or such other methodologies as would have an equivalent result.  Only Members of the TD Available Consumer Class, Usury Class and TD Available Balance Business Class are eligible to receive distributions from the Overdraft Forgiveness Amount.   Settlement Class Members shall not be required to submit a Claim Form to receive a distribution from the Overdraft Forgiveness Amount.

a.    *TD Available Balance Consumer Class.*  Those Settlement Class Members who, according to the data provided to Plaintiffs' expert, were assessed one or more Eligible TD Available Balance Consumer Overdraft Fees and whose Personal Accounts were closed with $75.00 or more owed to TD Bank for Overdraft Fees, other TD Bank fees, and overdrafts the Bank paid but for which the Bank was not reimbursed, may be entitled to be credited with a portion of the Overdraft Forgiveness Amount.  The Overdraft Forgiveness Amount allocated to this Class will be distributed in such a manner as to reduce the amount owed to TD Bank to below $75.00 for the maximum number of Accounts possible, as described below.

b.    *Usury Class.* Those Settlement Class Members who, according to the data provided to Plaintiffs' expert, were assessed one or more Eligible

Sustained Overdraft Fees and whose Accounts were closed with $75.00 or more owed to TD Bank for Sustained Overdraft Fees, other TD Bank fees, and overdrafts the Bank paid but for which the Bank was not reimbursed, may be entitled to be credited with a portion of the Overdraft Forgiveness Amount. The Overdraft Forgiveness Amount allocated to this Class will be distributed in such a manner as to reduce the amount owed to TD Bank to below $75.00 for the maximum number of Accounts possible, as described below.

c.     *TD Available Balance Business Class.* Those Settlement Class Members who, according to the data provided to Plaintiffs' expert, were assessed one or more Eligible TD Available Balance Business Overdraft Charges and whose Business Accounts were closed with $75.00 or more owed to TD Bank for Overdraft Fees, other TD Bank fees, and overdrafts the Bank paid but for which the Bank was not reimbursed, may be entitled to be credited with a portion of the Overdraft Forgiveness Amount. The Overdraft Forgiveness Amount allocated to this Class will be distributed in such a manner as to reduce the amount owed to TD Bank to below $75.00 for the maximum number of Accounts possible, as described below.

d.     *Methodology to maximize Overdraft Forgiveness Amount.* Plaintiffs' expert, working with TD Bank and Settlement Class Counsel, shall compile, for each of the three Settlement Classes identified in subparagraphs (a)-(c) above, a listing of each Account which was closed

with $75.00 or more owed to TD Bank, along with the amount owed for each Account. For each Settlement Class, the Overdraft Forgiveness Amount shall be applied to such Accounts (excluding Accounts belonging to any Settlement Class Member who has timely opted out of the Settlement) in ascending order based on the amount owed to TD Bank, starting at $75.00, and continuing until the Overdraft Forgiveness Amount allocated to each Class is exhausted. The portion of the Overdraft Forgiveness Amount allocated to each Account shall be the amount necessary to reduce the balance owed to TD Bank to $74.99. For example, the amount applied to an Account owing $75.00 would be $.01, and the amount applied to an Account owing $100.00 would be $25.01. The Overdraft Forgiveness Amount allocations shall first be applied to the TD Available Balance Consumer Class and the TD Available Balance Business Class, followed by the Usury Class. To the extent an Account receives a distribution from the Overdraft Forgiveness Amount based on a Settlement Class Member's inclusion in the TD Available Balance Classes (Consumer or Business), the Account shall not be entitled to a distribution from the Overdraft Forgiveness Amount allocated to the Usury Class. TD Bank shall inform ChexSystems to remove any reporting for each Account that has its amount owed to TD Bank reduced to below $75.00 as a result of applying the Overdraft Forgiveness Amount.

145.    The Settlement Administrator shall receive, process and determine the validity of all Claim Forms. Claim Forms may be completed and submitted online or submitted by mail or

private courier.  For a Claim Form to be considered for payment from the Net Settlement Fund, the Claim Form must be submitted no later than the last day of the Claims Submission Period, as specified in the Notice.  For purposes of determining timeliness, a Claim Form shall be deemed to have been submitted on the date submitted online, postmarked by the postal service, or sent by private courier as reflected by the date on the shipping label.

146.    A Settlement Class Member may belong to more than one Settlement Class, and may receive distributions from the Net Settlement Fund for each Settlement Class to which the Member belongs.  The total individual distribution amount paid to each Settlement Class Member from the Net Settlement Fund shall be referred to as that Member's "Total Settlement Payment Amount."  A Settlement Class Member whose Account was closed with amounts owed to TD Bank may receive both a distribution from the Net Settlement Fund and a reduction to the balance owed to TD Bank based on that Class Member's allocation from the Overdraft Forgiveness Amount.

147.    The Parties agree the foregoing allocation formulas are exclusively for purposes of computing retrospectively, in a reasonable and efficient fashion, the distribution amount each Settlement Class Member should receive from the Net Settlement Fund and/or Overdraft Forgiveness Amount.  The allocation formulas used herein are not intended and shall not be used for any other purpose or objective whatsoever.

## XII. Distribution of Net Settlement Fund

148.    As soon as practicable, but in no event sooner than 30 days from the Effective Date, TD Bank and the Settlement Administrator shall distribute the Net Settlement Fund as set forth in this Section XII.

149.    The Net Settlement Fund is equal to the Settlement Payment Amount plus any interest earned from the Instruments, less the following:

    a.    the amount of the Court-awarded attorneys' fees, costs, and expenses to Class Counsel;

    b.    the amount of the Court-awarded Service Awards to the Plaintiffs;

    c.    the costs of Notice and administration of the Settlement, including a reservation of a reasonable amount of funds for prospective costs of Notice and administration of the Settlement including tax administration as agreed upon by Settlement Class Counsel and TD Bank; and

    d.    all other costs and/or expenses incurred in connection with the Settlement not specifically enumerated in subsections (a) through (c) of this paragraph that are expressly provided for in this Agreement or have been approved by Settlement Class Counsel and TD Bank.

150.    Every Settlement Class Member shall be paid from the Net Settlement Fund the Total Settlement Payment Amount to which he or she is entitled, calculated as set forth in paragraphs 142 and 143 above ("Settlement Fund Payments").  In no event, however, shall TD Bank be required to pay more than a total of Forty Three Million and 00/100 Dollars ($43,000,000.00) to satisfy its monetary obligations under this Settlement (exclusive of the costs of CAFA notice and implementation of account credits as provided in paragraphs 151 and 152 of this Agreement).

151.    Settlement Fund Payments to Current Account Holders shall be made by credits to their Accounts.  TD Bank shall notify each Current Account Holder of such credit and provide a brief explanation that the credit has been made as a payment in connection with the Settlement.

TD Bank shall provide the notice of account credit described in this paragraph in or with the account statement on which the credit is reflected.  TD Bank will bear any costs associated with implementing the account credits and notification discussed in this paragraph.

152.    Any account credits paid pursuant to paragraph 151 hereof shall be paid from the Net Settlement Fund.  For each Current Account Holder entitled to a Settlement Fund Payment, the Settlement Administrator shall provide TD Bank with the account holder's name, account number, and amount of account credit to which the account holder is entitled.  The Settlement Administrator and Escrow Agent shall also provide TD Bank from the Net Settlement Fund the sum of the total account credits to be provided to Current Account Holders.  TD Bank shall hold the funds to be used in paying account credits in escrow pending distribution of the account credits to Current Account Holders, and shall provide written verification to Settlement Class Counsel and the Escrow Agent of the amount of account credits that were paid.

153.    Settlement Fund Payments to Past Account Holders will be made by checks with appropriate legends, in a form approved by Settlement Class Counsel and TD Bank, to indicate that they are from the Settlement Fund.  Checks will be cut and mailed by the Settlement Administrator, and will be sent to the addresses that the Settlement Administrator identifies as valid. Checks shall be valid for 180 days.  For Settlement Fund Payments made to jointly held Accounts, checks will be payable to all Account Holders, and will be mailed to the first Account Holder listed on the Account.  The Settlement Administrator will make reasonable efforts to locate the proper address for any intended recipient of Settlement Funds whose check is returned by as undeliverable, and will re-mail it once to the updated address, or, in the case of a jointly held Account, and in the Settlement Administrator's discretion, to an Account Holder other than the one listed first.

154.    The amount of any uncashed or returned checks sent by the Settlement Administrator shall remain in the Settlement Fund for one year from the date that the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator shall make a reasonable effort to locate intended recipients of Settlement Funds whose checks were returned to effectuate delivery of such checks.  The Settlement Administrator shall make only one attempt to re-mail or re-issue a distribution check.

### XIII.    Disposition of Residual Funds

155.    Within one year plus 30 days after the date the Settlement Administrator mails the first Settlement Fund Payments, any funds remaining in the Settlement Fund shall, subject to the Court's approval, be distributed through a residual *cy pres* program.  The residual *cy pres* recipient(s) shall be agreed upon by Settlement Class Counsel and TD Bank and subject to Court approval.  The purpose of any residual *cy pres* distribution shall be to benefit consumer financial literacy education, and to educate and assist consumers with financial services issues through advisory and related services (excluding litigation).  Any residual *cy pres* distribution shall be paid as soon as reasonably possible following the completion of distribution of Settlement Fund Payments.  All costs associated with the disposition of residual *cy pres* funds shall be paid by the Settlement Fund.  In the event no money remains in the Settlement Fund within one year plus 30 days after the first Settlement Fund Payment is mailed, the Parties shall have no obligation whatsoever to make any residual *cy pres* distribution.  If the Court does not approve any *cy pres* distributions, or if any such approval is reversed on appeal, residual funds shall be distributed in the manner provided by the final order addressing distribution of residual funds.

## XIV.  Releases

156.    As of the Effective Date, Plaintiffs and every Member of the Settlement Classes who does not timely opt-out of the Settlement, each on behalf of himself, herself, or itself, and on behalf of his, her, or its respective heirs, executors, assigns, beneficiaries, predecessors, and successors, and any person or entity claiming under them, shall automatically be deemed to have fully and irrevocably released and forever discharged TD Bank and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors, officers, employees, agents, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters up to and including the date of Preliminary Approval that were or could have been alleged in this Action by Plaintiffs or by any other Members of the Settlement Classes relating in any way to Overdraft Practices, Overdraft Fees, or Sustained Overdraft Fees, including, without limitation, any claims, actions, causes of action, demands, damages, losses, or remedies relating to, based upon, resulting from, or arising out of (a) TD Bank's, Carolina First Bank's and/or Mercantile Bank's practices, policies and procedures related to the authorization, processing, payment, return and/or rejection of an item when the Bank determined an Account had insufficient funds to cover the item, (b) the calculation, assessment, imposition, amount or collection of fees on an Account when TD Bank, Carolina First Bank or Mercantile Bank determined the Account had

insufficient funds to cover an item (including overdraft-paid and overdraft-return (NSF) fees), and (c) TD Bank's, Carolina First Bank's and/or Mercantile Bank's practices, policies and procedures concerning authorization, processing, sequencing or posting debit transactions.  The foregoing release includes, by way of example but not limitation, any and all of the following to the extent they involve, result in, or seek recovery or relief for Overdraft Practices, Overdraft Fees, or Sustained Overdraft Fees: (1) the contract(s) relating to TD Bank's, Carolina First Bank's or Mercantile Bank's Overdraft Practices, including the circumstances in which the Bank is or was authorized or purportedly authorized to assess Overdraft Fees or Sustained Overdraft Fees; (2) any failure to adequately or clearly disclose, in one or more contracts, agreements, disclosures, or other written materials, through oral communications, or in any other manner, Overdraft Practices, Overdraft Fees, or Sustained Overdraft Fees, including without limitation, disclosures concerning posting order, High-to-Low Posting, the Available Balance Practice, or the manner in which Debit Card Transactions are or would be authorized, approved, processed, or posted to an Account; (3) any failure to obtain informed affirmative consent (opt in) from Account holders before assessing Overdraft Fees or Sustained Overdraft Fees; (4) any alleged failure to comply with the Regulation E overdraft amendments, 12 C.F.R. § 1005.17 (b)(1)(i-iv); (5) the authorization, approval or handling of any Debit Card Transaction; (6) any failure to notify, warn, alert, or obtain advance approval from an Account holder when a Debit Card Transaction would or might cause an Account to become overdrawn or further overdrawn or an Overdraft Fee to be assessed; (7) any failure to allow an Account holder to opt out of overdraft services, Overdraft Fees, or Sustained Overdraft Fees, or to publicize or disclose the ability of the holder of any Account to opt out of overdraft services, Overdraft Fees or Sustained Overdraft Fees; (8) any conduct or statements encouraging the use of Debit Cards or overdraft services; (9)

any failure to provide Account holders with the opportunity to cancel Debit Card Transactions; (10) any alleged manipulation or reordering of transactions or Account balances for the purpose or having the effect of increasing the number of Overdraft Fees or Sustained Overdraft Fees; (11) any alleged use of Pending Transactions for the purpose or having the effect of increasing the number of Overdraft Fees or Sustained Overdraft Fees; (12) any imposition of an Overdraft Fee or Sustained Overdraft Fee when a different system for authorizing or posting transactions would have resulted in fewer such fees; (13) any failure to provide Account holders with accurate Account balance information; (14) any assessment of allegedly exorbitant or excessive Overdraft Fees or Sustained Overdraft Fees; (15) any alleged unfairness of any Overdraft Practice; (16) any alleged failure to comply with state or federal usury laws, including 12 U.S.C. § 85;  (17) the coding or designation of any Debit Card Transaction as "one-time" or "recurring"; and (18) any advertisements or sales practices relating to any of the foregoing.  The foregoing release does not release claims alleging the imposition of multiple overdraft-return (NSF) fees on a single Automated Clearing House (ACH) transaction or check transaction.

157.    AS OF THE EFFECTIVE DATE, PLAINTIFFS AND EACH SETTLEMENT CLASS MEMBER SHALL FURTHER AUTOMATICALLY BE DEEMED TO HAVE WAIVED AND RELEASED ANY AND ALL PROVISIONS, RIGHTS, AND BENEFITS CONFERRED BY § 1542 OF THE CALIFORNIA CIVIL CODE OR SIMILAR LAWS OF ANY OTHER STATE OR JURISDICTION.  SECTION 1542 OF THE CALIFORNIA CIVIL CODE READS:  "§1542.  CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM

OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

158.    Plaintiffs or any Settlement Class Member may hereafter discover facts other than or different from those that the Plaintiff or Settlement Class Member now knows or believes to be true with respect to the subject matter of the claims released pursuant to the terms of paragraphs 156 and 157 hereof, or the law applicable to such claims may change.  Nonetheless, each and every Plaintiff and Settlement Class Member expressly agrees that, as of the Effective Date, he, she, or it shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this paragraph and paragraphs 156 and 157 hereof.  Further, each and every Plaintiff and Settlement Class Member agrees and acknowledges that he, she, or it shall be bound by this Agreement, including by the releases contained in this paragraph and in paragraphs 156 and 157 hereof, and that all of their claims or potential claims in the Action shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if the Plaintiff or Settlement Class Member never receives actual notice of the Settlement and/or never receives a distribution of funds or credits from the Settlement.

159.    The Releases provided for herein are a result of membership in the Settlement Classes, the Court's approval process, and occurrence of the Effective Date, and are not conditioned on receipt of payment or reduction of any outstanding obligation by any particular Settlement Class Member.

160.    Nothing in this Agreement shall operate or be construed to release any claims or rights TD Bank has to recover any past, present or future amounts that may be owed by Plaintiffs or by any Settlement Class Member on any accounts, loans or debts with TD Bank, pursuant to the terms and conditions of such accounts, loans, or debts; provided, however, that TD Bank shall release its claim or rights to recover any amounts forgiven on an Account as a result of applying the Overdraft Forgiveness Amount as described herein.

## XV.    Payment of Attorneys' Fees, Costs, and Service Awards

161.    TD Bank agrees not to oppose Class Counsel's request for attorneys' fees of up to 30% of the $70 million value of the Settlement, and not to oppose Class Counsel's request for reimbursement of costs and expenses.  Class Counsel agree not to make a request for attorneys' fees that exceeds 30% of the $70 million value of the Settlement.  Any award of attorneys' fees, costs, and expenses to Class Counsel shall be payable solely out of the Settlement Fund.  The determination of Class Counsel's request for attorneys' fees shall be based on controlling Fourth Circuit precedent and not based on state law.  The Parties agree that the Court's failure to approve an award of attorneys' fees, costs, or expenses in the amount requested by Class Counsel shall not prevent the Settlement Agreement from becoming Effective, nor shall it be grounds for termination.

162.    Within three business days of the Effective Date, the Escrow Agent shall pay from the Settlement Fund to Settlement Class Counsel all Court-approved attorneys' fees, costs, and expenses of Class Counsel, including interest accrued thereon, provided, however, that the Escrow Agent shall not pay any such fees, costs or expenses from the Settlement Fund to Settlement Class Counsel until such time as Settlement Class Counsel have jointly agreed upon a plan of allocation of fees, costs and expenses among all Class Counsel, and have jointly provided

payment instructions to the Escrow Agent.  In the event that the award of attorneys' fees, costs, and expenses of Class Counsel is reduced on appeal, the Escrow Agent shall only pay to Settlement Class Counsel from the Settlement Fund the reduced amount of such award, including interest accrued thereon.  Settlement Class Counsel shall timely furnish to the Escrow Agent any required tax information or forms before the payment is made.

163.    The payment of attorneys' fees, costs and expenses of Class Counsel pursuant to paragraph 162 hereof shall be made through a deposit by the Escrow Agent into an Attorney Client Trust Account jointly controlled by Settlement Class Counsel.  After the payment for fees, costs and expenses has been deposited into this account, Settlement Class Counsel shall be solely responsible for distributing each Class Counsel firm's allocated share of such fees, costs and expenses to each firm.

164.    Settlement Class Counsel will ask the Court to approve Service Awards of up to $10,000 per Plaintiff, or $7,500 per Plaintiff for married couples in which both spouses are named Plaintiffs.  All Service Awards are to be paid from the Settlement Fund.  The Service Awards shall be paid to Plaintiffs in addition to Plaintiffs' Settlement Fund Payments.  TD Bank agrees not to oppose Settlement Class Counsel's request for the Service Awards.  The Parties agree that the Court's failure to approve Service Awards in the amounts requested by Class Counsel shall not prevent the Settlement Agreement from becoming Effective, nor shall it be grounds for termination.

165.    The Parties negotiated and reached agreement regarding attorneys' fees, costs and expenses and Service Awards only after reaching agreement on all other material terms of this Settlement.

## XVI.  Termination of Settlement

166.    Subject to the limitations set forth in paragraphs 161 and 164 above regarding the Court's determinations with respect to Class Counsel's requests for attorneys' fees, costs, and expenses and Plaintiffs' requests for Service Awards, this Settlement may be terminated by Settlement Class Counsel or TD Bank by serving on counsel for the opposing Party and filing with the Court a written notice of termination within 45 days (or such longer time as may be agreed between Settlement Class Counsel and TD Bank) after any of the following occurrences:

      a.      Settlement Class Counsel and TD Bank agree to termination;

      b.      the Court rejects, materially modifies, materially amends or changes, or declines to grant Preliminarily or Final Approval of the Settlement;

      c.      an appellate court reverses the Final Approval Order, and the Settlement is not reinstated and finally approved without material change by the Court on remand;

      d.      any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order, or the Settlement in a way that Settlement Class Counsel or TD Bank seeking to terminate the Settlement reasonably consider material;

      e.      the Effective Date does not occur; or

      f.      any other ground for termination provided for elsewhere in this Agreement.

167.    TD Bank, in its sole and absolute discretion, also shall have the right to terminate the Settlement by serving on Settlement Class Counsel and filing with the Court a notice of termination within fourteen (14) days of its receipt from the Settlement Administrator of the final

opt-out report, if the number of Members of the Settlement Classes who timely request exclusion from the Settlement exceeds the greater of (i) five thousand (5,000) or (ii) one-quarter of one percent (0.25%) of the total number of Members of the Settlement Classes.

168.    In the event of a termination of the Settlement, and after payment of any invoices or other fees or expenses mentioned in this Agreement that have been incurred and are due to be paid from the Escrow Account, the balance of the Settlement Fund shall be refunded and remitted to TD Bank as provided in paragraph 171 hereof.  Except in the event any term of this Agreement has been breached, TD Bank shall have no right to seek reimbursement from Plaintiffs or Class Counsel for any funds disbursed from the Escrow Account pursuant to paragraph 171 hereof.

169.    In the event of a termination of the Settlement pursuant to this Section XVI, the Parties retain all of their pre-Settlement litigation rights and defenses, including, but not limited to, Plaintiffs' rights to seek certification of one or more litigation classes and TD Bank's rights to oppose certification, or seek decertification, of any litigation class on any ground.

## XVII.  Effect of a Termination

170.    The grounds upon which this Agreement may be terminated are set forth in paragraphs 166 and 167 hereof.  In the event of a termination as provided therein, this Agreement shall be considered null and void; all of TD Bank's obligations under the Settlement shall cease to be of any force and effect; all amounts in the Settlement Fund shall be returned to TD Bank in accordance with paragraph 168 hereof; and the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement.  In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved, including, but not limited to, Plaintiffs' rights to seek certification of one or more

litigation classes and TD Bank's rights to oppose certification, or seek decertification, of any litigation class on any grounds.

171.    In the event of a termination as provided in paragraph 166 and/or 167 hereof, and after payment of any invoices or other fees or expenses mentioned in this Agreement that have been incurred and are due to be paid from the Escrow Account, the Escrow Agent shall return the balance of the Settlement Fund to TD Bank within seven days of termination.  Except in the event any term of this Agreement has been breached, TD Bank shall have no right to seek reimbursement from Plaintiffs or Class Counsel for any funds disbursed from the Escrow Account pursuant to paragraph 168 hereof or for any invoices or other fees or expenses mentioned in this Agreement that have been incurred and are due to be paid from the Escrow Account.

172.    The Settlement shall become effective on the Effective Date unless earlier terminated in accordance with the provisions of paragraphs 166 and/or 167 hereof.

173.    In the event the Settlement is terminated in accordance with the provisions of paragraphs 166 and/or 167 hereof, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose.  In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made or filed with the Court.

## XVIII. No Admission of Liability

174.    TD Bank disputes the claims alleged in the Action and does not by this Agreement or otherwise admit any liability or wrongdoing of any kind, but expressly denies any such liability or wrongdoing.  TD Bank has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to

be completely free of any further claims that were asserted or could have been asserted in the Action.

175.    Class Counsel believe that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel have fully investigated the facts and law relevant to the merits of the claims, have conducted extensive formal and informal discovery, and have conducted independent investigation of the challenged practices.    Class Counsel have concluded that the proposed Settlement set forth in this Agreement is fair, reasonable, and adequate, and in the best interests of the Members of the Settlement Classes.

176.    The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims.  No action taken or statement made by the Parties in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever, or an admission by TD Bank of the appropriateness of certification of any litigation class.

177.    Neither the Settlement, nor any act performed, statement made or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or Members of the Settlement Classes, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or

omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency or other tribunal; or (c) is or may be deemed to be, or may be used as, an admission by the Released Parties that any litigation class may be certified.

178.    In addition to any other defenses TD Bank may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding that may be instituted, prosecuted or attempted in breach of this Agreement or the Releases contained herein.

## XIX.  Miscellaneous Provisions

179.    <u>Gender and Plurals.</u>  As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so permits.

180.    <u>Binding Effect.</u>  This Agreement shall be binding upon, and inure to the benefit of, the heirs, executors, administrators, successors, beneficiaries, and assigns of the Releasing Parties and the Released Parties.

181.    <u>Cooperation of Parties.</u>  The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, to defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.  This obligation of the Parties to support and complete the Settlement shall remain in full force and effect so long as this Settlement has not been terminated in accordance with its terms, regardless of events that may occur, or court decisions that may be issued, in MDL 2613 or in any other case in any court.  Class Counsel agree to cooperate in obtaining a dismissal of the appeal in *Dorsey* promptly upon the occurrence of the Effective Date.

182.    <u>Obligation To Meet And Confer.</u>  Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted.

183.    <u>Integration.</u>  This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

184.    <u>No Conflict Intended.</u>  Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

185.    <u>Governing Law.</u>  Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the State of South Carolina, without regard to the principles thereof regarding choice of law, except to the extent federal law controls the issue in dispute.

186.    <u>Counterparts and Electronic Signatures.</u>  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.  Original signatures are not required.  Any handwritten signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original. In addition, the Parties agree that any Electronic Signature by a Party to this Agreement is intended to authenticate this writing and has the same force and effect as a handwritten signature.  Pursuant to the South Carolina Uniform Electronic Transactions Act, "Electronic Signature" means an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.

187. <u>Jurisdiction.</u>    The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program, the Settlement Administrator, the Tax Administrator, and the allocation of the attorney fees to attorneys representing the Plaintiffs if Settlement Counsel cannot reach an agreement on the allocation of attorney fees and/or costs and expenses. As part of their respective agreements to render services in connection with this Settlement, the Settlement Administrator and the Tax Administrator shall consent to the jurisdiction of the Court for this purpose.

188. <u>Notices.</u>    All notices to Settlement Class Counsel provided for herein, shall be sent by email and facsimile with a hard copy sent by overnight mail to:

> E. Adam Webb
> WEBB, KLASE & LEMOND, LLC
> 1900 The Exchange, SE, Suite 480
> Atlanta, GA 30339
> Telephone: (770) 444-0773
> Facsimile: (770) 217-9950
> Adam@WebbLLC.com
>
> Richard D. McCune
> McCUNE WRIGHT AREVALO, LLP
> 3281 East Guasti Road, Suite 100
> Ontario, CA 91761
> Telephone: (909) 557-1250
> Facsimile: (909) 557-1275
> rdm@mccunewright.com

All notices to TD Bank, provided for herein, shall be sent by email and facsimile with a hard copy sent by overnight mail to:

> Lucus A. Ritchie
> PIERCE ATWOOD LLP
> Merrill's Wharf
> 254 Commercial Street
> Portland, ME 04101
> Telephone: (207) 791-1100
> Facsimile: (207) 791-1350
> Email: lritchie@pierceatwood.com
>
> Deirdre E. McInerney
> TD Bank, N.A.
> Senior Counsel, Legal Department
> 3000 Atrium Way, 4th Fl.
> Mt. Laurel, NJ  08054
> Telephone: (856) 505-2293
> Facsimile: (856) 639-1195
> Email: Deirdre.McInerney@td.com

The notice recipients and addresses designated above may be changed by written notice.  Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

189.    <u>Modification and Amendment.</u>  This Agreement may be amended or modified only by a written instrument signed by counsel for TD Bank and Settlement Class Counsel and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

190.    <u>No Waiver.</u>  The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

191.    <u>Authority.</u>  Settlement Class Counsel (for the Plaintiffs), and counsel for TD Bank (for TD Bank), represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation or entity included

within the definitions of Plaintiffs and TD Bank to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

192.    <u>Agreement Mutually Prepared.</u>  Neither TD Bank nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

193.    <u>Independent Investigation and Decision to Settle.</u>  The Parties understand and acknowledge that they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. TD Bank has provided and is providing information that Plaintiffs reasonably request to identify Members of the Settlement Classes and the alleged damages they incurred. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

194.    <u>Receipt of Advice of Counsel.</u>  Each Party acknowledges, agrees and specifically warrants that he, she, or it has fully read the Agreement and the Releases contained in Section

XIV hereof, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

195.   <u>Return of Confidential Information.</u>   Class Counsel, on behalf of themselves and their expert witnesses and consultants as well as others retained by them, acknowledge that during the course of this Action, they have received Confidential Information.   No later than thirty (30) days after the Effective Date, Class Counsel shall return to TD Bank all Confidential Information and certify that they and their expert witnesses and consultants do not retain any copies or summaries or compilations or indices of such information.   Within the same time period, Class Counsel will identify for TD Bank the expert witnesses, outside consultants, and any other individuals or entities to whom Confidential Information was given, and will advise those persons of this requirement and will ensure their compliance with it.   The Parties may stipulate to destruction of Confidential Information in lieu of return to TD Bank.   This provision is not intended to cover work product of Class Counsel but is intended to cover Confidential Information that might simply be attached to any work product.   Any retained work product which refers or relates to Confidential Information shall continue to be confidential under the terms of the Consent Confidentiality Order and/or Consent Order on Production of Customer Transactional Data entered in this Action.   Class Counsel shall not use any of the Confidential Information learned or obtained in this Action for any purpose after the Effective Date.

196.   <u>Publicity</u>.   The Parties shall not issue press releases or similar public statements regarding this Settlement for any purpose, except that Class Counsel may make public statements regarding the Settlement on any resume, future pleadings relating to Class Counsel's experience and results, and Class Counsel's websites.   The Parties and their counsel agree that they shall not

make any public statements, whether written or oral, disparaging any other Party, including any statements tending to harm a Party's reputation, business interests, or goodwill.

*Remainder of this Page Intentionally Left Blank*

FOR PLAINTIFFS:

Dated: _June 4, 2019_

_____
E. Adam Webb
*Co-Lead Counsel*

Dated: _____

_____
Richard D. McCune
*Co-Lead Counsel*

Dated: _____

_____
Mark C. Tanenbaum
*Co-Liaison Counsel*

Dated: _____

_____
William E. Hopkins, Jr.
*Co-Liaison Counsel*

Dated: _____

_____
Richard M. Golomb
*Plaintiffs' Executive Committee*

Dated: _____

_____
Hassan A. Zavareei
*Plaintiffs' Executive Committee*

Dated: _____

_____
Joseph C. Kohn
*Plaintiffs' Executive Committee*

Dated: _____

_____
Francis J. "Casey" Flynn, Jr.
*Plaintiffs' Executive Committee*

Dated: _____

_____
John R. Hargrove
*Plaintiffs' Executive Committee*

69

DocuSign Envelope ID: D16609B5-9550-4835-B556-FE5D4735ABFC

<u>FOR PLAINTIFFS:</u>

Dated: _____     _____
                                            E. Adam Webb
                                            *Co-Lead Counsel*

Dated: _____ 6/5/2019 _____       _____
                                            Richard D. McCune
                                            *Co-Lead Counsel*

Dated: _____      _____
                                            Mark C. Tanenbaum
                                            *Co-Liaison Counsel*

Dated: _____      _____
                                            William E. Hopkins, Jr.
                                            *Co-Liaison Counsel*

Dated: _____      _____
                                            Richard M. Golomb
                                            *Plaintiffs' Executive Committee*

Dated: _____      _____
                                            Hassan A. Zavareei
                                            *Plaintiffs' Executive Committee*

Dated: _____      _____
                                            Joseph C. Kohn
                                            *Plaintiffs' Executive Committee*

Dated: _____      _____
                                            Francis J. "Casey" Flynn, Jr.
                                            *Plaintiffs' Executive Committee*

Dated: _____      _____
                                            John R. Hargrove
                                            *Plaintiffs' Executive Committee*

FOR PLAINTIFFS:

Dated: _____

_____
E. Adam Webb
*Co-Lead Counsel*

Dated: _____

_____
Richard D. McCune
*Co-Lead Counsel*

Dated: ___6/5/19___

_____
Mark C. Tanenbaum
*Co-Liaison Counsel*

Dated: _____

_____
William E. Hopkins, Jr.
*Co-Liaison Counsel*

Dated: _____

_____
Richard M. Golomb
*Plaintiffs' Executive Committee*

Dated: _____

_____
Hassan A. Zavareei
*Plaintiffs' Executive Committee*

Dated: _____

_____
Joseph C. Kohn
*Plaintiffs' Executive Committee*

Dated: _____

_____
Francis J. "Casey" Flynn, Jr.
*Plaintiffs' Executive Committee*

Dated: _____

_____
John R. Hargrove
*Plaintiffs' Executive Committee*

FOR PLAINTIFFS:

Dated: _____

_____
E. Adam Webb
*Co-Lead Counsel*

Dated: _____

_____
Richard D. McCune
*Co-Lead Counsel*

Dated: _____

_____
Mark C. Tanenbaum
*Co-Liaison Counsel*

Dated: 6/4/2019

_____
William E. Hopkins, Jr.
*Co-Liaison Counsel*

Dated: _____

_____
Richard M. Golomb
*Plaintiffs' Executive Committee*

Dated: _____

_____
Hassan A. Zavareei
*Plaintiffs' Executive Committee*

Dated: _____

_____
Joseph C. Kohn
*Plaintiffs' Executive Committee*

Dated: _____

_____
Francis J. "Casey" Flynn, Jr.
*Plaintiffs' Executive Committee*

Dated: _____

_____
John R. Hargrove
*Plaintiffs' Executive Committee*

FOR PLAINTIFFS:

Dated: _____    _____
E. Adam Webb
*Co-Lead Counsel*

Dated: _____    _____
Richard D. McCune
*Co-Lead Counsel*

Dated: _____    _____
Mark C. Tanenbaum
*Co-Liaison Counsel*

Dated: _____    _____
William E. Hopkins, Jr.
*Co-Liaison Counsel*

Dated: ___6/4/19_____    _____
Richard M. Golomb
*Plaintiffs' Executive Committee*

Dated: _____    _____
Hassan A. Zavareei
*Plaintiffs' Executive Committee*

Dated: _____    _____
Joseph C. Kohn
*Plaintiffs' Executive Committee*

Dated: _____    _____
Francis J. "Casey" Flynn, Jr.
*Plaintiffs' Executive Committee*

Dated: _____    _____
John R. Hargrove
*Plaintiffs' Executive Committee*

FOR PLAINTIFFS:

Dated: _____    _____

E. Adam Webb
*Co-Lead Counsel*

Dated: _____    _____

Richard D. McCune
*Co-Lead Counsel*

Dated: _____    _____

Mark C. Tanenbaum
*Co-Liaison Counsel*

Dated: _____    _____

William E. Hopkins, Jr.
*Co-Liaison Counsel*

Dated: _____    _____

Richard M. Golomb
*Plaintiffs' Executive Committee*

Dated: **6/6/19**    _____

Hassan A. Zavareei
*Plaintiffs' Executive Committee*

Dated: _____    _____

Joseph C. Kohn
*Plaintiffs' Executive Committee*

Dated: _____    _____

Francis J. "Casey" Flynn, Jr.
*Plaintiffs' Executive Committee*

Dated: _____    _____

John R. Hargrove
*Plaintiffs' Executive Committee*

FOR PLAINTIFFS:

Dated: _____      _____
                                      E. Adam Webb
                                      *Co-Lead Counsel*

Dated: _____      _____
                                      Richard D. McCune
                                      *Co-Lead Counsel*

Dated: _____      _____
                                      Mark C. Tanenbaum
                                      *Co-Liaison Counsel*

Dated: _____      _____
                                      William E. Hopkins, Jr.
                                      *Co-Liaison Counsel*

Dated: _____      _____
                                      Richard M. Golomb
                                      *Plaintiffs' Executive Committee*

Dated: _____      _____
                                      Hassan A. Zavareei
                                      *Plaintiffs' Executive Committee*

Dated: _____      _____
                                      Joseph C. Kohn
                                      *Plaintiffs' Executive Committee*

Dated: _____      _____
                                      Francis J. "Casey" Flynn, Jr.
                                      *Plaintiffs' Executive Committee*

Dated: _____      _____
                                      John R. Hargrove
                                      *Plaintiffs' Executive Committee*

<u>FOR PLAINTIFFS:</u>

Dated: _____    _____
E. Adam Webb
*Co-Lead Counsel*

Dated: _____    _____
Richard D. McCune
*Co-Lead Counsel*

Dated: _____    _____
Mark C. Tanenbaum
*Co-Liaison Counsel*

Dated: _____    _____
William E. Hopkins, Jr.
*Co-Liaison Counsel*

Dated: _____    _____
Richard M. Golomb
*Plaintiffs' Executive Committee*

Dated: _____    _____
Hassan A. Zavareei
*Plaintiffs' Executive Committee*

Dated: _____    _____
Joseph C. Kohn
*Plaintiffs' Executive Committee*

Dated: _____    _____
Francis J. "Casey" Flynn, Jr.
*Plaintiffs' Executive Committee*

Dated: _____    _____
John R. Hargrove
*Plaintiffs' Executive Committee*

FOR PLAINTIFFS:

Dated: _____          _____
                                        E. Adam Webb
                                        *Co-Lead Counsel*

Dated: _____          _____
                                        Richard D. McCune
                                        *Co-Lead Counsel*

Dated: _____          _____
                                        Mark C. Tanenbaum
                                        *Co-Liaison Counsel*

Dated: _____          _____
                                        William E. Hopkins, Jr.
                                        *Co-Liaison Counsel*

Dated: _____          _____
                                        Richard M. Golomb
                                        *Plaintiffs' Executive Committee*

Dated: _____          _____
                                        Hassan A. Zavareei
                                        *Plaintiffs' Executive Committee*

Dated: _____          _____
                                        Joseph C. Kohn
                                        *Plaintiffs' Executive Committee*

Dated: _____          _____
                                        Francis J. "Casey" Flynn, Jr.
                                        *Plaintiffs' Executive Committee*

Dated: _6.6.19_____          _____
                                        John R. Hargrove
                                        *Plaintiffs' Executive Committee*

Dated: _June 4, 2019_ _[signature]_
Jan Kasmir

Dated: _____
James King, Jr.

Dated: _____
JoAnne McLain

Dated: _____
Michael McLain

Dated: _____
Geoffrey Grant

Dated: _____
Keith Irwin

Dated: _____
Shawn Balensiefen

Dated: _____
Elizabeth Goodall

Dated: _____
Kendall Robinson

Dated: _____        _____
                                        Jan Kasmir

Dated: ___6/2/2019___                   _____
                                        James King, Jr.

Dated: _____        _____
                                        JoAnne McLain

Dated: _____        _____
                                        Michael McLain

Dated: _____        _____
                                        Geoffrey Grant

Dated: _____        _____
                                        Keith Irwin

Dated: _____        _____
                                        Shawn Balensiefen

Dated: _____        _____
                                        Elizabeth Goodall

Dated: _____        _____
                                        Kendall Robinson

Dated: _____        _____

Dated: _____     _____
                                        Jan Kasmir

Dated: _____     _____
                                        James King, Jr.

Dated: _6 - 5 - 2019_                   _____
                                        JoAnne McLain

Dated: _6-5-19_                         _____
                                        Michael McLain

Dated: _____     _____
                                        Geoffrey Grant

Dated: _____     _____
                                        Keith Irwin

Dated: _____     _____
                                        Shawn Balensiefen

Dated: _____     _____
                                        Elizabeth Goodall

Dated: _____     _____
                                        Kendall Robinson

DocuSign Envelope ID: D8F41C6E-2995-4965-849D-C226F9CCD695

Dated: _____          _____

                                        Jan Kasmir


Dated: _____          _____

                                        James King, Jr.


Dated: _____          _____

                                        JoAnne McLain


Dated: _____          _____

                                        Michael McLain


Dated: _____6/4/2019_____           DocuSigned by:

                                        *Geoffrey Grant*
                                        5EUD318353054A0...
                                        _____
                                        Geoffrey Grant


Dated: _____          _____

                                        Keith Irwin


Dated: _____          _____

                                        Shawn Balensiefen


Dated: _____          _____

                                        Elizabeth Goodall


Dated: _____          _____

                                        Kendall Robinson

Dated: _____        _____
                                       Jan Kasmir


Dated: _____        _____
                                       James King, Jr.


Dated: _____        _____
                                       JoAnne McLain


Dated: _____        _____
                                       Michael McLain


Dated: _____        _____
                                       Geoffrey Grant


Dated: 6/3/2019                        _____
                                       Keith Irwin


Dated: _____        _____
                                       Shawn Balensiefen


Dated: _____        _____
                                       Elizabeth Goodall


Dated: _____        _____
                                       Kendall Robinson

Dated: _____     _____
                                      Jan Kasmir

Dated: _____     _____
                                      James King, Jr.

Dated: _____     _____
                                      JoAnne McLain

Dated: _____     _____
                                      Michael McLain

Dated: _____     _____
                                      Geoffrey Grant

Dated: _____     _____
                                      Keith Irwin

Dated: **5/31/2019**                  _____
                                      Shawn Balensiefen

Dated: _____     _____
                                      Elizabeth Goodall

Dated: _____     _____
                                      Kendall Robinson

DocuSign Envelope ID: 96058B49-3E28-4BF6-AF81-3308681A99CA

Dated: _____        _____
                                        Jan Kasmir


Dated: _____        _____
                                        James King, Jr.


Dated: _____        _____
                                        JoAnne McLain


Dated: _____        _____
                                        Michael McLain


Dated: _____        _____
                                        Geoffrey Grant


Dated: _____        _____
                                        Keith Irwin


Dated: _____        _____
                                        Shawn Balensiefen


Dated: 6/3/2019                         _____
                                        Elizabeth Goodall


Dated: _____        _____
                                        Kendall Robinson

Dated: _____        _____
                                        Jan Kasmir


Dated: _____        _____
                                        James King, Jr.


Dated: _____        _____
                                        JoAnne McLain


Dated: _____        _____
                                        Michael McLain


Dated: _____        _____
                                        Geoffrey Grant


Dated: _____        _____
                                        Keith Irwin


Dated: _____        _____
                                        Shawn Balensiefen


Dated: _____        _____
                                        Elizabeth Goodall


Dated: __6/4/2019_____         _____
                                        Kendall Robinson

DocuSign Envelope ID: CD9A759F-8E8E-43A6-B875-0C427C7DD5E2

Dated: 6/5/2019 _____          DocuSigned by:
                                              _Ronald Ryan_
                                              92EC070BE4204CA...
                                              _____
                                              Ronald Ryan


Dated: _____                    _____
                                              Tashina Drakeford


Dated: _____                    _____
                                              John Koshgarian


Dated: _____                    _____
                                              John Hurel


Dated: _____                    _____
                                              Frederick Klein


Dated: _____                    _____
                                              Dawn Ucciferri


Dated: _____                    _____
                                              Caroline Austin


Dated: _____                    _____
                                              Brittney Lawrence


Dated: _____                    _____
                                              Emilio Padilla

DocuSign Envelope ID: DCFA5FB8-7648-4B5D-8CEA-9DBA63DF2709

Dated: _____          _____
                                             Ronald Ryan

Dated: 6/5/2019 _____          _____
                                             Tashina Drakeford

Dated: _____          _____
                                             John Koshgarian

Dated: _____          _____
                                             John Hurel

Dated: _____          _____
                                             Frederick Klein

Dated: _____          _____
                                             Dawn Ucciferri

Dated: _____          _____
                                             Caroline Austin

Dated: _____          _____
                                             Brittney Lawrence

Dated: _____          _____
                                             Emilio Padilla

Dated: _____          _____
                                                 Ronald Ryan

Dated: _____          _____
                                                 Tashina Drakeford

Dated: _____06/04/2019_____          _____
                                                 John Koshgarian

Dated: _____          _____
                                                 John Hurel

Dated: _____          _____
                                                 Frederick Klein

Dated: _____          _____
                                                 Dawn Ucciferri

Dated: _____          _____
                                                 Caroline Austin

Dated: _____          _____
                                                 Brittney Lawrence

Dated: _____          _____
                                                 Emilio Padilla

Dated: _____    _____
                                  Ronald Ryan


Dated: _____    _____
                                  Tashina Drakeford


Dated: _____    _____
                                  John Koshgarian


Dated: _____    _____
                                  John Hurel


Dated: _____    _____
                                  Frederick Klein


Dated: _____    _____
                                  Dawn Ucciferri


Dated: _____    _____
                                  Caroline Austin


Dated: _____    _____
                                  Brittney Lawrence


Dated: _____    _____
                                  Emilio Padilla

DocuSign Envelope ID: D951F59C-DAD6-4035-8295-32D5140653D8

Dated: _____        _____

                                                 Ronald Ryan

Dated: _____        _____

                                                 Tashina Drakeford

Dated: _____        _____

                                                 John Koshgarian

Dated: _____        _____

                                                 John Hurel

Dated: 6/5/2019 _____        _____

                                                 Frederick Klein

Dated: _____        _____

                                                 Dawn Ucciferri

Dated: _____        _____

                                                 Caroline Austin

Dated: _____        _____

                                                 Brittney Lawrence

Dated: _____        _____

                                                 Emilio Padilla

Dated: _____ _____
Ronald Ryan

Dated: _____ _____
Tashina Drakeford

Dated: _____ _____
John Koshgarian

Dated: _____ _____
John Hurel

Dated: _____ _____
Frederick Klein

Dated: _05_/_31_/_2019_ _____
Dawn Ucciferri

Dated: _____ _____
Caroline Austin

Dated: _____ _____
Brittney Lawrence

Dated: _____ _____
Emilio Padilla

Dated: _____    _____
                                    Ronald Ryan

Dated: _____    _____
                                    Tashina Drakeford

Dated: _____    _____
                                    John Koshgarian

Dated: _____    _____
                                    John Hurel

Dated: _____    _____
                                    Frederick Klein

Dated: _____    _____
                                    Dawn Ucciferri

Dated: _____6/3/2019_____    _____
                                    Caroline Austin

Dated: _____    _____
                                    Brittney Lawrence

Dated: _____    _____
                                    Emilio Padilla

Dated: _____          _____
                                        Ronald Ryan


Dated: _____          _____
                                        Tashina Drakeford


Dated: _____          _____
                                        John Koshgarian


Dated: _____          _____
                                        John Hurel


Dated: _____          _____
                                        Frederick Klein


Dated: _____          _____
                                        Dawn Ucciferri


Dated: _____          _____
                                        Caroline Austin

          06/03/19
Dated: _____          _____
                                        Brittney Lawrence


Dated: _____          _____
                                        Emilio Padilla


71

Dated: _____    _____
                                      Ronald Ryan


Dated: _____    _____
                                      Tashina Drakeford


Dated: _____    _____
                                      John Koshgarian


Dated: _____    _____
                                      John Hurel


Dated: _____    _____
                                      Frederick Klein


Dated: _____    _____
                                      Dawn Ucciferri


Dated: _____    _____
                                      Caroline Austin


Dated: _____    _____
                                      Brittney Lawrence


Dated: _6/8/2019_____    _Emilio Padillo_____
                                      Emilio Padilla


71

Dated: __6/4/2019__          _Sheila Padilla_
                             Sheila Padilla

Dated: _____        _____
                             Jennifer Bond

Dated: _____        _____
                             John LaFlamme

Dated: _____        _____
                             Jonathan Young

Dated: _____        _____
                             Amos Jones

Dated: _____        _____
                             Brittney Brooker

Dated: _____        _____
                             Marilyn Vailati

Dated: _____        _____
                             Shaina Dorsey

Dated: _____

Dated: _6-3-19_____

Sheila Padilla

_____

Jennifer Bond

Dated: _____

_____

John LaFlamme

Dated: _____

_____

Jonathan Young

Dated: _____

_____

Amos Jones

Dated: _____

_____

Brittney Brooker

Dated: _____

_____

Marilyn Vailati

Dated: _____

_____

Shaina Dorsey

Dated: _____

_____
Sheila Padilla


Dated: _____

_____
Jennifer Bond


Dated: _June 3 - 2019_

_____
John LaFlamme


Dated: _____

_____
Jonathan Young


Dated: _____

_____
Amos Jones


Dated: _____

_____
Brittney Brooker


Dated: _____

_____
Marilyn Vailati


Dated: _____

_____
Shaina Dorsey

Dated: _____    _____
                                    Sheila Padilla


Dated: _____    _____
                                    Jennifer Bond


Dated: _____    _____
                                    John LaFlamme


Dated: *Mon June 3rd 2019*    _____
                                    Jonathan Young


Dated: _____    _____
                                    Amos Jones


Dated: _____    _____
                                    Brittney Brooker


Dated: _____    _____
                                    Marilyn Vailati


Dated: _____    _____
                                    Shaina Dorsey


72

DocuSign Envelope ID: 7F9247C7-8226-4ABF-BAE8-B14F3856543D

Dated: _____          _____
                                         Sheila Padilla


Dated: _____          _____
                                         Jennifer Bond


Dated: _____          _____
                                         John LaFlamme


Dated: _____          _____
                                         Jonathan Young


Dated: _____          _____
                                         Amos Jones


Dated: 6/5/2019                          _____
                                         Brittney Brooker


Dated: _____          _____
                                         Marilyn Vailati


Dated: _____          _____
                                         Shaina Dorsey

06/06/2019 THU 9:45 FAX                                                          ☑002/002

Dated: _____          _____
                                         Sheila Padilla


Dated: _____          _____
                                         Jennifer Bond


Dated: _____          _____
                                         John LaFlamme


Dated: _____          _____
                                         Jonathan Young


Dated: _____          _____
                                         Amos Jones


Dated: _____          _____
                                         Brittney Brooker

Dated: _June 6, 2019_____                _Marilyn Vailati_____
                                         Marilyn Vailati


Dated: _____          _____
                                         Shaina Dorsey

Dated: _____                  _____
                                                Sheila Padilla


Dated: _____                  _____
                                                Jennifer Bond


Dated: _____                  _____
                                                John LaFlamme


Dated: _____                  _____
                                                Jonathan Young


Dated: _____                  _____
                                                Amos Jones


Dated: _____                  _____
                                                Brittney Brooker


Dated: _____                  _____
                                                Marilyn Vailati


Dated: __6/4/19_____                   _____
                                                Shaina Dorsey

FOR DEFENDANT:

Dated: ___06/03/19___

_____
TD Bank, N.A.
*Defendant*

Jason Thacker
Head of Consumer Deposits,
Products and Payments

Dated: ___06/06/19___

_____
*Counsel for Defendant*

Lucus Ritchie
Pierce Atwood LLP